Lee F. Bantle
Sherie N. Buell
BANTLE & LEVY LLP
817 Broadway
New York, New York 10003
(212) 228-9666
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ROBERT STOLARIK,

|  |  |
|---|---|
| Plaintiff, | No. 17-CV-5083 |
|  | ECF Case |
| – against – | **COMPLAINT AND** |
|  | **JURY DEMAND** |
| THE NEW YORK TIMES COMPANY and MICHELE MCNALLY, |  |
| Defendants. |  |

-------------------------------------------------------------------x

Plaintiff Robert Stolarik, by and through his attorneys Bantle & Levy LLP, for his

complaint, alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for violations of federal and state laws based on misclassification

of Plaintiff's employment resulting in failure to pay Plaintiff wages and overtime. It is also an

action under New York City law for employment discrimination based on age and arrest record.

Plaintiff seeks relief pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*,

as amended ("FLSA"), and Articles 6 and 19 of the New York Labor Law, § 190 *et seq.* and

§ 650 *et seq.* ("NYLL"), 12 N.Y.C.R.R. § 142-2.2 (the "Overtime Rate Order"), including

applicable liquidated damages, interest, attorneys' fees, and costs.  Plaintiff brings his

employment discrimination claims under the New York City Administrative Code §8-101 *et seq.*, (the "NYCHRL").

2.      On March 9, 2017, a Tolling Agreement was entered into by Robert Stolarik and The New York Times Company and Michele McNally, tolling the statute of limitations as of March 9, 2017 on all claims alleged in this Complaint under the FLSA, NYLL and NYCHRL. The Tolling Agreement was terminated on June 30, 2017.

**JURISDICTION AND VENUE**

3.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 ("federal question"), and FLSA, 29 U.S.C. § 216. The Court has supplemental jurisdiction over Plaintiff's NYLL, Overtime Rate Order, and NYCHRL claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is properly lodged in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the unlawful acts and discriminatory practices alleged herein were committed within the district of the United States District Court for the Southern District of New York.

**PARTIES**

5.      Plaintiff Robert Stolarik ("Stolarik" or "Plaintiff") is a citizen of the United States and currently resides in Brooklyn, New York, part of Kings County.

6.      Upon information and belief, Defendant The New York Times Company (the "Times," the "Company," or "Defendant") is a domestic business corporation, existing under the laws of the State of New York, with its principal executive offices at 620 8th Avenue, New York, New York 10018.

7.      The Times is a media and journalism company that publishes newspapers, and owns network-affiliated television stations, radio stations, and websites.

8.      At all times relevant to his claims, Plaintiff was an employee of Defendant. Plaintiff was employed by Defendant within the meaning of Section 3(g) of the FLSA, 29 U.S.C. § 203(g) in an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

9.      At all times relevant to Plaintiff's claims, the Times was an employer of Plaintiff and Plaintiff was employed by the Times within the meaning of, *inter alia*, the FLSA, 29 U.S.C. § 203(d) & (e), the NYLL, §§ 190(2) & (3) and 651(5) & (6), and 12 N.Y.C.R.R. § 142-2.14(a).

10.     At all times relevant to this claim, the Times is a person within the meaning of New York City Administrative Code § 8-102(1) and (5).

11.     At all times relevant to Plaintiff's claims, Defendant Michele McNally ("McNally") is a person within the meaning of New York City Administrative Code § 8-102(1) and (5) and § 8-107(7) and an employee within the meaning of New York City Administrative Code § 8-107(1)(a).

## STATEMENT OF FACTS

### Plaintiff's Fourteen Year Tenure of Employment at the Times

12.     Plaintiff Robert Stolarik is a 47-year-old photographer who worked for the Times for more than fourteen (14) years.

13.     In or about 2000, Plaintiff Robert Stolarik began working for the Times as a freelance war zone photographer in the country of Colombia.

14.     Stolarik continued his overseas work for the Company in Colombia and then the country of Venezuela until June of 2002 when he returned to the United States.

