
Proskauer Rose LLP Eleven Times Square New York, NY 10036-8299

Gregory I. Rasin
Member of the Firm
d +1.212.969.3940
f 212.969.2900
grasin@proskauer.com
www.proskauer.com

November 13, 2017

*By ECF*

Honorable Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *Robert Stolarik v. The New York Times Company, et al.*
Civil Action No. 17 Civ. 5083 (PGG)

Dear Judge Gardephe:

In accordance with the August 11, 2017 Notice of Pretrial Conference, Your Honor's Individual Practices, and Your Honor's Order dated November 2, 2017, Defendants, together with Plaintiff Robert Stolarik, submit this joint letter and the parties' proposed Civil Case Management Plan and Scheduling Order in advance of the initial pretrial conference scheduled for November 20, 2017 at 10:00 a.m.

## I. Brief Description of the Case

### *A. Plaintiff*

In a Complaint filed on July 7, 2017, Plaintiff asserts the following causes of action: (1) failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); (2) unpaid wages in violation of the NYLL; (3) employment discrimination based on age and arrest in violation of the New York City Human Rights Law ("NYCHRL"); (4) retaliation in violation of the NYCHRL; and (5) breach of quasi contract. On November 9, 2017, Plaintiff filed an amended complaint, adding the two New York Times pension plans and the plan trustees as defendants and adding an additional cause of action for the denial of pension benefits in violation of ERISA, 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

For more than 10 years, Mr. Stolarik worked full-time as a photographer for The New York Times (the "Times"), most often assigned to photography jobs covering the police. He often worked in excess of 40 hours per week. From 2004 to 2014, Mr. Stolarik worked for the Times as a photographer for more than 1000 hours per year. Times editors specifically sought out Mr. Stolarik because of his tremendous skill as a photographer and his ability to take compelling photographs.

Mr. Stolarik was always improperly classified by the Times as a "freelance" photographer who did not receive benefits and was paid via a 1099. He was known among New York Times staff as a "full-time freelancer." However, the facts establish that he was, in fact, an employee and eligible for overtime, staff wages, and pension benefits throughout his tenure. His services as a photographer were integral to the operation of the Times. He received his assignments directly from the Times editors, in the same manner as staff photographers classified as employees of the Times, and was instructed with specific detail and direction how to complete his assignments. In many of the years that Mr. Stolarik worked for the Times, he was, at the request of the Tim*es,* issued a Times press pass by the N.Y.P.D. The Times exercised a high degree of control over Mr. Stolarik's work by providing detailed instruction and dictating both his assignments and the hours he worked. When Mr. Stolarik's photography equipment was wrongly confiscated by the police, the Times provided him equipment from the stock of equipment designated for Times staff photographers.

Throughout his tenure at the Times, Mr. Stolarik regularly sought to become an employee in a staff photographer position. He communicated his desire to join the staff repeatedly – both orally and in writing. However, Mr. Stolarik was told on numerous occasions by various editors that he was too old to get hired into the position of staff photographer.

In late 2012, Mr. Stolarik was arrested in the Bronx while on assignment for the Times. The charges against him were ultimately dropped and the officer who arrested him was indicted for falsifying a record to justify the arrest. However, following Mr. Stolarik's arrest and the police officer's indictment and conviction, the Times decided that assigning Mr. Stolarik to the police beat was problematic and consequently reduced his assignments.

On March 8, 2016, Plaintiff's counsel sent a letter to Kenneth Richieri, General Counsel of the Times, asserting Plaintiff's legal claims. Following receipt of this letter, Michele McNally retaliated against Mr. Stolarik by instructing editors at the Times not to give any assignments to Plaintiff. Since March 18, 2016, Plaintiff has not been given any assignments by editors at the Times.

### *B. The New York Times Co. and Michelle McNally ("The Times Defendants")*

In his Amended Complaint, Plaintiff asserts the following causes of action: (i) failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") (both against The Times only); (ii) unpaid wages under the NYLL (against The Times); (iii) discrimination based on age and arrest under the New York City Human Rights Law ("NYCHRL") (against The Times and McNally); (iv) retaliation under the NYCHRL (against The Times and McNally); and (v) breach of quasi-contract (against The Times only).

Plaintiff, who operates his own independent, established photography business, signed and agreed to a written freelance photography services agreement with The Times in April 2004. At all times, Plaintiff performed photography services as a freelancer and an independent contractor. He was never an employee of The Times, as he agreed in writing.

