GREGORY I. RASIN
ALLAN S. BLOOM
MICHELLE A. ANNESE
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
(212) 969-3000

*Attorneys for Defendants*
THE NEW YORK TIMES COMPANY and
MICHELE McNALLY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT STOLARIK,<br><br>      Plaintiff,<br><br>    - against -<br><br>THE NEW YORK TIMES COMPANY, MICHELE MCNALLY, TRUSTEES OF THE NEWSPAPER GUILD OF NEW YORK – NEW YORK TIMES PENSION PLAN, NEWSPAPER GUILD OF NEW YORK – NEW YORK TIMES PENSION PLAN, TRUSTEES OF THE GUILD – TIMES ADJUSTABLE PENSION PLAN, and GUILD – TIMES ADJUSTABLE PENSION PLAN,<br><br>      Defendants. | No. 17 Civ. 5083 (PGG)<br><br>**ECF CASE** |

**THE NEW YORK TIMES COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
THE THIRD AND TENTH CAUSES OF ACTION**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    THE THIRD AND TENTH CAUSES OF ACTION ARE PREEMPTED BY
    SECTION 301 AND SHOULD BE DISMISSED .................................................................. 3

        A.    State Law Claims That Allege Breach of, or Require Interpretation of, a
             Collective Bargaining Agreement are Preempted .................................................. 3

        B.    Plaintiff's Third and Tenth Causes of Action of Plaintiff's Complaint are
             Preempted Because They Allege Breach of and/or Require Interpretation
             or Application of the CBA ....................................................................................... 5

        C.    Plaintiff's Section 301 Claims Should Be Dismissed Because Plaintiff Has
             Failed to Exhaust the Contractual Remedies ......................................................... 11

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Al & John, Inc. v. Local 464A, United Food & Commercial Workers Union*,
  No. 08-cv-02898, 2008 WL 6070480 (DiCindio, June 11, 2008) ............................................7

*Alli v. City of New York*,
  No. 11-Civ-7665, 2012 WL 4887745 (S.D.N.Y. Oct. 12, 2012) ..............................................8

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ..............................................................................................................4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................8

*Avco Corp. v. Machinists*,
  390 U.S. 557 (1968) ..................................................................................................................8

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987) ......................................................................................................... passim

*DelCostello v. Int'l Bhd. Of Teamsters*,
  462 U.S. 151,163 (1983) .........................................................................................................11

*Dougherty v. AT&T Co.*,
  902 F.2d 201 (2d Cir. 1990) ..............................................................................................11, 12

*Elec. Workers v. Hechler*,
  481 U.S. 852, 859 (1987) ..........................................................................................................4

*Ellis v. HarperCollins Publishers, Inc.*,
  No. 99 Civ. 1213, 2000 WL 802900 (S.D.N.Y. June 21, 2000) .............................................11

*Foy v. Pratt & Whitney Grp.*,
  127 F.3d 229, 233 (2d. Cir. 1997) .............................................................................................5

*Gonzalez v. Al. & John Inc.*,
  No. 06-6245, 2007 WL 1490407 (D.N.J. May 18, 2007) ............................................7, 12, 13

*Hines v. Anchor Motor Freight, Inc.*,
  424 U.S. 554 (1976) ................................................................................................................11

*Hoops v. KeySpan Energy*,
  794 F. Supp. 2d 371 (E.D.N.Y. 2011) .....................................................................................10

*Johnson v. D.M. Rothman Co.*,
    861 F. Supp. 2d 326 (S.D.N.Y. 2012) ........................................................................... 10

*Levy v. Verizon Info. Servs., Inc.*,
    498 F. Supp. 2d 586 (E.D.N.Y. 2007) ................................................................... 4, 7, 12

*Lingle v. Norge Div. of Magic Chef*,
    486 U.S. 399 (1988) ..................................................................................................... 4, 9

*Mallgren v. Microsoft Corp.*,
    No. 12-CIV-7517, 2013 WL 5495556 (S.D.N.Y. Oct. 3, 2013) ...................................... 7

*McLean v. Garage Mgmt. Corp.*,
    No. 10–CV–3950, 2011 WL 1143003 (S.D.N.Y. Mar. 29, 2011) .................................. 9

*Morrissey v. Verizon Commc'ns Inc.*,
    No. 10-6115, 2011 WL 2671742 (S.D.N.Y. July 7, 2011) ........................................... 10

