Myron D. Rumeld
Russell L. Hirschhorn
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Tel: (212) 969-3000
mrumeld@proskauer.com
rhirschhorn@proskauer.com

*Attorneys for Defendants Trustees Of Newspaper Guild Of
New York-The New York Times Pension Plan, Newspaper
Guild Of New York-The New York Times Pension Plan,
Trustees Of The Guild-Times Adjustable Pension Plan, And
Guild-Times Adjustable Pension Plan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ROBERT STOLARIK,                                                  :
                                                                 :        17-cv-05083-PGG
                              Plaintiff,                          :
                                                                 :
          -against-                                              :
                                                                 :
THE NEW YORK TIMES COMPANY and MICHELE                           :
MCNALLY, THE NEW YORK TIMES COMPANY,                             :
MICHELE MCNALLY, TRUSTEES OF THE                                 :
NEWSPAPER GUILD OF NEW YORK-NEW YORK                             :
TIMES PENSION PLAN, NEWSPAPER GUILD OF                           :
NEW YORK-NEW YORK TIMES PENSION PLAN,                            :
TRUSTEES OF THE GUILD-TIMES ADJUSTABLE                           :
PENSION PLAN, and GUILD-TIMES ADJUST                             :
ABLE PENSION PLAN                                                :
                                                                 :
                              Defendants.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### THE PLAN DEFENDANTS' MEMORANDUM
### OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
### <u>THE ELEVENTH CAUSE OF ACTION OF THE AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

A.      The Plans ............................................................................................................... 3
B.      Stolarik's Claim For Benefits ............................................................................... 3
C.      Stolarik's Appeal For Benefits .............................................................................. 5
D.      The Amended Complaint ..................................................................................... 10

ARGUMENT ............................................................................................................................. 11

I.      STOLARIK'S CLAIM AGAINST THE PLAN DEFENDANTS SHOULD BE
        DISMISSED BECAUSE IT IS TIME-BARRED ............................................... 11

II.     STOLARIK'S CLAIM ALSO MUST BE DISMISSED BECAUSE THE
        TRUSTEES' CONCLUSION THAT HE WAS NOT ELIGIBLE FOR
        BENEFITS UNDER THE PLANS WAS NOT ARBITRARY AND
        CAPRICIOUS ..................................................................................................... 15

        A.      The Deferential Arbitrary And Capricious Standard Of Review Applies To
                The Court's Review Of Stolarik's Claim For Benefits Under The Plans ........... 15

        B.      The Trustees Reasonably Determined That Stolarik Is Not Eligible For
                Benefits Because He Entered Into An Agreement Stating That He Will
                Not Receive Any Benefits As An Employee ........................................................ 17

        C.      The Trustees Reasonably Determined That Stolarik Was Not Eligible For
                Benefits Because He Was Not Treated As An Employee In The
                Performance Of His Services For The Times ....................................................... 17

CONCLUSION ........................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambris v. Bank of N.Y.*,
No. 96-cv-0061, 1998 WL 702289 (S.D.N.Y. Oct. 7, 1998).............................................13

*Baird v. Prudential Ins. Co. of Am.*,
No. 09-cv-7898, 2010 WL 3743839 (S.D.N.Y. Sept. 24, 2010), *aff'd*, 458
F. App'x 39 (2d Cir. 2012) ................................................................................2, 15, 16

*Bolduc v. Nat'l Semiconductor Corp.*,
35 F. Supp. 2d 106 (D. Me. 1998) .....................................................................................12

*Brennan v. Metro. Life Ins. Co.*,
275 F. Supp. 2d 406 (S.D.N.Y. 2003).........................................................................12, 14

*Carey v. IBEW Local 363 Pension Plan*,
201 F.3d 44 (2d Cir. 1999).................................................................................................13

*Downes v. JP Morgan Chase & Co.*,
No. 03-cv-8991, 2004 WL 1277991 (S.D.N.Y. June 8, 2004) ..........................................12

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989)...........................................................................................................15

*Guilbert v. Gardner*,
480 F.3d 140 (2d Cir. 2007)...............................................................................................11

*Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*,
46 F.3d 1264 (2d Cir. 1995)...............................................................................................15

*Kienle v. Hunter Eng'g Co.*,
24 F. Supp. 2d 1004 (E.D. Mo. 1998), *aff'd*, 187 F.3d 641 (8th Cir. 1999)
(unpublished table opinion) ...............................................................................................12

*Kryzer v. BMC Profit Sharing Plan*,
No. 01-cv-299, 2001 WL 1587177 (D. Minn. Nov. 1, 2001)......................................12, 14

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)................................................................................................2

*Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension
Benefit Plan*,
698 F.2d 593 (2d Cir. 1983)...............................................................................................11

