# EXHIBIT H



The New York Times
Company

**Marcijane Kraft**
Vice President and
Assistant General Counsel

August 29, 2016

620 Eighth Avenue
New York, NY 10018

tel 212.556-7491
fax 212.556-4634
kraftm@nytimes.com

Trustees of the Newspaper Guild of New York—
New York Times Pension Plan
1501 Broadway, Suite 1724
New York, New York 10036

Trustees of the Guild—Times Adjustable Pension Plan
1501 Broadway, Suite 1724
New York, New York 10036

<u>Attention</u>:  Robert A. Costello, Administrator

Re:  Robert Stolarik

Dear Mr. Costello:

This letter is in response to your August 8, 2016 letter to Christopher Biegner, requesting The New York Times Company's ("The Times") position with respect to Robert Stolarik's claim that he is an employee of The Times entitled to benefits under the Newspaper Guild of New York— The New York Times Pension Plan, As Amended and Restated Effective as of January 1, 2015 (the "Guild Plan") and the Guild—Times Adjustable Pension Plan, Amended and Restated Effective January 1, 2016 (the "APP Plan," and together with the Guild Plan, the "Pension Plans").  Mr. Stolarik is not and has never been an employee of The Times, and his claim for benefits under the Plans should be denied.

Mr. Stolarik is a freelance photographer who has performed services for The Times (and many others) from time to time over the last fifteen years.  At all times, he has performed these services as a freelancer and an independent contractor, as memorialized in the written freelance photography services agreement he signed with The Times in April 2004 (the "Freelance Agreement").  (A copy of Mr. Stolarik's Freelance Agreement is attached as Exhibit A.)  As he agreed in his Freelance Agreement with The Times, Mr. Stolarik is "an independent contractor, and as such [he does] not receive any benefits as an employee of The Times." (*See* Ex. A, par. 9.)  Mr. Stolarik accepted a freelance relationship with The Times on these terms, as evidenced by his signature on the Freelance Agreement.  He provided freelance photography services to The Times for more than a dozen years after signing the Freelance Agreement, without challenging his independent contractor or freelance status or making any claim to the kinds of benefits that The Times provides to its employees, including under the Pension Plans.

60656v1

I.   **MR. STOLARIK IS AND ALWAYS HAS BEEN AND HOLDS HIMSELF OUT AS A FREELANCE PHOTOGRAPHER AND INDEPENDENT CONTRACTOR, INCLUDING _VIS-À-VIS_ THE NEW YORK TIMES**

A. *Mr. Stolarik Operates an Independent Photography Businesses That Serves Many Clients*

Mr. Stolarik operates an independent, established business—Robert Stolarik Photography. The business's websites—www.robertstolarikphotography.com and http://www.nypress.org—note Mr. Stolarik's work in both the photojournalism and wedding photography industries. In the former industry, the website notes that Mr. Stolarik has worked on assignments for a number of major newspapers, magazines, and periodicals in addition to The Times, including Time Magazine, Le Monde, Newsweek, Le Figaro, U.S. News & World Report, The Wall Street Journal, Paris Match, and the Chronicle for Higher Education. Mr. Stolarik's website lists two business addresses, a telephone number, a facsimile number, and an email address (rstolarik@nypress.org) where potential clients can contact him. The website bears a copyright from 2000, predating his freelance relationship with The Times.

Mr. Stolarik is represented professionally by Polaris Images, a major independent agency that represents a global network of photographers and that distributes photographs to media industries worldwide. The Polaris website showcases many thousands of images created by Mr. Stolarik as a freelance photojournalist, for a wide range of clients (including competitors of The Times). (*See* http://www.polarisimages.com/index.php?43195985213911200340.00009080773976624966552 5112012153257.)

B. *Mr. Stolarik Has Repeatedly Asserted in Court and Thus Admitted That He Is a Freelance Professional Photographer*

Mr. Stolarik clearly holds himself out to the public as a freelance professional photographer, and he has repeatedly confirmed his freelance status in submissions he made to the federal courts. For example, in July 2006, Mr. Stolarik included the following admission in a complaint he filed with the United States District Court for the Southern District of New York, in a lawsuit against certain New York City police officers:

> Plaintiff Robert Stolarik is a freelance professional photographer. As a professional photographer, he has worked with, for example, The New York Times and Polaris Images, a major photography agency. The New York Times and Polaris Images have Mr. Stolarik under contract to provide photographic services.

*Robert Stolarik v. New York City Police Officers John Doe 1 through 12,* S.D.N.Y. Case No. 1:06-cv-05416-JGK, Complaint (Document No. 1), filed Jul. 18, 2006, at ¶ 9.

More recently, in July 2015, Mr. Stolarik again confirmed his independent professional status in a filing with the United States District Court for the Southern District of New York in another

lawsuit, describing himself as "an accomplished freelance photographer." *Robert Stolarik v. City of New York*, S.D.N.Y. Case No. 1:15-cv-05858-RMB, Complaint (Document No. 1), filed Jul. 27, 2015, at ¶ 10.