15.     After a brief hiatus, Stolarik resumed work for the Times in 2004 and was assigned to the Metro desk.

3

16.     Working for the Times, Stolarik was regularly assigned police and protest photography jobs as well as occasionally given work for other desks, including culture, food, politics, and business.

17.     For the next eight years, from 2004 to 2012, Stolarik worked full-time for the Times, generally being on assignment more than 250 days per year and often working more than eight hours a day and more than 40 hours per week.

18.     In some instances, between 2004 and 2012, Stolarik worked for the Times for 28 days or more in a row without one day off.

19.     For years, editors at the Times specifically sought out Stolarik because they trusted him to discreetly handle sensitive matters, and because of his skill as a photographer and ability to take compelling photographs.

20.     From 2013 onward, Stolarik's assignments for the Times gradually diminished.

21.     More than 30 of Stolarik's photographs have appeared on page A-1 of the Times and one of his photographs was included among the 24 which were chosen as the most memorable by Assistant Managing Editor for Photography, McNally.

22.     One of Stolarik's photographs is also displayed prominently in the Times headquarters alongside photographs taken by award-winning Times staff photographs.

**Misclassification of Plaintiff's Employment**

23.     Despite Plaintiff's hard work, his full-time schedule, and his enormous success, he was always improperly classified by the Times as a "freelance" photographer who received no benefits and was paid via IRS Form 1099-MISC.

24.     In providing Plaintiff with a 1099 form instead of a W-2 form each year for almost a decade, the Times forced Plaintiff to incur additional tax expenses and liabilities while the Times saved money that they were legally obligated to pay.

25.     Plaintiff worked full-time for the Times for almost a decade.

  a.  In 2004, Plaintiff worked approximately 146 days of the year for the Times.

  b.  In 2005, he worked approximately 244 days of the year for the Times.

  c.  In 2006, he worked 322 8-hour assignments over approximately 267 days of the year for the Times.

  d.  In 2007, he worked 282 8-hour assignments over approximately 234 days of the year for the Times.

  e.  In 2008, he worked 280 8-hour assignments over approximately 239 days of the year for the Times.

  f.  In 2009, he worked 273 8-hour assignments over approximately 245 days of the year for the Times.

  g.  In 2010, he worked 218 8-hour assignments over approximately 204 days of the year for the Times.

  h.  In 2011, he worked 257 8-hour assignments over approximately 230 days of the year for the Times.

  i.  In 2012, he worked 229 8-hour assignments over approximately 214 days of the year for the Times.

  j.  In 2013, he worked 213 8-hour assignments over approximately 205 days of the year for the Times.

k. In 2014, he worked 150 8-hour assignments over approximately 130 days of the year for the Times.

26.     Plaintiff was known among editors at the Times as a "full-time freelancer."

27.     Plaintiff's work for the Times effectively left no time, even if he had wanted, to hold another job.

28.     Plaintiff's work for the Times was excellent and his contributions to the Times significant.

29.     Throughout his tenure at the Times, Plaintiff's services as a photographer were integral to the operation of the Times.

30.     Plaintiff received assignments directly from Company editors, in the same manner as staff photographers classified as employees of the Times.

31.     The Times exercised a high degree of control over Plaintiff's work, by providing detailed instruction and dictating Plaintiff's assignments and hours worked.

32.     On several occasions, the Times loaned Plaintiff equipment, including in one instance when Plaintiff's photography equipment was wrongly confiscated by the police and Plaintiff was loaned equipment from the stock of equipment designated for Times staff photographers.

33.     At the Times, Plaintiff performed services identical to people whom defendants treated as employees, and the services he performed were the kind that employees historically performed in the photography journalism industry.

34.     Plaintiff was an employee of the Times under the Internal Revenue Code § 3121(d)(2), which provides, in pertinent part, that "any individual who, under the usual common

law rules applicable in determining the employer-employee relationship, has the status of an employee."