In particular, Plaintiff was free to accept or reject any opportunity to perform services for The Times and did so. When Plaintiff elected to accept an assignment from The Times, he retained – as a professional photographer – full and ultimate control over all aspects of his services, including choice of equipment, technique, processing and post-processing techniques, and all other aspects of his craft. Contrary to Plaintiff's allegations, he did not receive assignments in shifts and The Times did not specify the amount of time Plaintiff had to devote to an assignment. Rather, it was within his discretion to determine how much time he needed to dedicate to a certain assignment and how to spend that time. At all times, Plaintiff was properly classified as an independent contractor and he has received payment from The Times for all amounts to which he was entitled.

With regard to Plaintiff's age discrimination claim, Plaintiff never applied for a staff photographer position with The Times and, as a result, he cannot establish a *prima facie* case. Moreover, to the extent that his age discrimination claim is based on the alleged denial of a staff photographer position prior to March 15, 2014,[1] those claims are time-barred.

Plaintiff's claims that he was denied freelance opportunities because of his age and arrest and because his attorney sent a letter to The Times in March 2016 are equally unavailing. In his Complaint, Plaintiff admits that he received a significant number of freelance opportunities from The Times from 2011 onward (*see* Compl., ¶ 25) and, in fact, he continued to receive freelance assignments from The Times following his arrest in August 2012, including police-related assignments. While Plaintiff has not provided freelance photography services to The Times since March 18, 2016, there is no connection whatsoever between that fact and Plaintiff's age, arrest, or assertion of his rights or claims.

To the extent that the amount of assignments offered to Plaintiff diminished, there were legitimate, non-discriminatory and non-retaliatory reasons for the reduction. For example, the Metro Section – for which Plaintiff provided freelance photography services – changed significantly over time. Particularly, the focus of the Metro Section changed from local stories, such as court-related matters and local crime and fires, to stories with a global emphasis - - what an international reader would want to know about New York City. The size (number of pages) of the Metro Section also was reduced over time. As a result, the number of assignments related to the Metro Section diminished.[2] Accordingly, Plaintiff will be unable to establish that any decisions taken with respect to him were pretextual.

---

[1] The statute of limitations for claims under the NYCHRL is three years. Here, Plaintiff filed his Complaint on July 6, 2017. Prior thereto, the parties entered into a tolling agreement which was in effect from March 9, 2017 to June 30, 2017. Accordingly, any claims under the NYCHRL based on alleged conduct prior to March 15, 2014 are time-barred.

[2] Plaintiff's claims that he was denied assignments, to the extent based on alleged conduct prior to March 15, 2014, also are time-barred.

### *C. The Plan Defendants*

The Amended Complaint filed on November 9, 2017 added Defendants the Newspaper Guild of New York – New York Times Pension Plan (the "Pension Plan"), the Guild-Times Adjustable Pension Plan (the "APP"), the Trustees of the Pension Plan, and the Trustees of the APP (collectively, the Plan Defendants") for purposes of asserting a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Plaintiff has not served the Amended Complaint on the Plan Defendants.

As explained in the Plan Defendants' pre-motion letter (also filed today), Plaintiff's claim against the Plan Defendants should be dismissed based on the administrative record. First, the claims against the Plans are time-barred. It is undisputed that Plaintiff knew more than six years before filing the Amended Complaint that he was not entitled to employee benefits because he signed an agreement on April 2, 2004 in which he acknowledged that he would not receive benefits. Second, the Plans' Trustees reasonably determined that Plaintiff was not eligible for benefits under the terms of the Plans because: (i) Plaintiff expressly acknowledged that he was an independent contractor; (ii) applying the *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992) factors, Plaintiff did not satisfy the criteria for finding employee status.

## II. <u>Contemplated Motions</u>

### *A. Plaintiff*

The Times Defendants seek permission to make a motion to dismiss one of Plaintiff's two New York Labor Law Claims (third cause of action) and Plaintiff's quasi-contract claim (tenth cause of action). The Times Defendants wrongly contend that these claims are pre-empted by Section 301 of the Labor Relations Management Act, 29 U.S.C. § 185(a) because they require interpretation of the collective bargaining agreement ("CBA"). Plaintiff plans to oppose this motion, if made, on the basis that no interpretation of the CBA is required to resolve Plaintiff's claims. Plaintiff's reference to the CBA in the complaint is merely to establish the rate of pay and benefits received by Times staff photographers who, unlike Plaintiff, were treated as employees. The Times Defendants have pointed to no section of the CBA which this Court would have to interpret in order to resolve the third and tenth causes of action.