*Semper v. N.Y. Methodist Hosp.*,
    786 F. Supp. 2d 566 (E.D.N.Y. 2011) ............................................................................ 5

*Severin v. Project OHR, Inc.*,
    No. 10-cv-9696, 2011 WL 3902994 (S.D.N.Y. Sept. 2, 2011) ............................... 5, 7, 9

*Subaru Distribs. v. Subaru of Am., Inc.*,
    425 F.3d 119 (2d Cir. 2005) ........................................................................................... 7

*Sullivan v. Am. Airlines, Inc.*,
    424 F.3d 267 (2d Cir. 2005) ......................................................................................... 10

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003), *aff'd*, 208 F. App'x 66 (2006) ............................ 4, 5, 10, 11

**STATUTES**

Labor Management Relations Act, Section 301, 29 U.S.C. § 185(a) ................................. passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12 .................................................................................... 2, 8

Federal Rule of Civil Procedure 12(b)(6) ......................................................................... 1, 7, 8

**PRELIMINARY STATEMENT**

Defendant The New York Times Company ("The Times") submits this memorandum of law in support of its motion to dismiss the Third and Tenth Causes of Action in Plaintiff's Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiff—a freelance photographer who has never been a member of the union that represents The Times' staff photographers—asserts that he should have been covered by the Collective Bargaining Agreement ("CBA") between The Times and the union, the Newspaper Guild of New York (the "Union"). By not paying him in accordance with the CBA, Plaintiff argues in his Third and Tenth Causes of Action, The Times violated both the New York Labor Law and an "implied contract"—ostensibly, the CBA itself.

Plaintiff's Third and Tenth Causes of Action are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301"). As the Supreme Court has made clear, Section 301 completely preempts "claims founded directly on rights created by collective-bargaining agreements," as well as claims "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (noting that Section 301 governs both categories of claims).

Plaintiff's Third and Tenth Causes of Action are "founded directly on rights created by" the CBA between The Times and the Union, and therefore fall squarely within the preemption doctrine outlined in *Caterpillar*. Indeed, if the CBA did not exist, Plaintiff would not have included these two causes of action. Moreover, even if Plaintiff is determined to be an "employee" under the New York Labor Law (or any of the other statutes under which he seeks relief)—one of the ultimate legal issues in this case—that status is irrelevant to these two causes

of action, and therefore to this motion. Plaintiff's coverage under a New York statute as an putative "employee" (an issue for the Court) and his coverage under the CBA as a putative member of the bargaining unit represented by the Union (an issue for the grievance and arbitration procedures in the CBA) are two different and unrelated matters. Not all "employees" are subject to the CBA, and federal preemption law requires that any dispute over whether or not an employee is covered by a CBA to be resolved in accordance with the grievance and arbitration procedures in the CBA. In addition, the Third and Tenth Causes of Action are "substantially"—and, indeed, *fundamentally*—"dependent on analysis of [the CBA]." Unlike in every case cited by Plaintiff in his pre-motion submissions on this point—in which it was undisputed that the plaintiff was a member of the union whose collective bargaining agreement was at issue—here, Plaintiff was *never* a member of the Union. He never sought to become a member of the Union. He never paid dues to the Union. And notably, the Union never purported to exercise jurisdiction over Plaintiff. Indeed, all references to freelancers in the CBA are only to draw a *distinction* between them and the Times employees covered by the CBA. There was never any intent by The Times and Union to extend the coverage of the CBA to freelancers like Plaintiff, and the plain language of the CBA makes that clear.

      The assertion that one is covered by a collective bargaining agreement is a *legal* conclusion—it is not a factual allegation that the Court is required to accept as true on a Rule 12 motion. If there is to be any legal determination as to whether or not Plaintiff (or any other freelancer) is covered by the CBA between the Union and The Times, it must be made—in accordance with Section 301 and Supreme Court precedent—by the arbitrators selected by the Union and The Times to resolve such issues.

For these reasons, Plaintiff's Third and Tenth Causes of Action fall squarely within the zone of those routinely held preempted—they arise directly from and are predicated upon breach of the CBA or, at a minimum, require interpretation of the most fundamental terms of the CBA. This is *not* a case where mere reference to a "wage table" in a CBA is all that is needed to fully adjudicate Plaintiff's CBA-related claims. Those cases involve plaintiffs that are indisputably members of the union whose CBA is being consulted for damages purposes. Here, the Third and Tenth Causes of Action can only be resolved through the most fundamental of interpretations of the CBA—to determine whether Plaintiff is even covered by the CBA.