*Muller v. Am. Mgmt. Ass'n Int'l*,
    368 F. Supp. 2d 1166 (D. Kan. 2004) ............................................................12

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992) ..........................................................................4, 7, 17

*Pagan v. NYNEX Pension Plan*,
    52 F.3d 438 (2d Cir. 1995) ...........................................................................15

*Reches v. Morgan Stanley & Co.*,
    No. 16-cv-1663, 2016 WL 4530460 (E.D.N.Y. Aug. 29, 2016), *aff'd sub
    nom. Reches v. Morgan Stanley & Co. Inc.*, 687 F. App'x 49 (2d Cir.
    2017) ................................................................................................12

*Roganti v. Metro. Life Ins. Co.*,
    786 F.3d 201 (2d Cir. 2015) ...........................................................................15

*Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan*,
    No. 10-cv-9613, 2013 WL 4860119 (S.D.N.Y. Sept. 11, 2013) ......................................12

*Smith v. CPC Int'l, Inc.*,
    104 F. Supp. 2d 272 (S.D.N.Y. 2000), *aff'd*, 33 F. App'x 586 (2d Cir.
    2002) ................................................................................................18

*Walker v. Pharm. Research & Mfrs. of Am.*,
    439 F. Supp. 2d 103 (D.D.C. 2006) ..................................................................12

## STATUTES

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ........................................................1, 10

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1, 2

N.Y. C.P.L.R. 213 (McKinney 2002) ......................................................................11

Defendants Newspaper Guild Of New York-The New York Times Pension Plan ("Pension Plan") and its Trustees, and Guild-Times Adjustable Pension Plan ("APP") and its Trustees respectfully submit this Memorandum of Law In Support of Their Motion to Dismiss the Eleventh Cause of Action of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Several months after filing a complaint against The New York Times Company ("The Times") asserting a variety of claims, Plaintiff Robert Stolarik ("Stolarik") amended his Complaint to add a claim for benefits against the Pension Plan and APP (collectively, the "Plans") and their Trustees.  The claim for benefits is premised on Stolarik's assertion that, notwithstanding the fact that he performed services for The Times as a photographer pursuant to an independent contractor agreement entered into in 2004, he was in fact an employee of The Times and, as such, was eligible to participate in the Plans.  Stolarik's claim should be dismissed because it is untimely and, in any event, without merit because there is no basis for overturning the Trustees' administrative determination denying his claim for benefits, which was made after a thorough evaluation of Stolarik's assertions and the applicable Plan provisions.

Claims for benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") that are brought in this jurisdiction are subject to a six-year statute of limitations, which begins to run upon a clear repudiation that is known, or should be known.  In cases like this one, where a person's entitlement to benefits hinges on whether he was an employee or independent contractor, courts have repeatedly held that the limitations period began to run when the person was advised or acknowledged that he was an independent contractor and/or that he would not be receiving benefits.  Because the agreement that Stolarik

executed in 2004 explicitly stated that he was an independent contractor and not entitled to receive benefits, any claim for benefits was repudiated at that time and thus his claim is time-barred.

Despite the untimeliness of his claim, the Trustees thoroughly considered it, invited both Stolarik and The Times to present their positions, and conducted an appeal hearing that provided Stolarik (accompanied by his attorney) with an opportunity to present his case in person. The Trustees ultimately determined that Stolarik was not eligible for benefits under the Plans' terms because he renounced any claim for benefits and was not treated by The Times as an employee. The Trustees' determination can be overturned only if, upon a review of the administrative record, this Court were to conclude that the Trustees acted arbitrarily and capriciously. There is no basis for such a finding here, given the thorough and well-reasoned determination made by the Trustees. Accordingly, even if not found to be untimely, Stolarik's claim should be dismissed.

## STATEMENT OF FACTS

This Statement of Facts is derived exclusively from the administrative record, which already has been provided to Stolarik (Declaration of Robert A. Costello ("Costello Decl."), ¶ 2 & Ex. A), and is expressly referenced in the Amended Complaint (Compl. ¶¶ 43−69). *See, e.g.*, *Baird v. Prudential Ins. Co. of Am.*, No. 09-cv-7898, 2010 WL 3743839, at *8−9 (S.D.N.Y. Sept. 24, 2010) (Gardephe, J.) (ruling that claims for benefits under ERISA are adjudicated based on a review of the administrative record), *aff'd*, 458 F. App'x 39 (2d Cir. 2012).[1]

---

[1] On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court may consider the complaint and documents incorporated by reference in the complaint and undisputedly authentic documents on which the plaintiff's claims are based. *See, e.g.*, *McCarthy v. Dun* & *Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

A.      **The Plans**

The Pension Plan and APP each provide retirement benefits to eligible participants based

on a prescribed formula.  (Costello Decl., Ex. B at Foreword; Ex. C at Foreword.)  At all relevant

times, both Plans were jointly administered by an equal number of Trustees designated by The

Times and The Newspaper Guild of New York, TNG/CWA Local 31003 (the "Guild").  (Compl.