These statements, made by Mr. Stolarik in court pleadings, constitute formal admissions of his independent freelance status as a matter of law. As the United States Court of Appeals for the Second Circuit and other federal and state courts have consistently held, "[t]he law is quite clear that such pleadings constitute the admissions of a party-opponent and are admissible in the case in which they were originally filed *as well as in any subsequent litigation involving that party*." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (emphasis added) (citing authorities); *see also Bogoni v. Friedlander*, 197 A.D.2d 281, 291–92 (1st Dep't 1994) ("[A] statement in a pleading constitutes a formal judicial admission[.]") (citing authorities).

### C. *Mr. Stolarik Has Other Independent Business Interests*

In addition to his freelance photography business, Mr. Stolarik is also the founder and owner of a business called Copyright Collective. Copyright Collective purports to represent freelance and other photographers in their efforts to seek payments from entities that use their photographs or otherwise to enforce their alleged rights. In fact, on behalf of his business Copyright Collective, Mr. Stolarik has sent cease and desist letters as well as invoices to several licensees of The Times, including in cases where the photographs at issue were properly licensed by The Times to the licensees and no additional payments were owed. Mr. Stolarik has contacted The Times on numerous occasions on behalf of Copyright Collective, often in an adversarial posture. This in itself belies Mr. Stolarik's newly-conceived claim that he is an employee of The Times. Indeed, if his claim were true, his actions on behalf of Copyright Collective would clearly violate his duty of loyalty to his alleged employer.

### II.   MR. STOLARIK'S WORKING RELATIONSHIP WITH THE TIMES DEMONSTRATES THAT HE IS A FREELANCE PHOTOGRAPHER AND INDEPENDENT CONTRACTOR

Mr. Stolarik is clearly in business for himself and he advertises his services (including through his websites) to the public. His services are not and never have been exclusive to The Times, and he is free to work—and does work—for a variety of other clients and businesses, including for competitors of the Times. The Times did not provide Mr. Stolarik with office or other space within its facilities. Mr. Stolarik has never had a Times identification or security card, and is not able to enter The Times' offices or facilities on his own or without an appointment.

The Times does not provide equipment or supplies for Mr. Stolarik to use in performing his services, except on the rarest of occasions (*e.g.,* on one occasion in 2012, on a temporary loan basis, when his camera was damaged mid-assignment). To get from location to location, Mr. Stolarik uses his own vehicle.

Mr. Stolarik is and was always free to accept or reject any opportunity to perform services for The Times, as well as to accept or reject The Times' ideas for an assignment or photograph. At

times, Mr. Stolarik proposes his own ideas for assignments and/or photographs to The Times, without solicitation from The Times.

When he has performed freelance services for The Times, Mr. Stolarik has done so in accordance with his own availability. He has refused many freelance opportunities with The Times over the years because of other work commitments on his part (for other clients of his). He had no quotas or minimum number of assignments or photographs he was required to accept or submit to The Times. If he did accept an assignment from The Times, Mr. Stolarik was not required to provide progress updates on his work or to submit draft photographs for The Times' approval. The Times did not specify the amount of time Mr. Stolarik had to devote to an assignment; he was at liberty as a professional to determine how much time he needed to dedicate to a certain project and how to spend that time. Mr. Stolarik did not work any regular schedule of assignments for The Times; the number and types of assignments he chose to accept varied from week to week, month to month, and year to year.

The Times did not evaluate Mr. Stolarik's performance or require him to attend any training sessions or business meetings. He was not integrated into The Times' operations. The Times issued no standards or guidelines for Mr. Stolarik's performance or work product, whether technical or otherwise. To the contrary, Mr. Stolarik retained full and ultimate control over all aspects of his services, including choice of equipment (camera, lenses, filters, film, etc.), technique (composition, perspective, light sources, aperture, shutter speed, etc.), processing and post-processing techniques, and all other aspects of his craft. When on assignment, he was not required or permitted to state or exhibit any association with The Times.

The Times did not control the manner or means by which Mr. Stolarik performed his services. He was simply asked, from time to time, whether he could cover a certain photographic assignment in a certain place, and he would accept the assignment or not at his discretion.

Consistent with his written Freelance Agreement, Mr. Stolarik never received employee benefits or fringe benefits from The Times. He was paid on a Form 1099 basis, consistent with his status as an independent contractor, and he ostensibly reported the fees he earned from his services for The Times, along with the fees he earned from his other clients, on his business or self-employment tax returns, and deducted business expenses consistent with his status as an independent contractor.