35.    The Times misclassified Plaintiff as an independent contractor, and he was, as a matter of law and fact, an employee.  In addition to the already stated facts, the following are indicia of Plaintiff's status as an employee under the common law:

    a.  Plaintiff did not work on a temporary basis.

    b.  Plaintiff's work was continuous, not intermittent.

    c.  At all times, Plaintiff's work was controlled by, and his tasks assigned to him by his supervisors.

    d.  The Times had discretion over when and how long Plaintiff worked.

    e.  The type of work performed, that is, providing photographs to accompany news events and other articles, was an integral part of the regular business of the Times.

    f.  Plaintiff's specialized skill as a photographer was fundamental to the business of the Times.

    g.  Plaintiff could not realize profits and loses independent from the Times, and depended upon the regular payments he received from the Times for his income.

36.    The Times misclassified Plaintiff as an independent contractor, in whole or substantial part, to avoid the cost of providing him full wages, employee benefits and overtime pay.

37.    The Times engaged in a pattern and practice of misclassifying professional employees, like Plaintiff, as independent contractors.

**Denial of Overtime Pay**

38.     As a photographer for the Times, Stolarik regularly received eight (8) hour assignments from his editors.

39.     Assignments were given to Stolarik with specified start times.  For example, he could be instructed to arrive at the courthouse at 7:00 AM in order to take a photograph when a certain person charged with a crime was being walked into or out of the building.

40.     At times, in order to fulfill the responsibilities of the assignment, Stolarik would be required to continue his shift beyond eight hours, such as when he was assigned to conduct a "stake out" at a certain location in order to get a specific photograph or when he was given a broader assignment to cover an event such as an Occupy Wall Street protest.

41.     When Plaintiff's shifts extended beyond eight hours, he sometimes received a call from an editor asking him to continue working despite the shift being over; other times, it was understood that Plaintiff would continue working.

42.     After completing his shifts, Plaintiff was often required to spend additional time at home editing the photographs he took before submitting them to the Times.  Plaintiff was not paid for the time he spent editing his photographs.

43.     Plaintiff's editors were aware of when Plaintiff was on assignment and when he was working beyond his shift.  Plaintiff would often call his editors once he had taken the required photographs to inform them that he had completed the shift, and Plaintiff's editors were aware of when he submitted his photographs.

44.     In some instances, Plaintiff was assigned a second eight hour shift in one day.

45.     On these days, Plaintiff was typically paid a standard hourly rate for the second shift, and not an overtime rate.

46.     Plaintiff was not paid on a salary or fee basis.

47.     Plaintiff's hours worked at the Times are reflected in his assignment sheets, which include assignment start times, and the time stamps of the photographs he took while on assignment.

48.     Based on these records, Plaintiff worked approximately 112 hours of overtime in 2005, 583 hours of overtime in 2006, 419 hours of overtime in 2007, 533 hours of overtime in 2008, 375 hours of overtime in 2009, 389 hours of overtime in 2010, 376 hours of overtime in 2011, 268 hours of overtime in 2012, 191 hours of overtime in 2013, and 112 hours of overtime in 2014.

49.     Plaintiff found it necessary to work more than 40 hours per week on many weeks in order to fulfill his job responsibilities as a photographer for the Times.

50.     Plaintiff's supervisors knew that he worked this significant amount of time unpaid and suffered or permitted him to do so, to the Times' financial benefit.

51.     From 2005 through 2014, Plaintiff worked approximately 3,358 hours above and beyond a 40-hour work week.

52.     For each of these hours of overtime, Plaintiff was typically paid a standard hourly rate of $25 per hour.

53.     Throughout the period that Plaintiff was employed by the Times, no notice of his rights under the FLSA and the NYLL was given to him or posted in a conspicuous place so as to permit him to observe readily a copy.

**Denial of Staff Photographer Positions**

54.     Throughout his tenure at the Times, Stolarik regularly sought to become an employee of the Times in a staff photographer position.

55.     He communicated his desire to join the staff repeatedly – both orally and in writing.

56.     Upon information and belief, editors at the paper who regularly worked with Stolarik felt that he should be on staff; however, Stolarik was told on numerous occasions by various editors that he was too old to get hired into the position of staff photographer.