The Plan Defendants intend to file a motion to dismiss Plaintiff's ERISA claim (eleventh cause of action). Plaintiff plans to oppose this motion on the basis that Plaintiff's claim pursuant to ERISA is not time-barred. When Mr. Stolarik signed the Times freelance agreement in 2004 acknowledging that he was providing freelance photography services to the Times, he believed that his work would be as a freelancer. However, his role thereafter changed and he began working on a full-time basis as an employee, not a freelancer. Despite Mr. Stolarik's change in status to that of employee, the Times failed to honor its obligation to notify the Newspaper Guild of New York, Local 3 of his change in status, thus depriving him of notice of his right to pension benefits. Moreover, Mr. Stolarik was not given notice by the Plan Defendants of his ineligibility to receive pension benefits until 2016.

Plaintiff may make a motion for summary judgment, based on the information revealed through the course of discovery.

***B. The Times Defendants***

On September 5, 2017, The Times Defendants filed a letter requesting a pre-motion conference and permission to file a motion to dismiss Plaintiff's Third Cause of Action (for unpaid wages under the NYLL) and Tenth Cause of Action (for breach of quasi-contract), pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. # 15.) As set forth in Defendants' letter, the Third and Tenth Causes of Action should be dismissed because they are predicated on the claim that Plaintiff should have been covered by the collective bargaining agreement between The Times and the Newspaper Guild of New York (the "CBA") and paid the wages and benefits set forth in the CBA. Because these causes of action require interpretation of the CBA (including, as a dispositive matter, whether Plaintiff is a part of the bargaining unit covered by the CBA, despite his never having been a member of the union), they are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and must be dismissed. The Times is renewing its request with regard to the Amended Complaint.

Defendants also anticipate making a motion for summary judgment upon completion of fact discovery.

***C. The Plan Defendants***

The Plan Defendants anticipate filing a motion to dismiss the single count in the Amended Complaint (the Eleventh Cause of Action) asserted against them. Plaintiff is not entitled to discovery before the motion is decided because adjudication of an ERISA claim for benefits is based exclusively on a review of the administrative record, which already was provided to Plaintiff. For that same reason, the Plan Defendants object to the Case Management Plan and Scheduling Order insofar as it would require additional discovery against the Plan Defendants.

**III. Prospect for Settlement**

***A. Plaintiff***

Past efforts by the parties to resolve Plaintiff's claims have been unsuccessful, including a settlement meeting hosted by the Times Defendants on June 8, 2017. Plaintiff remains open to the prospect for settlement.

***B. The Times Defendants***

On June 8, 2017, the parties participated in an in-person meeting to discuss settlement which was ultimately unsuccessful. Although Defendants view this case as being completely without merit, they will, of course, consider and respond to any settlement offers.

***C. The Plan Defendants***

The Plan Defendants have not yet had an opportunity to discuss the prospects of settlement with Plaintiff's counsel, but consider the prospects of settlement to be small, given their view that Plaintiff's benefit claim is completely without merit.

Respectfully submitted,

PROSKAUER ROSE LLP

By: /s/ Gregory I. Rasin
Gregory I. Rasin
Allan S. Bloom
Michelle A. Annese
Eleven Times Square
New York, New York 10036
Tel. 212. 969.3000
Fax 212.969.2900
grasin@proskauer.com
abloom@proskauer.com
mannese@proskauer.com

*Attorneys for Defendants, The New York Times Company and Michele McNally*

PROSKAUER ROSE LLP

By: /s/ Myron D. Rumeld
Myron D. Rumeld
Russell L. Hirschhorn
Eleven Times Square
New York, New York 10036
Tel. 212. 969.3000
Fax 212.969.2900
mrumeld@proskauer.com
rhirschhorn@proskauer.com

*Attorneys for the Trustees of the Newspaper Guild of New York – New York Times Pension Plan, Newspaper Guild of New York – New York Times Pension Plan, the Trustees of the Guild-Times Adjustable Pension Plan, and the Guild-Times Adjustable Pension Plan*

BANTLE & LEVY LLP

By: /s/ Lee F. Bantle
Lee F. Bantle
Sherie N. Buell
817 Broadway
New York, New York 10003
Tel. 212.228.9666
Fax 212.228.7654
bantle@civilrightsfirm.com
buell@civilrightsfirm.com
*Attorneys for Plaintiff, Robert Stolarik*