In sum, before one can decide whether the wage rates in the CBA are at all relevant, it must first be determined that Plaintiff was covered by the CBA—an issue that is within the exclusive jurisdiction of the grievance and arbitration provisions of the CBA.

For these reasons, Plaintiff's Third and Tenth Causes of Action are completely preempted by Section 301 and must be dismissed.

## ARGUMENT

### THE THIRD AND TENTH CAUSES OF ACTION ARE PREEMPTED BY SECTION 301 AND SHOULD BE DISMISSED

**A.    State Law Claims That Allege Breach of, or Require Interpretation of, a Collective Bargaining Agreement are Preempted.**

Section 301 of the Labor-Management Relations Act[1] governs "[c]laims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent on analysis of a collective bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

---

[1] Section 301(a) [29 U.S.C. § 185(a)] provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

394 (1987) (citing *Elec. Workers v. Hechler*, 481 U.S. 852, 859 n.3 (1987)); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220 (1985)); *see also Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003), *aff'd*, 208 F. App'x 66 (2006).  As the Supreme Court has held, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers*, 471 U.S. at 211.

Accordingly, Section 301 preempts state law claims alleging a violation of a collective bargaining agreement as well as claims that "[r]equire[] the interpretation of a collective-bargaining agreement."  *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988).  Preemption applies to both state statutory and common law claims.  *See Allis-Chalmers*, 471 U.S. at 209 -211; *Vera*, 335 F.3d at 109 (finding Section 301 preempted claims of unauthorized deduction of wages alleging violation of state statute and common law).  Indeed, it is now well-established that claims under Article 6 of the New York Labor Law—which include Plaintiff's Third Cause of Action here—are preempted where they require interpretation of a collective bargaining agreement.  *See Vera*, 335 F.3d at 109 (plaintiff's claims arising under New York Labor Law § 193 were preempted by Section 301 because they required interpretation of a collective bargaining agreement); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586 (E.D.N.Y. 2007) (plaintiffs' state law claims alleging unlawful wage deductions under Article 6 of the New York Labor Law were preempted because resolution required interpretation of a collective bargaining agreement).

4

### B. Plaintiff's Third and Tenth Causes of Action of Plaintiff's Complaint are Preempted Because They Allege Breach of and/or Require Interpretation or Application of the CBA.

To determine whether Section 301 preemption applies, courts analyze the elements of the state law claims and the allegations in the complaint. *See Vera*, 335 F.3d at 116 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)); *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 583 (E.D.N.Y. 2011) (citing *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d. Cir. 1997)).

Here, Plaintiff's Complaint purports to state two causes of action resulting from breach of the CBA. In his Third Cause of Action, Plaintiff alleges that The Times' failure to comply with the CBA violated Article 6 of the New York Labor Law, including Sections 191 and 193. (Compl. ¶ 160.) In his Tenth Cause of Action, Plaintiff alleges that The Times' failure to adhere to the CBA breached an implied contract and resulted in The Times' unjust enrichment. (Compl. ¶ 185.) At their core, these two claims rely on and stem from rights created by the CBA—Plaintiff, a freelancer who is not a member of the Union, is asserting he was wrongfully denied the wages and benefits of the bargaining unit employees represented by the Union and covered by the CBA. *See Caterpillar*, 482 U.S. at 394 (finding claims are preempted where they arise from "rights created by" the collective bargaining agreement). Where, as here, "[a] state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by [S]ection 301 and must instead be resolved by reference to federal law." *Vera*, 335 F.3d at 114 (citing *Allis-Chalmers Corp.*, 471 U.S. at 210).

Even if Plaintiff's claims were not premised on a violation of the CBA—and they clearly are—they would still be preempted because Section 301 preempts "[s]tate-law actions that require interpretation of such an agreement." *Severin v. Project OHR, Inc.*, No. 10-cv-9696, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011). That the claims as pled are inextricably intertwined with and require interpretation of the CBA is immediately apparent from the

5

supporting allegations in the Complaint, in which Plaintiff compares himself to the title of staff photographer in the CBA:

- "Defendant's failure to pay Plaintiff the agreed-to wage was . . . a breach of implied contract." (Compl. ¶ 161.)

- "In failing to pay the salary and those benefits to which Plaintiff was entitled, Defendant breached its implied contract with Plaintiff." (Compl. ¶ 186.)

- The Times "failed to pay Plaintiff the agreed-to wage and benefits for a staff photographer of the Times . . . ." (Compl. ¶ 160.)