¶¶ 8−9; Costello Decl., Ex. B at § 1.46; Ex. C at § 1.45.)

Under the terms of the Plans, a Participant means an employee who is or has been

engaged in Covered Employment after achieving certain eligibility thresholds related to age and

length of service.  (Costello Decl., Ex. B at § 1.35; Ex. C at § 1.37.)  "'Covered Employment'

means employment of a Member by [The Times] in one of the bargaining units subject to the

Collective Bargaining Agreement or in Foreign Service."  (*Id.* at Ex. B at § 1.13; Ex. C at

§ 1.14.)  "'Member' means an Employee [or Participant] in one of the bargaining units subject to

the Collective Bargaining Agreement or in Foreign Service."  (*Id.* at Ex. B at § 1.32; Ex. C at

§ 1.34.)

Both Plans provide that the "Trustees shall have the sole and absolute discretion and

authority to interpret and construe the terms and provision of the Plan, to resolve ambiguities,

inconsistencies and omissions therein, to make factual findings and other determinations and to

issue rulings regarding the rights and benefits of Members and of all other persons having or

claiming an interest in the Plan[s]."  (*Id.* at Ex. B at § 10.6; Ex. C at § 8.6.)

B.      **Stolarik's Claim For Benefits**

In 2004, Stolarik entered into a freelance agreement (the "Freelance Agreement") with

The Times pursuant to which he provided photography services as an independent contractor.

(Compl., ¶¶ 22, 28−29; Costello Decl., Ex. D.)  The Freelance Agreement states:

3

> You are an independent contractor, and as such you do not receive any benefits as an employee of The Times.   The Times will provide you with IRS form 1099 at the end of the year reflecting all amounts paid to you for that year.

(Costello Decl., Ex. D at ¶ 9.)

In July 2016, more than a dozen years after he began providing freelance photography services to The Times, Stolarik for the first time submitted a claim for benefits pursuant to the Plans' administrative procedures, claiming that he was an employee who had been "improperly classified as an independent contractor throughout his tenure" and that had he been properly classified he would have been entitled to benefits from the Plans.  (*Id.* at Ex. E.)[2]  Upon receipt of Stolarik's claim, the Trustees requested from The Times an explanation of its view as to why it considered Stolarik to be an independent contractor.  (*Id.* at Ex. G.)  The Times provided a comprehensive written response to the Trustees that described the nature of the services that Stolarik had been performing and why, in The Times' view, Stolarik was properly treated as an independent contractor.  (*Id.* at Ex. H.)

After reviewing the information provided by Stolarik and The Times, the Trustees advised Stolarik that his claim under the Plans had been denied.  (*Id.* at Ex. I.)  The Trustees explained that Stolarik was not an "Employee" under the Plans because they interpreted the Plan language (described above) to exclude from eligibility an individual who is performing services under a contract that specifically states that he is an independent contractor and not eligible for benefits.  The Trustees independently concluded that Stolarik was not an "Employee" eligible for Plan benefits because he was not treated as an employee by The Times.  In reaching that conclusion the Trustees applied the factors established by the Supreme Court in *Nationwide Mut.*

---

[2] In advance of submitting his claim for benefits, Plaintiff requested and received a copy of the Plan documents from the Fund.  (*Id.* at Ex. F; Ex. E at 2.)

*Ins. Co. v. Darden*, 503 U.S. 318 (1992) for the purpose of determining, under ERISA, whether a person was an employee or independent contractor, and concluded that the factors overwhelmingly supported the conclusion that Stolarik was an independent contractor.  (*See infra* pp. 7−10.)  The Trustees' conclusion was based on their understanding of the facts and circumstances related to Stolarik's arrangement with The Times:

- Stolarik provided freelance photography services for The Times under a Freelance Agreement signed in 2004 that specifically stated that he was an independent contractor and not eligible for benefits;

- The Times offered Stolarik, on a project-by-project basis, the opportunity to photograph events and had no control over the manner in which he conducted the work;

- Stolarik was free to decline any assignment and only received remuneration if he completed the assignment;

- Stolarik provided his own photography equipment except in exceptional situations when his equipment was damaged mid-assignment;

- Stolarik never before challenged his freelance status;

- Stolarik repeatedly characterized himself as a freelance photographer on his professional website, in court filings, and in other marketing materials;

- Stolarik operated an independent business providing freelance photography services to media companies other than The Times;

- Stolarik was represented professionally by an independent agency that represents freelance photographers; and

- Stolarik operated an independent business that sought to enforce copyright laws against media companies, including The Times, on behalf of "independent artists."