## III.   MR. STOLARIK IS AN INDEPENDENT CONTRACTOR UNDER GOVERNING LAW

The Pension Plans are subject to and governed by Employee Retirement Income Security Act ("ERISA"). Under ERISA, courts consider the totality of the circumstances to determine whether a worker qualifies as an independent contractor. *See Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 319 (1992) (citing *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739–740 (1989)) (setting forth non-exhaustive list of factors); *see also Sellers v. Royal Bank of Canada*, No. 12 Civ. 1577, 2014 WL 104682, at *8-9 (S.D.N.Y. Jan. 8, 2014) (holding worker was independent contractor under ERISA after applying factors derived from Fair Labor Standards Act and New York law). While no one factor is determinative to a worker's

classification, under ERISA, courts place emphasis on the right to control the worker's manner and means of production, the worker's level of skill, whether the hiring party provided employee benefits, the tax treatment of the worker, and the right to assign other projects to the worker. *See Darden,* 503 U.S. at 319; *Nationwide Mutual Ins. Co. v. Mortensen,* 606 F.3d 22, 32 (2d Cir. 2010); *Legeno v. Douglas Elliman, LLC,* 311 Fed. Appx. 403, 405 (2d Cir. 2009). Mr. Stolarik cannot demonstrate he is anything but an independent contractor based on these factors.

The Times considered and engaged Mr. Stolarik as an independent contractor, and Mr. Stolarik controlled the manner and means of his photographic productions. Mr. Stolarik retained all discretion on whether to accept an assignment and how to complete that assignment, and The Times never had the right to assign Mr. Stolarik anything beyond what Mr. Stolarik chose to accept. *See Mortensen,* 606 F.3d at 32 (workers were independent contractors where defendant did not have "full control over the manner and means of production" and workers "control[ed] how much they work[ed]"); *Legeno,* 311 Fed. Appx. at 405 (workers were independent contractors where they retained "substantial discretion over how to complete [their] assigned tasks"); *see also Raben v. Conde Nast Publications, Inc.,* 2 A.D.3d 117, 117 (1st Dep't 2003) (contract between publisher and photographer specified that he was an independent contractor, and testimony demonstrated that while he undertook to achieve an agreed result, he was not subject to publishers' direction with respect to means employed to perform the assigned work). While Mr. Stolarik alleges that The Times determined "when and how long" he worked—an allegation The Times disputes—courts recognize that "even independent contractors…are required to keep to a schedule. The fact that an independent contractor is required to be at a job…at a certain time does not eliminate his status as an independent contractor." *Sellers,* 2014 WL 104682, at *6; *see also Berger v. Dykstra,* 203 A.D.2d 754, 754-55 (3d Dep't 1994) (independent contractor was not provided with a sales pitch or otherwise provide any guidance or advice on method and means by which he did his work). Similarly, even if The Times offered him "continuous, not intermittent" work, courts regularly find even year-over-year contracts favor independent contractor status. *See id.* at *8 (citations omitted).

Furthermore, Mr. Stolarik suggests that his "specialized skill" in photography is favorable to his employment status, but this factor does not weigh in favor of his claim. That Mr. Stolarik may have "operated with a high degree of skill . . . does not weigh against a finding of independent contractor status." *See id.* at *7 (citing *Tagare v. Nynex Network Sys. Co.,* 994 F. Supp. 149, 157 (S.D.N.Y. 1997) (finding the fact that a plaintiff "was hired for his specialized skills" to weigh in favor of an independent contractor status). To the contrary, the Second Circuit has stated that "[w]orkers with a high level of skill such as architects, *photographers,* graphic artists, drafters, and computer programmers are more likely to be independent contractors[.]" *Lee v. Glessing,* 51 Fed. Appx. 31, 32 (2d Cir. 2002) (emphasis added).

Lastly, Mr. Stolarik was paid on a Form 1099 basis, responsible for reporting his income and paying his own taxes, and received no benefits from The Times, factors that support independent contractor status. *See Mortensen,* 606 F.3d at 32 (purported employees were independent contractors under ERISA where they, among other things, paid their own taxes and received no benefits from defendant); *Legeno,* 311 Fed. Appx. at 405 (purported employees were independent contractors given they could work from home, set their own hours, were paid

commission, received no benefits, paid taxes, created own business opportunities, paid for own expenses, and were free to engage in other employment).

## IV.   CONCLUSION

It is abundantly clear from these facts—which have not changed materially since Mr. Stolarik first started offering his freelance services to The Times some fifteen years ago—that Mr. Stolarik is an independent contractor vis-à-vis The Times, and not an employee of The Times. As a freelancer and independent contractor, he is not eligible for and has no entitlement to employee benefits from The Times, including under the Pension Plans.  That Mr. Stolarik has enjoyed a mutually beneficial freelance relationship with The Times over many years, and through many projects, is not surprising—as one of the preeminent and most widely circulated newspapers in the world, The Times is one of the largest purchasers of freelance photography. But Mr. Stolarik always was—and remains—an independently-established professional who offers his services to the general public and performs his services and craft free from control, supervision, or direction.  This is the hallmark of an independent contractor.  And finally, Mr. Stolarik has taken the serious step of asserting in pleadings in federal court—and thus, by operation of law, admitting—that he is an independent contractor, including with respect to his services for The Times.

Very truly yours,

Marcijane Kraft
Enclosures

6