57.     Specifically, in 2006, Times editor, Patrick Witty ("Witty"), sought to hire Stolarik as a staff photographer.

58.     As a first step in the process, Witty wanted to recommend Stolarik for enrollment in the Joop Swart Masterclass organized by World Press Photo after which Witty would present him to McNally as a potential hire.

59.     At the time, enrollment in the Joop Swart Masterclass or other similar workshops was a regular and often necessary pathway to obtaining a staff photographer position.

60.     Prior to moving forward with the hiring process, Witty emailed Stolarik the following inquiry: "robert, how old are you?  under 30?"

61.     Stolarik responded to Witty that he was 37, and Witty said that it was "too bad" and halted all further efforts to hire Stolarik into a staff position.

62.     Similarly, in 2006, Times editor, James Estrin ("Estrin"), complimented Stolarik on what a good photographer he was, but told him that he would probably never get hired as a staff photographer at the Times.

63.     When Stolarik inquired if it was because he had not won a Pulitzer, Estrin responded that Stolarik should be more concerned about his age.

64.     On several other occasions, Estrin told Stolarik that he was "too old" to be considered for a staff position.

65.     In 2006, the Times instead hired Josh Haner ("Haner"), who was at the time 26 years old and had a limited photography background.

66.     Despite the refusal to hire Plaintiff as a staff photographer that year, Plaintiff was told by several editors that he needed to "watch over" Haner when he was "out on the street" covering his first assignment.

67.     On a separate occasion, another Times editor, Maura Foley, told Plaintiff that he would be great as a staff photographer, but that the Times was looking for new, younger photographers that McNally could develop.

68.     Despite believing that it was unlikely that he would be hired due to his age, Stolarik continued to express his interest in a staff photographer position.

69.     In 2014, the Times posted a job advertisement for a staff photographer position.

70.     In 2014, Stolarik wrote to McNally again expressing his interest in a staff position and asking how he could apply for a staff photographer position.

71.     McNally did not respond to Stolarik's inquiry.

72.     In 2014, the Times hired 24-year-old Leslye Davis as a staff photographer/videographer.

73.     In 2015, the Times hired 29-year-old Ben Solomon as a staff photographer/videographer.

74.     In 2016, the Times hired 23-year-old Al Drago as a staff photographer.

75.     Upon information and belief, McNally and the Times use recruitment methods designed to target young photographers, such as recruiting those who complete the Eddie Adams workshop and relying heavily on young interns.

76.     McNally and the Times repeatedly failed to consider Plaintiff for the position of staff photographer because of his age, despite the fact that he expressed interest in the position and was qualified for the position.

77.     McNally and the Times instead hired younger, less qualified individuals for staff photographer positions.

78.     McNally and the Times also discriminate based on age in the Company's use of freelance photographers.  Older freelance photographers with proven track records are given little or no freelance work, while more than a dozen freelancers under the age of 30 are given regular assignments.

79.     As a result of Defendants' unlawful discriminatory employment practices, Plaintiff has suffered a loss of income and benefits, in both being denied a staff position and in being denied freelance assignments.

80.     As a result of Defendants' unlawful treatment of Plaintiff, Plaintiff has sustained pain and suffering, and mental and emotional harm and distress.

81.     Defendants' acts were performed willfully, intentionally, and with reckless indifference to Plaintiff's protected rights.

**Denial of Freelance Assignments Based on Arrest**

82.     While working for the Times, Plaintiff often covered the "police beat," activity involving crime, protests, and other events involving the New York Police Department.

83.     In late 2012, while on assignment for the Times, Plaintiff was arrested in the Bronx.

84.     Plaintiff was working with two Times reporters who were conducting street interviews when a police officer instructed him to stop what he was doing.

85.     Plaintiff identified himself as a Times journalist and continued taking photographs.

86.     A second police officer them slammed Stolarik's camera into his face and dragged him to the ground where he was violently assaulted.

87.     Stolarik was arrested for obstructing government administration and resisting arrest, and jailed.

88.     Shortly after the arrest, Stolarik met with Times Executive Editor Jill Abramson, who replaced his photographic equipment which was confiscated by the police, agreed to pay Stolarik's medical bills (because he had no health insurance) and assigned a Times attorney, George Freeman, to defend Plaintiff in court.