- The Times "unlawfully deducted from Plaintiff's wages by paying Plaintiff approximately $25 per hour instead of the salary set forth in the governing collective bargaining agreement of $100,000 per year and by not providing him with the benefits of a staff photographer . . . ." (Compl. ¶ 160.)

- The Times "denied Plaintiff a salary equivalent to that of staff photographers at the Times, and denied Plaintiff the benefits provided to staff photographers at the Times." (Compl. ¶ 184.)

- "Plaintiff received assignments directly from Company editors, in the same manner as staff photographers classified as employees of the Times." (Compl. ¶ 35.)

- "Plaintiff performed full-time services as a staff photographer for the Times in good faith, and the Times accepted those services." (Compl. ¶ 182.)

Preemption is required here because Plaintiff's state statutory wage claims cannot be adjudicated until and unless the CBA is interpreted to determine the threshold legal issue of whether Plaintiff, who is not a member of the Union, is covered by the CBA and performing

6

bargaining unit work. *See Gonzalez v. Al. & John Inc.*, No. 06-6245, 2007 WL 1490407 (D.N.J. May 18, 2007) (dismissing the misclassification claims of non-union employees who argued that they were doing bargaining unit work finding "[i]t is clear from the face of Plaintiffs' complaint, that Plaintiffs did not pursue contractual remedies.").[2] The threshold determination of whether Plaintiff is in the bargaining unit covered by the CBA would clearly entail the most fundamental interpretation of the CBA, including an analysis of the scope of the bargaining unit described in the Preamble of the CBA, the history of negotiations surrounding the inclusion of staff photographers in the bargaining unit and the work performed by the classification, the historical exclusion of freelancers from the bargaining unit, and the meaning of the CBA language that explicitly excludes contractors from the unit, which states in relevant part: "[t]he Guild will not claim jurisdiction over any work performed by unrepresented digital employees and/or contractors." *See* Preamble of the CBA attached as "Exhibit A" to the Affidavit of Andrew Gutterman ("Gutterman Aff."), dated January 9, 2018 and filed herewith.[3] That principal determination can only be resolved by an arbitrator through the CBA's grievance procedure,

---

[2] We note that subsequent to the *Gonzalez v. Al. & John Inc.* court's dismissal of plaintiffs' claims, an arbitrator ultimately interpreted the collective bargaining agreement to resolve the alleged misclassification issue pursuant to the grievance procedure outlined in the parties' collective bargaining agreement. *See Al & John, Inc. v. Local 464A, United Food & Commercial Workers Union*, No. 08-cv-02898, 2008 WL 6070480 (DiCindio, June 11, 2008).

[3] Because the CBA is referenced in the complaint, it may be reviewed by the Court on this motion to dismiss. *See Mallgren v. Microsoft Corp.*, No. 12-CIV-7517, 2013 WL 5495556, at *4 n.3 (S.D.N.Y. Oct. 3, 2013) (citations omitted) ("The court may . . . rely upon '. . . documents incorporated by reference in the complaint."); *Severin*, 2011 WL 3902994, at * n.1 (quoting *Subaru Distribs. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) (noting that even though the collective bargaining agreement was not referenced or appended to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6), "'the court may consider … any documents upon which the complaint relies and which are integral to the complaint.'"); *Levy*, 498 F. Supp. 2d 587, 594-95 (2007) (where defendant attached the collective bargaining agreements at issue to its motion to dismiss under Rule 12(b)(6), "[r]eview of the CBAs is . . .proper, despite plaintiff's careful avoidance of mentioning them in the complaint" because plaintiffs indirectly referenced the agreements).

which requires that "[a]ny matter arising from the application or interpretation of this Agreement that the Guild and The Times have not been able after reasonable effort to settle, shall be submitted to arbitration[.]" (Gutterman Aff. Ex. A, Article XII, § 3(a).)