(Costello Decl., Ex. I at 2.)

## C.     Stolarik's Appeal For Benefits

Stolarik appealed the denial of his claim for benefits, arguing again that he was an employee of The Times who was improperly classified as an independent contractor.  (*Id.* at Ex. J.)  He also supplemented his previous arguments, by contending that:  he had been given

5

assignments in the same manner as staff photographers; assignments were given in eight-hour blocks; he was not permitted to reject assignments and never did so to work for an unrelated publication; he worked a regular schedule of assignments for The Times even if there was no work; he was provided with space in which to work at The Times' office; editors regularly called him to check up on the progress of his assignments; he was given instructions on where to work; he attended training sessions and business meetings; and he was reimbursed for travel and other expenses.  (*Id.*)

The Trustees requested The Times' position with respect to Stolarik's newly-raised assertions.  (*Id.* at Ex. K.)  In a comprehensive written response, The Times explained why, in its view, even assuming Stolarik's new factual assertions were accurate, they would not alter the conclusion that Stolarik was, and always had been, an independent contractor.  (*Id.* at Ex. L.)

The Trustees also invited Stolarik to participate in an in-person hearing where he could present his arguments.  (*Id.* at Ex. M.)  Stolarik attended the hearing with his attorney.  Among other things, Stolarik argued that the Freelance Agreement should not preclude him from recovering benefits because his work activities changed after he signed the Freelance Agreement.

In light of the points raised by Stolarik in his appeal letter and at the hearing, the Trustees requested additional information from The Times, including:  (i) further information related to whether Stolarik had rejected assignments from The Times and, if so, the circumstances under which he had done so; (ii) whether The Times provided the same assignment forms to, and exercised the same level of control over, Stolarik as staff photographers;  (iii) whether Stolarik's fee arrangement had changed since Stolarik entered into his Freelance Agreement; and (iv) whether there was any documentation supporting Stolarik's argument that he received

assignments in eight-hour blocks.  (*Id.* at Ex. N.)  The Times provided the Trustees with a comprehensive written response.  (*Id.* at Ex. O.)

On September 15, 2017, the Trustees wrote to Stolarik, informing him that, after considering all the facts and circumstances presented by both Stolarik and The Times, they had concluded that Stolarik's appeal should be denied.  (*Id.* at Ex. P.)  The Trustees provided the following reasons for their ruling:

First, the Plans were properly construed to preclude eligibility for any individual who had entered into an agreement acknowledging that he was an independent contractor and disclaiming his rights to benefits.  In response to Stolarik's contention that his work activities changed after he entered into the Freelance Agreement, the Trustees determined that Stolarik had not provided any evidence that the Freelance Agreement had been amended or terminated, and Stolarik had never (until 2016) acted inconsistently with the understanding that he was working pursuant to that agreement.

Second, the Trustees determined that to be eligible for coverage as an "Employee" under the Plans, an individual must be treated as an employee, and also must be covered by the collective bargaining agreement entered into between The Times (and, if applicable, a subsidiary) and the Guild, which similarly limits coverage to employees.  The Trustees first concluded that the Freelance Agreement, which expressly provides for Stolarik's independent contractor status, was clear evidence that Stolarik was treated as an independent contractor, not an employee.  Furthermore, applying the criteria set forth in *Darden*, 503 U.S. 318, the Trustees concluded that Stolarik was not treated as an employee, and for that reason also would not satisfy the legal definition of an employee.   (*Id.* at Ex. P at 3−10.)  Specifically, the Trustees determined that:

(1)     The Times had little to no control over Stolarik's work because The Times offered Stolarik, on a project-by-project basis, the opportunity to photograph events using the manner and means that Stolarik deemed appropriate.  The Trustees rejected Stolarik's argument that the assignment forms he received warranted a different conclusion because those forms merely provided him with the information necessary to complete an assignment (*e.g.*, the address, time of event, basic information regarding the underlying news story, the types of shots desired, the necessary specifications in order for those shots to be published) and did not establish that The Times exercised control over the manner in which the photographs were taken.

(2)     Stolarik's specialized knowledge and skill was a characteristic of independent contractor status.

(3)     Stolarik provided his own photography equipment except in exceptional situations when his equipment was damaged mid-assignment, and Stolarik admitted that he used his own vehicle when traveling to assignment locations.

(4)      Although an assignment might specify the general location of an event for which photographs were to be taken, Stolarik had total control over how and where the photographs were taken.  And, contrary to Stolarik's assertion, the Trustees found that Stolarik had no workspace at The Times' office.