89.     Upon information and belief, editors at the Times held a meeting following Stolarik's arrest to discuss reassigning Stolarik or limiting his assignments based on his arrest.

90.     As recounted in reporting by the Times, through the cooperation of Stolarik, the charges against him were ultimately dropped and the officer who arrested him was indicted for falsifying a record to justify the arrest.

91.     Following the arrest, Times editors, including Jessie Schwartz and others, continued to give Plaintiff assignments to cover protests against the police, but told Plaintiff on a number of occasions "not to get arrested again."

92.     Upon information and belief, New York police officials contended falsely that Plaintiff was an "agitator."

93.     Upon information and belief, the Times subsequently decided that Plaintiff was a liability and could no longer be assigned to cover the NYPD.

94.     In or around August 2015, the Times and McNally removed Plaintiff from the police beat which he had covered regularly for a decade.

95.     Subsequently, the Times and McNally began assigning fewer and fewer freelance assignments to Plaintiff.

96.     This decrease in assignments is reflected in a decrease in days worked for the Times following the police officer's indictment. In 2013, Plaintiff worked 213 days out of the year for the Times. In 2014, Plaintiff worked 150 days out of the year. In 2015, Plaintiff worked only 72 days out of the year. In 2016, Plaintiff worked only 3 days out of the year. In 2017, Plaintiff has worked 0 days out of the year.

97.     Throughout this time, Plaintiff consistently made himself available for freelance assignments and very rarely turned down work from the Times.

98.     In October 2015, the police officer who had arrested plaintiff was convicted of a felony.

99.     Following the police officer's conviction, the Times and McNally gave even less freelance work to Plaintiff.

100.     Plaintiff's arrest was a factor in the Times' and McNally's decisions to stop assigning him to cover the New York City police and ultimately to deny him freelance work altogether.

101.     As a result of Defendants' unlawful discriminatory employment practices, Plaintiff has suffered a loss of income and benefits, in both being denied a staff position and in being denied freelance assignments.

102.     As a result of Defendants' unlawful treatment of Plaintiff, Plaintiff has sustained pain and suffering, and mental and emotional harm and distress.

103.    Defendants' acts were performed willfully, intentionally, and with reckless indifference to Plaintiff's protected rights.

**Retaliation Against Plaintiff Based on Letter Asserting Claims**

104.    On or about March 18, 2016, Plaintiff's counsel sent a letter to Kenneth Richieri, General Counsel of the Times, asserting Plaintiff's legal claims concerning discrimination based on age and arrest record.

105.    Upon information and belief, following the Company's receipt of this letter, Michele McNally instructed several editors at the Times not to give any assignments to Plaintiff.

106.    Upon information and belief, McNally sought to deny Plaintiff employment opportunities in retaliation for his assertion of legal claims based upon his employment at the Company.

107.    Since March 18, 2016, Plaintiff has not been given any assignments by editors at the Times.

108.    Motivated at least in part by Plaintiff's protected activity, Defendants denied freelance assignments and/or a staff position to Plaintiff and therefore unlawfully denied continuing opportunities for promotion, training, advancement, recognition, and increased compensation.

109.    As a result of Defendants' retaliatory treatment of Plaintiff, Plaintiff has suffered a loss of income.

110.    As a result of Defendants' unlawful treatment of Plaintiff, Plaintiff has sustained pain and suffering, and mental and emotional harm and distress.

111.    The aforesaid acts and conduct by McNally and the Times, its agents and employees, were performed willfully, intentionally, maliciously and with reckless indifference to Plaintiff's protected rights.

## FIRST CAUSE OF ACTION
***Overtime Wages Pursuant to the FLSA, 29 U.S.C. § 201 et seq., Against Defendant the Times***

112.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

113.    At all times relevant to Plaintiff's claims, Defendant was the employer of Plaintiff and Plaintiff was an employee of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(d) & (e).

114.    At all times relevant to his claims, Plaintiff was employed by Defendant in an enterprise engaged in commerce with annual gross volumes of sales of not less than $500,000 within the meaning of the FLSA 29 U.S.C. § 203(s)(1).