Plaintiff cannot escape preemption simply by pleading that he is a staff photographer in the bargaining unit covered by the CBA. Such an ultimate legal conclusion, couched as a factual allegation, is not entitled to a presumption of truth on a Rule 12 motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."); *Alli v. City of New York*, No. 11-Civ-7665, 2012 WL 4887745, at *4 (S.D.N.Y. Oct. 12, 2012) ("[I]n order to survive a motion to dismiss under Rule 12(b)(6), a complaint must appear 'plausible' on its face, if all of its factual allegations are assumed to be true.") (citations omitted). Even if the Court assumes as true Plaintiff's allegation that he was a "staff photographer" for purposes of this motion, Plaintiff's state law claims are nonetheless preempted because the resolution of the Third and Tenth Causes of Action is substantially dependent on an arbitrator's interpretation of the Preamble of the CBA to determine the legal issue whether Plaintiff is *covered* by the CBA. *See Caterpillar*, 482 U.S. at 394 (state law claims are preempted where the "'[h]eart of the [state-law] complaint [is] a . . . clause in the collective bargaining agreement.") (quoting *Avco Corp. v. Machinists*, 390 U.S. 557, 558 (1968)). The danger of allowing a plaintiff to avoid preemption by merely pleading coverage under a collective bargaining agreement is apparent—a plaintiff could eviscerate more than a half-century of Supreme Court precedent merely by alleging as a factual matter the threshold contractual issue of coverage that an arbitrator would otherwise have to resolve through interpretation of the collective bargaining agreement.

8

This case is also quite distinct from those where courts have found that state law claims were not preempted by Section 301 because they could be resolved by mere referral to the CBA (*e.g.*, looking to wage tables for computation of damages). See *Lingle*, 486 U.S. at 399, 413 n. 12; *McLean v. Garage Mgmt. Corp.*, No. 10–CV–3950, 2011 WL 1143003, at * 3 (S.D.N.Y. Mar. 29, 2011) (holding claims were not preempted since "'mere referral to the CBA for information such as rate of pay' is insufficient to find that a state law claim is preempted by § 301.") (citation omitted). In those cases, the plaintiffs were indisputably and admittedly members of a union—the only issue to be resolved under the collective bargaining agreements was the measure of damages. Here, by contrast, an arbitrator selected by the Union and The Times would have to first decide the intervening and threshold issue of whether Plaintiff is covered by the CBA before a determination can be made on any potential CBA liability related to Plaintiff's claims.

For example, the district court in *Severin*, in finding that the claims at issue were not preempted because they did not require interpretation of the CBA, distinguished between *mere referral* versus *interpretation* of the CBA in comparison to *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371 (E.D.N.Y. 2011), and explained:

> In *Hoops* . . ., to reach the plaintiff's statutory overtime claims, the district court had to decide the 'threshold question of whether the Plaintiff was *entitled to receive* contractual shift differentials[,] ... a determination that require[d] interpretation of the CBA.' . . . [H]owever, the plaintiffs in this case may prevail on their statutory claims regardless of whether they were paid in accordance with the CBA.

2011 WL 3902994, at *4 (emphasis added); *see also Hoops*, 794 F. Supp. 2d at 379-380 ("'The alleged violations hinges on the collective bargaining agreements' definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's

9

grievance and arbitration provisions.'") (citations omitted); *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 332 (S.D.N.Y. 2012) (holding claims preempted and noting, "Although Plaintiffs are correct that NYLL and the FLSA provide statutory rights to overtime which are independent of the CBA, the threshold issue here—whether Plaintiffs are entitled to the grandfather and hi-lo differentials at all—is 'inextricably intertwined' with the CBA."). Similarly, here, whether Plaintiff is *entitled* to receive the contractual wages and benefits he claims he is owed requires resolution of the threshold issue of whether Plaintiff is covered by, and has rights derived from, the CBA—a matter that the Union and The Times have agreed that an arbitrator must decide through interpretation of certain key provisions of the CBA.

That Plaintiff has attempted to style his claim as a New York State statutory claim is irrelevant for preemption purposes. Plaintiff cannot avoid the preemptive force of Section 301 by artfully pleading the claims in the Complaint "as if it arises under state law where . . . in essence [it is] based on federal law." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 271-72 (2d Cir. 2005) (noting that Section 301 of the LMRA has "the requisite extraordinary preemptive force to support complete preemption."); *Morrissey v. Verizon Commc'ns Inc.*, No. 10-6115, 2011 WL 2671742 (S.D.N.Y. July 7, 2011) ("'The classic application of the artful pleading doctrine occurs in the context of federal preemption of state law.'") (citation omitted). When a plaintiff's state law claim is essentially completely preempted, "[a] court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Sullivan*, 424 F.3d at 272. As noted above, courts in this Circuit have held that claims arising under Sections 191 and 193 of the New York Labor Law are preempted in circumstances similar to those at issue here, where the collective bargaining agreement needs to be interpreted to adjudicate the claims even though they are pled as state statutory claims. *See Vera*, 335 F.3d at 109 (plaintiff's