(5)     Despite the longevity of Stolarik's relationship with The Times, Stolarik was at all times offered assignments on a project-by-project basis under the terms of his Freelance Agreement, and his relationship with The Times would last until an assignment was completed, at which point The Times could choose whether to offer him another assignment (or not).  While Stolarik characterized his relationship with The Times as a

8

"continuing relationship," the Trustees determined that it was really a series of discrete, short-term assignments.

(6)     Stolarik was free to reject assignments offered by The Times at any time. Although Stolarik argued that he thought he was expected to accept every assignment offered to him, the evidence established that he declined assignments in the past for personal reasons and to accept work for another publication.

(7)     Stolarik had complete discretion, within the parameters of an assignment, over when and how long to work and Stolarik provided no evidence to the contrary other than a self-serving affidavit (along with his claim letter, *see id.* at Ex. E).  The Trustees also concluded that freelancers were not given assignments based on time blocks and Stolarik was never paid to be on-call.  As long as an assignment was completed within the parameters set on an assignment form, Stolarik controlled when the work was performed and the amount of time spent.

(8)     Stolarik was treated as an independent contractor for all tax purposes, *e.g.*, Stolarik received a Form 1099 and employment-related taxes were not withheld from his pay (*id.* at Ex. I at 6).

(9)     Stolarik had the right to hire and pay assistants.

(10)    Although photography is an important function of The Times' regular business and that weighed in favor of Stolarik being considered an employee, this factor was "significantly outweighed" by the other factors.

(11)    The Times could not prohibit Stolarik from performing services for competing publications and, in fact, Stolarik had worked for competing publications since entering the Freelance Agreement.  Stolarik had his own company through which he asserted

9

copyright claims against The Times.  Stolarik held himself out publicly in court filings, on his professional website, and in connection with his representation by Polaris Images, an independent agency that represents photographers, to be a freelance photographer.

(12)     Stolarik disclaimed his right to employee benefits in the Freelance Agreement. Furthermore, the Trustees concluded that, contrary to Stolarik's argument, the fact he was reimbursed expenses is often part of an independent contractor relationship.[3]

In short, based on all of the facts and circumstances presented by Stolarik and The Times, the Trustees concluded that Stolarik was not an employee within the meaning of the Plans and therefore was not eligible to participate in the Plans.  The Trustees found that Stolarik's Freelance Agreement was sufficient to reach that conclusion and, even if it were not, Stolarik was not an employee because The Times consistently treated him as an independent contractor. The Trustees also concluded that Stolarik failed to meet the legal definition of an employee, for the reasons stated.

**D.     The Amended Complaint**

Stolarik filed his initial Complaint on July 6, 2017 against The Times and Michele McNally, asserting several claims under federal and state law for unpaid wages, discrimination and retaliation.  (Dkt. 1.)  He subsequently filed an Amended Complaint on November 9, 2017, which added the Plans and the Trustees of the Plans (collectively, the "Plan Defendants") as defendants for the purpose of adding a single claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  (Dkt. 21 at Eleventh Cause of Action.)  Stolarik alleges that, although The Times always classified him as a freelance photographer who was issued a Form

---

[3] The Trustees also found that the Guild never treated Stolarik as an employee covered by the collective bargaining agreement entered into between The Times and the Guild.  (Costello Decl., Ex. P at 1.)

1099 (*id.* ¶ 28), he was misclassified and was really an employee entitled to receive benefits from the Plans (*id.* ¶¶ 43−44).  In support of his claim for benefits, Stolarik cites to the Plan documents and the correspondence pursuant to which he made his claim and appeal, as well as the Trustees' responses thereto.  (*Id.* ¶¶ 43−69.)

## ARGUMENT

Stolarik's claim for benefits should be dismissed because it accrued when he signed the Freelance Agreement in 2004 and is thus time-barred.  (*See infra* Point I.)  Independently, his claim should be dismissed on the merits.  It is well-established that this Court must defer to the Trustees' factual determinations and Plan interpretations unless they were arbitrary and capricious.  (*See infra* Point II.A.)  There is no basis under that standard—or any standard—for challenging the Trustees' well-reasoned decision.  (*See infra* Points II.B and II.C.)

**I.    STOLARIK'S CLAIM AGAINST THE PLAN DEFENDANTS SHOULD BE DISMISSED BECAUSE IT IS TIME-BARRED.**

The Court need look no further than the applicable statute of limitations to dismiss Stolarik's claim for benefits under the Plans.  Because ERISA does not prescribe a limitations period for claims for benefits, the limitations period is determined based on the most analogous state limitations statute.  *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007); *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983).  In New York, the most analogous period is the six-year statute of limitations applicable to breach of contract claims as set forth in N.Y. C.P.L.R. 213 (McKinney 2002).  *See, e.g.*, *Guilbert*, 480 F.3d at 148−49.