115.    From approximately 2005 through approximately 2014, Plaintiff often worked over forty (40) hours per work week.

116.    Defendant failed to pay Plaintiff overtime compensation at a rate of not less than one and one-half (1 ½) times Plaintiff's regular rate of pay for each hour of work over forty (40) hours per week in violation of the FLSA 29 U.S.C. § 207(a)(1).

117.    Defendant had no reasonable grounds for believing its failure to pay Plaintiff overtime compensation was not a violation of the FLSA.  Defendant's failure to pay Plaintiff overtime compensation was willful and not in good faith.

118.    Plaintiff has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
*Overtime Wages Pursuant to Article 19 of the NYLL, § 650 et seq., Against Defendant the Times*

119.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

120.    At all times relevant to Plaintiff's claims, Defendant was the employer of Plaintiff and Plaintiff was an employee of Defendant within the meaning of the NYLL § 651(5) & (6).

121.    From approximately 2005 through approximately 2014, Plaintiff often worked over forty hours per work week.

122.    Defendant failed to pay Plaintiff overtime compensation at a rate of one and one-half (1 ½) times Plaintiff's regular rate of pay for each hour of work over forty (40) hours per week in violation of Article 19 of the NYLL and the implementing regulations of the New York State Department of Labor. NYLL § 650 *et seq.*; 12 NYCRR 142-2.2.

123.    Defendant had no reasonable grounds for believing its failure to pay Plaintiff overtime compensation was not a violation of the NYLL.  Defendant's failure to pay Plaintiff overtime compensation was willful and not in good faith.

124.    Plaintiff has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
*Unpaid Wages Pursuant to Article 6 of the NYLL, § 190 et seq.*

125.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.    At all times relevant to Plaintiff's claims, Defendant was the employer of Plaintiff and Plaintiff was an employee of Defendant within the meaning of NYLL § 190(2) & (3).

127.    From approximately 2004 to 2014, Defendant knowingly employed Plaintiff as a staff photographer for the Times.

128.    Defendant failed to pay Plaintiff the agreed-to wage for a staff photographer of the Times, and unlawfully deducted from Plaintiff's wages by paying Plaintiff approximately $25 per hour instead of the salary set forth in the governing collective bargaining agreement of approximately $100,000 per year, in violation of Article 6 of the NYLL § 190 *et seq.*, including § 191 and § 193.

129.    Defendant had no reasonable grounds for believing its failure to pay Plaintiff the agreed-to wage for the time he worked was not a violation of the NYLL.  Defendant's failure to pay Plaintiff the agreed-to wage was willful and not in good faith, and a breach of implied contract.

130.    Plaintiff has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### *Discrimination based on Age Pursuant to the NYC Administrative Code, § 8-101 et seq., Against Defendants the Times and Michele McNally*

131.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    As a result of the aforementioned actions, Defendants have discriminated against Plaintiff on account of his age with respect to the terms, conditions and privileges of employment in violation of the New York City Administrative Code § 8-101, *et seq.*

133.    As a result of Defendants' discrimination against him, Plaintiff has suffered damages, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

## FIFTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Discrimination based on Age Pursuant to the NYC Administrative Code § 8-101 et seq., Against Defendant Michele McNally*

134.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

135.   As a result of the foregoing, defendant Michele McNally aided, abetted, incited, compelled and coerced acts forbidden under New York City Human Rights Law, Administrative Code § 8-101, *et seq.*, in violation of Administrative Code § 8-107(6).  Specifically, McNally has discriminated against Plaintiff based on age.

136.   As a result of McNally's unlawful acts, Plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

## SIXTH CAUSE OF ACTION
### *Discrimination based on Arrest Pursuant to the NYC Administrative Code, § 8-101 et seq., Against Defendants the Times and Michele McNally*

137.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.   As a result of the aforementioned actions, Defendants have discriminated against Plaintiff on account of his arrest record with respect to the terms, conditions and privileges of employment in violation of the New York City Administrative Code § 8-101, *et seq*.