claims arising under New York Labor Law § 193 were preempted by Section 301 because they required interpretation of a collective bargaining agreement to determine whether the CBA altered the common law rule regarding when commissions are earned); *Levy*, 498 F. Supp. 2d at 586, 597 (plaintiffs' state law claims alleging unlawful wage deductions were preempted because they "'substantially depend on' an interpretation of the terms of the CBAs.") (citations omitted); *Ellis v. HarperCollins Publishers, Inc.*, No. 99 Civ. 1213, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) (New York Labor Law § 191 claim preempted under Section 301 where a "[r]eported violation [was] based on a failure to pay union employees in accordance with the terms of a CBA.").

For the foregoing reasons, Plaintiff's Third and Tenth Causes of Action are preempted by Section 301.

### C. Plaintiff's Section 301 Claims Should Be Dismissed Because Plaintiff Has Failed to Exhaust the Contractual Remedies.

Because his Third and Tenth Causes of Action are preempted by Section 301, Plaintiff is required to exhaust his contractual remedies before he can pursue those claims in federal court. "[O]rdinarily . . .an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before filing suit in court. *Vera*, 335 F.3d at 109, 118 (quoting *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151,163 (1983)); *Dougherty v. AT&T Co.*, 902 F.2d 201, 203 (2d Cir. 1990) ("Before bringing such an action, the employee must exhaust grievance procedures provided by the relevant collective bargaining agreement.") (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976)).

Courts have consistently dismissed preempted claims due to plaintiffs' failures to exhaust contractual remedies pursuant to collective bargaining agreements. *See Dougherty*, 902 F.2d at 201, 204 (before bringing an action for breach of a collective bargaining agreement, "[t]he

11

employee must exhaust grievance procedures provided by the relevant collective bargaining agreement."); *Gonzalez*, 2007 WL 1490407, at *3-4 (dismissing claims based on finding that plaintiffs failed to exhaust contractual remedies and that they failed to demonstrate that pursuing such remedies would be futile); *Levy*, 498 F. Supp. 2d 586, 598 (E.D.N.Y. 2007) (the failure to file a grievance "is fatal to any attempt by plaintiffs to now assert their claims under [Section] 301 for breach of the CBAs.").

The CBA that Plaintiff asserts was violated sets forth a detailed grievance and arbitration procedure outlining the process by which disputes arising under the CBA must be resolved. (*See* Gutterman Aff. Ex. A, at Article XII.) Under the CBA, all grievances must be resolved through a multi-step procedure, the final step of which is arbitration in accordance with the terms set forth in Article XII. (*Id.*) As discussed above, the CBA specifically states that matters that require interpretation of the agreement must be submitted to arbitration. (Gutterman Aff. Ex. A, Article XII, § 3(a).)

Plaintiff has failed to even initiate—let alone exhaust—these contractual remedies. In particular, Plaintiff has not even alleged that he attempted to file a grievance or sought to have the collective bargaining representative for the classification he claims to be a member of file a grievance on his behalf. And to be clear, that Plaintiff was not a member of the Union does not relieve him of his duty to attempt to exhaust. In *Gonzalez*, for example, the district court dismissed claims brought by non-union employees alleging they were improperly excluded from the bargaining unit. 2007 WL 1490407, at *3-4. The district court held that the grievance procedure in the collective bargaining agreement had to be exhausted prior to maintaining a suit for breach of the agreement. The court found that plaintiffs did "[n]ot allege any facts that demonstrate that they even attempted to pursue contractual grievances procedures" and did not

sufficiently show that pursuing the grievance procedure under the contract would have been futile. *Id*.

Accordingly, Plaintiff's claims in the Third and Tenth Causes of Action should be dismissed for failure to attempt to exhaust the grievance and arbitration procedures set forth in the CBA.

## CONCLUSION

For the reasons set forth above, Defendant respectfully submits that the Third and Tenth Causes of Action in the Complaint should be dismissed in their entirety.

Dated: New York, New York
      January 12, 2018

PROSKAUER ROSE LLP

*/s/ Gregory I. Rasin*
Gregory I. Rasin
Allan S. Bloom
Eleven Times Square
New York, New York 10036
Tel. 212.969.3000
Fax 212.969.2900
grasin@proskauer.com
abloom@proskauer.com

*Attorneys for Defendants*
THE NEW YORK TIMES COMPANY
and MICHELE McNALLY