In the context of a claim for benefits by an individual who was classified or treated as an independent contractor, courts in this Circuit and others have consistently held that the statute of limitations commences when an individual has a general understanding that she was not eligible

11

for benefits.  The most obvious examples are when individuals sign agreements acknowledging

that they are not entitled to employee benefits or receive tax documentation classifying them as

independent contractors.  *See Reches v. Morgan Stanley & Co.*, No. 16-cv-1663, 2016 WL

4530460, at *3 (E.D.N.Y. Aug. 29, 2016) (concluding that plaintiff's claim accrued when he

received a Form 1099 classifying him as an independent contractor), *aff'd sub nom. Reches v.

Morgan Stanley & Co. Inc.*, 687 F. App'x 49, 50 (2d Cir. 2017) (summary order) (affirming

district court's conclusion that plaintiff's claim "accrued when he learned that he was being

classified as a[n] . . . independent contractor, because that information constituted notice that the

Defendant had repudiated the Plaintiff's eligibility for employee benefits"); *Schulman v. Herbert

E. Nass & Assocs. SEP IRA Plan*, No. 10-cv-9613, 2013 WL 4860119, at *3−4 (S.D.N.Y. Sept.

11, 2013) (concluding that the statute of limitations began to run when plaintiff received a Form

1099 identifying him as an independent contractor); *Walker v. Pharm. Research & Mfrs. of Am.*,

439 F. Supp. 2d 103, 107−08 (D.D.C. 2006) (holding that the statute of limitations began to run

when plaintiff signed an independent contractor agreement that stated she would not receive

employee benefits); *Muller v. Am. Mgmt. Ass'n Int'l*, 368 F. Supp. 2d 1166, 1173 (D. Kan. 2004)

(same); *Downes v. JP Morgan Chase & Co.*, No. 03-cv-8991, 2004 WL 1277991, at *3

(S.D.N.Y. June 8, 2004) ("the alleged breach occurred when J.P. Morgan classified Downes as

an independent contractor rather than as an employee, thereby rendering her ineligible for

benefits"); *Brennan v. Metro. Life Ins. Co.*, 275 F. Supp. 2d 406, 410 (S.D.N.Y. 2003) (holding

that plaintiffs' claims accrued on the day they signed independent contractor agreements that

repudiated employee benefits); *Kryzer v. BMC Profit Sharing Plan*, No. 01-cv-299, 2001 WL

1587177, at *4 (D. Minn. Nov. 1, 2001) (same); *Bolduc v. Nat'l Semiconductor Corp.*, 35 F.

Supp. 2d 106, 109, 119 (D. Me. 1998) (same); *Kienle v. Hunter Eng'g Co.*, 24 F. Supp. 2d 1004,

12

1006−07 (E.D. Mo. 1998) (same), *aff'd*, 187 F.3d 641 (8th Cir. 1999) (unpublished table opinion).[4]

The rulings with respect to the accrual of claims in the independent contractor context mirror Second Circuit principles applicable to benefit claims generally.  It is well-established that the accrual of a claim is triggered by the participant's awareness of the claim, regardless of whether he has filed a formal claim for benefits.  *See, e.g.*, *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 47−48 (2d Cir. 1999) ("plaintiff's cause of action accrues upon a clear repudiation that is known, or should be known, to the plaintiff—regardless of whether the plaintiff formally applied for benefits").  A contrary holding would have "potentially great" negative effects on the availability of witnesses and evidence, since pension applications are normally not made until after employees have retired.  *See id.* at 48.

In this case, it is undisputed that Stolarik knowingly and voluntarily signed the Freelance Agreement in 2004, which expressly stated that he was not eligible to participate in any employee benefit plan, and paid him as an independent contractor.  (Costello Decl., Ex. D.)  Accordingly, his claim for benefits accrued in 2004 and is thus time-barred.

Stolarik advanced two arguments in his pre-motion letter as to why the Freelance Agreement cannot serve as a repudiation of his claim, both of which are without merit.  (Dkt. 30 at 2.)  First, he argued that his status as an independent contractor changed at some point after the agreement was signed.  The Trustees determined, however, that "at no time over the years in question" did Plaintiff "act inconsistently with the understanding that he was working pursuant

---

[4] *See also Ambris v. Bank of N.Y.*, No. 96-cv-0061, 1998 WL 702289, at *3, *7−9 (S.D.N.Y. Oct. 7, 1998) (holding that plaintiff's general understanding that she was not entitled to employee benefits—demonstrated by the fact that it "was widely known, and discussed, among her co-workers and that she complained about it to her supervisor"—was sufficient to trigger the running of the statute of limitations).

to that Freelance Agreement."  (Costello Decl., Ex. P at 2−3.)  That decision is entitled to deference by this Court.  (*See infra* Point II.)