139.   As a result of Defendants' discrimination against him, Plaintiff has suffered damages, including, without limitation, deprivation of income and benefits, emotional pain, suffering, inconvenience, damage to reputation and career, mental anguish and humiliation.

## SEVENTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Discrimination based on Arrest Pursuant to the NYC Administrative Code § 8-101 et seq., Against Defendant Michele McNally*

140.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

141.   As a result of the foregoing, defendant Michele McNally aided, abetted, incited, compelled and coerced acts forbidden under New York City Human Rights Law, Administrative Code § 8-101, *et seq.*, in violation of Administrative Code § 8-107(6).  Specifically, McNally has discriminated against Plaintiff based on arrest record.

142.   As a result of McNally's unlawful acts, Plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

## EIGHTH CAUSE OF ACTION
### *Retaliation based on Assertion of Claims in Violation of the NYC Administrative Code, § 8-101 et seq., Against Defendants the Times and Michele McNally*

143.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

144.   In retaliation for Plaintiff's opposition to the discriminatory practices of McNally and others at the Times, Defendants have discriminated against plaintiff with respect to the terms, conditions and privileges of employment in violation of the New York City Administrative Code § 8-101(7).

145.   As a result of Defendants' retaliation against him, Plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment,

loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

## NINTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Retaliation based on Assertion of Claims Pursuant to the NYC Administrative Code § 8-101 et seq., Against Defendant Michele McNally*

146.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

147.    As a result of the foregoing, Defendant Michele McNally aided, abetted, incited, compelled and coerced acts forbidden under New York City Human Rights Law, Administrative Code § 8-101, *et seq.*, in violation of Administrative Code § 8-107(6).  Specifically, McNally has retaliated against Plaintiff based on assertion of claims.

148.    As a result of McNally's unlawful acts, Plaintiff has suffered damage, including, without limitation, deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain, suffering, inconvenience, mental anguish, humiliation and damage to reputation and career.

## TENTH CAUSE OF ACTION
### *Breach of Quasi-Contract*
### *Against Defendant the Times*

149.    Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

150.    Plaintiff performed full-time services as a staff photographer for the Times in good faith, and the Times accepted those services.

151.    Defendant the Times improperly payed Plaintiff via 1099 forms instead of W-2 forms, causing Plaintiff to incur additional tax expenses and liabilities.

152.   Defendant the Times denied Plaintiff a salary equivalent to that of staff photographers at the Times, and denied Plaintiff equipment and other expense reimbursements equivalent to that of staff photographers at the Times.

153.   In doing so, Defendant was unjustly enriched at Plaintiff's expense.

154.   In failing to pay the salary and those benefits not governed by ERISA to which Plaintiff was entitled, Defendant breached its implied contract with Plaintiff.

155.   As a result of the foregoing, Plaintiff has suffered economic damages in the amount of the reasonable value of his services and the value of the withheld employee benefits, and for breaching his implied contractual rights.

**WHEREFORE**, Plaintiff respectfully requests that this court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1)   A declaratory judgment that the acts complained of herein are in violation of the FLSA, the New York City Administrative Code, the NYLL, common law and principles of equity;

(2)   Enjoining and permanently restraining these violations of law;

(3)   Appointing Plaintiff to a staff photographer position at the Times or front pay in an amount to be proved at trial;

(4)   Actual damages in the form of back pay, unpaid wages, unpaid benefits and overtime compensation, in an amount to be shown at trial, but not less than $500,000;

(5)   Liquidated damages as provided for by the FLSA and NYLL, in an amount to be shown at trial;

(6)     Compensatory damages, including damages for Plaintiff's mental anguish, pain

and suffering and humiliation;

(7)     Attorneys' fees;

(8)     Costs and disbursements;

(9)     Interest; and

(10)    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury.


Dated: New York, New York
      July 6, 2017

                                BANTLE & LEVY LLP

By:                       
                                Lee F. Bantle
                                Sherie N. Buell
                                817 Broadway
                                New York, New York 10003
                                212.228.9666

                                *Attorneys for Plaintiff*