Second, Stolarik argued that his claim against the Plans cannot be repudiated by virtue of his agreement with The Times.  It is well-established, however, that a repudiation directly from a plan fiduciary is not required.  *See Brennan*, 275 F. Supp. 2d at 410 n.9 ("The fact that the repudiation did not come directly from a Plan fiduciary . . . is immaterial") (citing *Ambris*, 1998 WL 702289, at *6−7 ("there is no indication in [*Miles*] that a plaintiff's general understanding that she is not eligible for benefits is somehow insufficient under *Miles* because it did not come directly from a fiduciary"); *Kryzer*, 2001 WL 1587177, at *2−4 (rejecting argument that the statute of limitations did not begin to accrue at the time an independent contractor agreement was signed because the agreement was not a repudiation by a plan fiduciary) (citing *Kienle*, 24 F. Supp. 2d at 1006−07, *aff'd*, 187 F.3d 641).  "To require that the repudiation come directly from a plan fiduciary would be to require that beneficiaries file a formal claim for benefits, which was explicitly rejected by the Second Circuit."  *Brennan*, 275 F. Supp. 2d at 410 n.9 (citing *Carey*, 201 F.3d at 47−48).[5]

In short, Stolarik's claim for benefits must be deemed to have accrued as of April 2, 2004—the day he signed the Freelance Agreement.  Because that accrual date is well over six years ago, the Eleventh Cause of Action of the Amended Complaint is indisputably time-barred and must be dismissed.

---

[5] Because the repudiation need not come from the Trustees, Stolarik's claim is time-barred even as to the APP, which was first established in 2013.

## II. STOLARIK'S CLAIM ALSO MUST BE DISMISSED BECAUSE THE TRUSTEES' CONCLUSION THAT HE WAS NOT ELIGIBLE FOR BENEFITS UNDER THE PLANS WAS NOT ARBITRARY AND CAPRICIOUS.

Stolarik's claim for benefits is independently dismissible because, in the absence of a finding that the Trustees' decision was arbitrary and capricious (which it clearly was not), this Court must defer to the Trustees' factual determinations and Plan interpretations, all of which led to the indisputable conclusion that Stolarik was not an employee within the meaning of the Plans and thus not entitled to benefits.

### A. The Deferential Arbitrary And Capricious Standard Of Review Applies To The Court's Review Of Stolarik's Claim For Benefits Under The Plans.

Where, as here, a plan provides the plan fiduciary with discretionary authority to determine eligibility for benefits or to construe the terms of a plan, the court's review of the claim is governed by ERISA's deferential arbitrary and capricious standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114−15 (1989); *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 210−11 (2d Cir. 2015); *Baird*, 2010 WL 3743839, at *6. As the Second Circuit has explained:

> [W]e may overturn a decision to deny benefits only if it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." This scope of review is narrow, thus we are not free to substitute our own judgment for that of the [fiduciary] as if we were considering the issue of eligibility anew.

*Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995) (internal citations omitted); *see Roganti*, 786 F.3d at 211 ("This standard is highly deferential, and the scope of judicial review is narrow") (internal quotations omitted). Even if the plan participant offers another reasonable interpretation of the plan provision at issue, the court must defer to the interpretation of the plan fiduciary. *See, e.g., Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1272−73 (2d Cir. 1995); *Baird*, 2010 WL 3743839, at *7. "'Substantial evidence' is 'such

evidence that a reasonable mind must accept as adequate to support the conclusion reached by the [decision-maker and] requires more than a scintilla of evidence but less than a preponderance.'" *Baird*, 2010 WL 3743839, at *6 (alteration in original) (citations omitted).

The arbitrary and capricious standard applies here because both Plans vest the Trustees with the discretionary authority to determine eligibility for benefits and construe the terms of the Plans. The Plans unambiguously state that:

> The Trustees shall have the sole and absolute discretion and authority to interpret and construe the terms and provision of the Plan, to resolve ambiguities, inconsistencies and omissions therein, to make factual findings and other determinations and to issue rulings regarding the rights and benefits of Members and of all other persons having or claiming an interest in the Plan[s].

(Costello Decl., Ex. B at § 10.6; Ex. C at § 8.6.)

Consistent with the authority vested in them, the Trustees investigated Stolarik's claim and appeal, which included a review and evaluation of Stolarik's letter submissions, multiple consultations with The Times, and an in-person hearing attended by Stolarik and his counsel. The Trustees' decision to deny Stolarik's claim for benefits was based on an interpretation of the Plans' eligibility provisions, pursuant to which the Trustees determined that Stolarik was not eligible for benefits if he signed an agreement acknowledging that he was not an employee entitled to benefits, or if he was not treated as an employee, as well as a series of factual determinations supporting their conclusion that Stolarik was treated as an independent contractor, and not an employee. Absent a finding that the Trustees acted in an arbitrary and capricious fashion in reaching these determinations, their decision to deny Stolarik's claim must be upheld. (*Id.* at Ex. P.)

16

**B.** **The Trustees Reasonably Determined That Stolarik Is Not Eligible For Benefits Because He Entered Into An Agreement Stating That He Will Not Receive Any Benefits As An Employee.**

Stolarik's claim for benefits must be dismissed because the Trustees reasonably concluded that by virtue of the Freelance Agreement he was not entitled to benefits under the Plans. As noted, the Plans limit eligibility to individuals who are employees of The Times or a subsidiary of The Times. (*Id.* at Ex. P at 2 (citing Ex. B at § 1.20; Ex. C at § 1.22).) By signing the Freelance Agreement, Stolarik expressly acknowledged that he was "an independent contractor, and as such [would] not receive any benefits as an employee of The Times." (*Id.* at Ex. D ¶ 9.) The Trustees reasonably concluded that, having expressly agreed that he was not an employee and not entitled to benefits, Stolarik did not satisfy the Plans' eligibility criteria. (*Id.* at Ex. P.) Furthermore, the Trustees reasonably rejected Stolarik's unsupported assertion that his work subsequent to signing the agreement had changed since at no time had Stolarik acted inconsistently with the understanding that he was working pursuant to the Freelance Agreement. (*Id.* at Ex. P at 2−3.)

**C.** **The Trustees Reasonably Determined That Stolarik Was Not Eligible For Benefits Because He Was Not Treated As An Employee In The Performance Of His Services For The Times.**

Stolarik's claim for benefits also must be dismissed because the Trustees reasonably concluded that Stolarik was treated like an independent contractor in the performance of his services with The Times. The mere fact that Stolarik worked pursuant to the Freelance Agreement, without more, supported that conclusion. (*Id.* at Ex. I; Ex. P.) But the Trustees also proceeded to consider and apply the factors that normally are dispositive of whether an individual is considered a common law employee, as set forth in *Darden*, 503 U.S. 318. In *Darden*, the Supreme Court determined that the ERISA definition of "employee" should be understood by reference to traditional agency law principles, which generally apply the

following criteria to determine whether an employer-employee relationship exists, none of which is independently dispositive:  (1) the right to control the worker's manner and means of production, (2) the worker's level of skill, (3) the source of equipment necessary to perform the job, (4) the location of the work, (5) the duration of the relationship, (6) the right to decline assignments, (7) discretion over when and how long to work, (8) the method of payment, (9) the ability to hire and pay assistants, (10) whether the work is the regular business of the service recipient, (11) the right to perform services to competitors, and (12) the provision of employee benefits.  *See id.* at 323−24; *Smith v. CPC Int'l, Inc.*, 104 F. Supp. 2d 272, 275 (S.D.N.Y. 2000), *aff'd*, 33 F. App'x 586 (2d Cir. 2002).

Applying those factors to the relationship between Stolarik and The Times, the Trustees concluded that they overwhelmingly supported the conclusion that Stolarik was treated as an independent contractor—not an "Employee"—and thus not entitled to benefits under the Plans. (Costello Decl., Ex. I; Ex. P.)

In short, based on a full and fair review of Stolarik's claim and appeal for benefits, the Trustees reasonably determined that Stolarik was not an "Employee" within the meaning of the Plans and thus not eligible to participate in the Plans.  Because that determination was not arbitrary and capricious, this Court must defer to it and dismiss the Eleventh Cause of Action of the Amended Complaint.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully submit that the Eleventh Cause

of Action of the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
        January 12, 2018

PROSKAUER ROSE LLP


By: */s/ Myron D. Rumeld*
        Myron D. Rumeld
        Russell L. Hirschhorn
Eleven Times Square
New York, New York 10036
Tel:  (212) 969-3000
mrumeld@proskauer.com
rhirschhorn@proskauer.com

*Attorneys for Defendants Trustees Of*
*Newspaper Guild Of New York-The New*
*York Times Pension Plan, Newspaper Guild*
*Of New York-The New York Times Pension*
*Plan, Trustees Of Guild-Times Adjustable*
*Pension Plan, And Guild-Times Adjustable*
*Pension Plan*