UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/31/18
```

ROBERT STOLARIK,

                    Plaintiff,

        - against -

THE NEW YORK TIMES COMPANY, MICHELE
MCNALLY, TRUSTEES OF THE NEWSPAPER
GUILD OF NEW YORK - NEW YORK TIMES
PENSION PLAN, NEWSPAPER GUILD OF NEW
YORK – NEW YORK TIMES PENSION PLAN,
TRUSTEES OF THE GUILD-TIMES ADJUSTABLE
PENSION PLAN, and GUILD - TIMES ADJUST
ABLE PENSION PLAN,

                    Defendants.

**MEMORANDUM
OPINION & ORDER**

17 Civ. 5083 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Robert Stolarik – a photographer who formerly worked for The New

York Times – brings this action against The New York Times (the "Times"), Michelle McNally

– the Assistant Managing Editor for Photography at the Times – and the Trustees of the

Newspaper Guild of New York-New York Times Pension Plan, the Newspaper Guild of New

York-New York Times Pension Plan, the Guild-Times Adjustable Pension Plan, and the Trustees

of the Guild-Times Adjustable Pension Plan (collectively, the "Plan Defendants"), alleging that

the Times improperly classified him as a freelance photographer and independent contractor and

discriminated against him on the basis of age and arrest record.  (Am. Cmplt. (Dkt. No. 21) ¶¶ 1,

5-10, 26, 44)

The Amended Complaint asserts claims for failure to pay overtime compensation

in violation of the Fair Labor Standards Act (the "FLSA") and New York Labor Law (the

"NYLL"); failure to pay Plaintiff the "agreed-to wages and benefits for a staff photographer of

[t]he Times set forth in the governing collective bargaining agreement" in violation of Article 6 of NYLL § 190; discrimination based on age and arrest record, and retaliation in violation of the New York City Human Rights Law (the "NYCHRL"); breach of quasi-contract arising out of the Times' failure to pay Plaintiff "a salary equivalent to that of staff photographers at [t]he Times;" and denial of benefits pursuant to the Employment Retirement Income Security Act ("ERISA") § 502(a)(1)(B). (Id. ¶¶ 144-191)

The Times has moved to dismiss the Amended Complaint's Third and Tenth Causes of Action, which allege claims for unpaid wages pursuant to Article 6 of NYLL § 190 and unjust enrichment. (Times Mot. (Dkt. No. 42)) Because these claims are predicated on rights created by the collective bargaining agreement ("CBA"), the Times argues that they are preempted by Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185(a). (Times Br. (Dkt. No. 43) at 5-7)[1] The Times further contends that Plaintiff's claims must be dismissed for failure to exhaust remedies available under the CBA. (See id.)

The Plan Defendants have moved to dismiss the Amended Complaint's Eleventh Cause of Action for benefits under Section 502(a)(1)(B) of ERISA. (Plan Mot. (Dkt. No. 47)) The Plan Defendants contend that (1) Plaintiff's claim for benefits is barred by the applicable six-year statute of limitations; and (2) in the alternative, the Trustees' conclusion that Plaintiff is not eligible for benefits was not arbitrary and capricious. (Plan Br. (Dkt. No. 48))

For the reasons stated below, the Times' motion to dismiss will be granted. The Plan Defendants' motion to dismiss will be converted into a motion for summary judgment, and that motion will be granted.

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

## BACKGROUND

### I.   CLASSIFICATION AS AN INDEPENDENT CONTRACTOR[2]

Plaintiff Robert Stolarik is a 48-year-old photographer who worked for the Times for more than fourteen years. (Am. Cmplt. (Dkt. No. 21) ¶ 17)  Plaintiff first began working for the Times as a freelance war zone photographer in Colombia in or about 2000. (Id. ¶ 18)  He continued working for the Times in Colombia and Venezuela until June 2002, when he returned to the United States. (Id.)  After a brief hiatus, Plaintiff resumed work for the Times in 2004, and was assigned to the Metro desk. (Id. ¶ 20)

Between 2004 and 2012, Plaintiff worked full-time for the Times, generally on assignment for more than 250 days per year.  He often worked more than eight hours a day and 40 hours per week. (Id. ¶¶ 22, 30)  Plaintiff sometimes worked twenty-eight or more consecutive days for the Times during this period. (Id. ¶ 23)  After 2012, the number of Plaintiff's assignments for the Times gradually diminished. (Id. ¶¶ 25, 30)

Plaintiff alleges that despite his "hard work, his full-time schedule, and his enormous success, he was always improperly classified by [t]he Times as a 'freelance' photographer who received no benefits and was paid via IRS Form 1099-MISC." (Id. ¶¶ 28, 40)  As a result, Plaintiff "incur[red] additional tax expenses and liabilities while [t]he Times saved money that [it was] legally obligated to pay." (Id. ¶ 29)  Plaintiff claims that the Times misclassified him as an independent contractor in order to avoid the cost of providing him full wages, overtime pay, and employee benefits. (Id. ¶¶ 29, 41)

---

[2] Unless otherwise noted, the following facts are drawn from the Complaint, exhibits attached thereto, and documents incorporated by reference, or integral to the Complaint. The factual allegations in the Complaint are presumed true for purposes of resolving the Times' motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 110-11 (2d Cir. 2010).

Plaintiff contends that – despite his classification as an independent contractor –
he was a Times employee.  (Id. ¶ 40)  He cites the following facts and circumstances in support
of his claim:

> he worked on a continuous basis for the Times, rather than on a temporary basis;

> he received assignments directly from Times editors, "in the same manner as staff
> photographers classified as employees of the Times";

> he "performed services identical to people whom defendants treated as employees," and
> the services he performed were of the kind that employees historically performed in
> photographic journalism;

> the Times exercised a high degree of control over his work, providing detailed
> instructions and dictating his assignments and hours worked;

> the Times sometimes loaned equipment to Plaintiff "from stock of equipment designated
> for Times staff photographers";

> the Times "had discretion over when and how long [he] worked";

> the type of work Plaintiff performed was integral to the regular business of the Times;
> and

> Plaintiff could not realize profits and losses independent from the Times, and he
> depended upon the regular payments he received from the Times for his income.

(Id. ¶¶ 35-40)

Plaintiff asserts two causes of action against the Times related to its alleged
misclassification of him as an independent contractor.  (See id. ¶¶ 160-61, 184-87)

In the Third Cause of Action, Plaintiff asserts a claim for unpaid wages pursuant
to Article 6 of the NYLL, § 190 et seq.  (Id. ¶¶ 157-62)  Plaintiff alleges that "[f]rom
approximately 2004 to 2014, [the Times] knowingly employed Plaintiff as a staff photographer",
yet the Times "failed to pay Plaintiff the agreed-to wages and benefits for a staff photographer of
the Times."  (Id. ¶ 60)  "[B]y paying Plaintiff approximately $25 per hour instead of the salary
set forth in the governing collective bargaining agreement of approximately $100,000 per year[,]

4

and by not providing [Plaintiff] with the benefits of a staff photographer," Plaintiff claims that

the Times "unlawfully deducted from [his] wages" in violation of Article 6 of the NYLL § 190,

et. seq. (Id.) Plaintiff further alleges that the Times' "failure to pay Plaintiff the agreed-to wage

for the time he worked . . . was willful and not in good faith, and a breach of implied contract."

(Id. ¶ 161)

In the Tenth Cause of Action, Plaintiff asserts a claim for unjust enrichment. (See

id. at 181-87) Plaintiff asserts that the Times accepted his "full-time services as a staff

photographer for the Times," but "denied Plaintiff a salary equivalent to that of staff

photographers at the Times, and denied Plaintiff the benefits provided to staff photographers at

the Times." (Id. ¶¶ 182, 184) Plaintiff further alleges that the Times improperly paid him "via

1099 forms instead of W-2 forms, causing [him] to incur additional tax expenses and liabilities."

(Id. ¶ 183) In failing to pay Plaintiff the salary and benefits of a staff photographer, Plaintiff

contends that the Times breached its implied contract with Plaintiff and was unjustly enriched at

Plaintiff's expense. (Id. ¶¶ 185-86)

## II.   DENOF BENEFITS[3]

### A.   Plaintiff's Freelance Agreement with the Times

On April 2, 2004, Plaintiff entered into a freelance agreement with the Times (the

"Freelance Agreement"). (Id. at 1 ¶ 5; Costello Decl., Ex. D (Freelance Agreement) (Dkt. No.

---

[3] As discussed below, the Plan Defendants' motion to dismiss will be converted into a motion
for summary judgment. The facts concerning the denial of Plaintiff's claim for benefits are taken
from the Amended Complaint and the administrative record. Where Plaintiff has disputed the
Plan Defendants' characterization of cited evidence, and has presented an evidentiary basis for
doing so, the Court has relied on Plaintiffs' characterization of the evidence. See Cifra v. Gen.
Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in
non-movant's favor in deciding summary judgment motion). Unless otherwise indicated, the
facts cited by the Court are undisputed.

49-4) at 3)  The Freelance Agreement states that it is an "agreement between [Plaintiff] and The New York Times Company ("The Times") for freelance photography services [Plaintiff] may be commissioned to provide on assignment to the Newspaper." (Costello Decl., Ex. D (Freelance Agreement) (Dkt. No. 49-4) at 2)  The Freelance Agreement provides as follows:

> 9.      You are an independent contractor, and as such you do not receive any benefits as an employee of The Times.  The Times will provide you with IRS form 1099 at the end of the year reflecting all amounts paid to you for that year.

> 10.     This letter constitutes the entire agreement between you and The Times regarding your freelance photography services from this date forward, and supersedes all prior agreements on this subject matter.  Either party may terminate this agreement upon thirty (30) days written notice to the other.  No amendment or waiver shall be valid unless in writing and signed by both you and The Times.

> 11.     This agreement has been made in accordance with New York State laws and will be construed under those laws.  Any action to enforce this agreement shall be brought exclusively in the federal or state courts in the City of New York.

(Id. at 3)  The last page of the Freelance Agreement bears Plaintiff's signature.  (See id.)

**B.      The Plans**

Defendants Newspaper Guild of New York-New York Times Pension Plan (the "Guild Plan") and Defendant Guild-Times Adjustable Pension Plan (the "APP Plan") are employee pension benefit plans jointly administered by the Times and the Newspaper Guild of New York (the "Union").  (See Am. Cmplt. (Dkt. No. 21) ¶¶ 8-9, 44; Costello Decl., Ex. B (Guild Plan) (Dkt. No. 49-2) at 10 §§ 1.27, 1.46; Costello Decl., Ex. C (APP Plan) (Dkt. No. 49-3) at 5, 7 §§ 1.29, 1.45)  The Guild Plan was established in January 1966, and the APP Plan was established in January 2013.  (See Costello Decl., Ex. B (Guild Plan) (Dkt. No. 49-2) at 3; Costello Decl., Ex. C (APP Plan) (Dkt. No. 49-3) at 3)  Both Plans provide retirement benefits to Plan "Participants."  (See Costello Decl., Ex. B (Guild Plan) (Dkt. No. 49-2) at 3-5; Costello Decl., Ex. C (APP Plan) (Dkt. No. 49-3) at 3)

The Guild Plan defines a "Participant" as "any Employee or Member who is or has been in Covered Employment after:  (a) attaining age twenty-one (21) and (b) who has completed one (1) or more years of employment as an Employee or Member, or after:  (a) having attained the age of fifty (50) and (b) having completed six (6) months or more of employment as an Employee or Member.  Notwithstanding anything herein to the contrary, no individual who was not a Participant on December 31, 2012 shall become a Participant in the Plan."  (Costello Decl., Ex. B (The Guild Plan) (Dkt. No. 49-2) at 9 § 1.35)

Member "means an Employee or Participant in one of the bargaining units subject to the Collective Bargaining Agreement or in Foreign Service on whose behalf the Employer makes payments to the Fund pursuant to Article XII.  'Member' also means any Employee or Participant in the employment of the Trustees or the trustees of the Newspaper Guild of New York -The New York Times Benefits Fund."  (Id. at 8 § 1.32)  Employee is defined as "any person who is in the employment of the Group."  (Id. at 7 § 1.20)  The "Group" "means the Employer," and the "Employer" "means The New York Times Company for itself and on behalf of The New York Times."  (Id. at 7-8 §§ 1.20, 1.28)  Finally, "Covered Employment" means "employment of a Member by the Employer in one of the bargaining units subject to the Collective Bargaining Agreement or in Foreign Service.  'Covered Employment' also means employment of a Member by the Trustees or by the Trustees of the Newspaper Guild of New York -The New York Times Benefits Fund."  (Id. at 6 § 1.13)

The APP Plan similarly defines a "Participant" as "any Member who has:  (a) attained age twenty-one (21) and (b) been credited with 500 Hours of Service in one (1) or more Plan Years as a Member."  (Costello Decl., Ex. C (APP Plan) (Dkt. No. 49-3) at 7 § 1.37) "Member," in turn, is defined as "an Employee in one of the bargaining units subject to the

Collective Bargaining Agreement or in Foreign Service on whose behalf the Employer makes payments to the Fund pursuant to Article X." (Id. at 6 § 1.34) "Employee" is defined as "any person who is in the employment of the Group," and the "Group" refers to the Times. (Id. at 5 §§ 1.22, 1.23, 1.30) "Covered Employment" "means employment of a Member by the Employer in one of the bargaining units subject to the Collective Bargaining Agreement or in Foreign Service." (Id. at 4 § 1.14)

Both Plans provide that the

> Trustees shall have sole and absolute discretion and authority to interpret and construe the terms and provisions of the Plan, to resolve ambiguities, inconsistencies and omissions therein, to make factual findings and other determinations and to issue rulings regarding the rights and benefits of Members and of all other persons having or claiming an interest in the Plan. In the event of a scrivener's error that renders a Plan term inconsistent with the Trustees' intent, the Trustees' intent controls, and any inconsistent Plan term is made expressly subject to this requirement. The Trustees have the authority to review objective evidence to conform the Plan term to be consistent with the Trustees' intent. Each finding, determination and ruling by the Trustees shall be conclusive, final and binding on the Guild and its members, on the Member or Members involved, on the Group and on all parties claiming any interest under the Plan and may not be further contested. Any determination made by the Trustees shall be given deference in the event it is subject to judicial review and shall be overturned only if it is arbitrary and capricious.

(Id. at 8 § 8.6; Costello Decl., Ex. B (Guild Plan) (Dkt. No. 49-2) at 11 § 10.6)

## C.    Plaintiff's Claim For Benefits

In a July 28, 2016 letter to the Trustees of the Guild Plan and the Trustees of the APP Plan, Plaintiff requested "that the Trustees acknowledge his status as a Participant in both Plans and clarify his right to future pension benefits." (Costello Decl., Ex. E (July 28, 2016 Ltr.) (Dkt. No. 49-5) at 6) In his letter, Plaintiff states that he worked for the Times "for more than a decade as an employee, but was improperly classified as an independent contractor throughout his tenure." (Id. at 2) Plaintiff claims that, "[a]s an employee," "he was eligible to participate in the Plans and . . . to receive pension benefits upon reaching retirement." (Id.)

In an affidavit submitted with his letter, Plaintiff states that he received copies of the Guild Plan and the APP Plan "for the first time on May 3, 2016 following a written request for the Plans made by my counsel on April 5, 2016." (Id. at 7; Bantle Aff., Ex. A (Stolarik Aff.) (Dkt. No. 55-1) at 1; see also Costello Decl., Ex. F (April 5, 2016 Letter Requesting Plans) (Dkt. No. 49-6)) According to Plaintiff, prior to May 3, 2016, he "was unaware that [he] was eligible for pensions under the terms of the Plans," and that "[t]o date, the Trustees of the Plans have not informed me whether or not I am eligible for benefits under the terms of the Plans." (Costello Decl., Ex. E (July 28, 2016 Ltr.) (Dkt. No. 49-5) at 7; Bantle Aff., Ex. A (Stolarik Aff.) (Dkt. No. 55-1) at 1)

After receiving Plaintiff's July 28, 2016 letter, the trustees of the Plans requested that the Times state its "position with respect to Robert Stolarik's claim that he is an employee and in the bargaining unit and set forth the reason for the Times' position." (Costello Decl., Ex. G (Aug. 8, 2016 Ltr. to the Times) (Dkt. No. 49-7))

In an August 29, 2016 letter, the Times responds that "Mr. Stolarik is not and has never been an employee of the Times, and his claim for benefits should be denied." (Costello Decl., Ex. H (Aug. 29, 2016 Ltr.) (Dkt. No. 49-8) at 2) According to the Times, Plaintiff was an independent contractor throughout his tenure at the Times:

> Mr. Stolarik is a freelance photographer who has performed services for the Times (and many others) from time to time over the last fifteen years. At all times, he has performed these services as a freelancer and an independent contractor, as memorialized in the written freelance photography services agreement he signed with the Times in April 2004 (the "Freelance Agreement"). (A copy of Mr. Stolarik's Freelance Agreement is attached as Exhibit A.) As he agreed in his Freelance Agreement with the Times, Mr. Stolarik is "an independent contractor, and as such [he does] not receive any benefits as an employee of the Times." (See Ex. A, par. 9.) Mr. Stolarik accepted a freelance relationship with the Times on these terms, as evidenced by his signature on the Freelance Agreement. He provided freelance photography services to the Times for more than a dozen years after signing the Freelance Agreement, without challenging his

9

independent contractor or freelance status or making any claim to the kinds of benefits that the Times provides to its employees, including under the Pension Plans.

(Id.)  The Times also notes that Plaintiff had always held himself out as a freelance photographer

and independent contractor; that he operated an independent photography business; and that he

has repeatedly asserted in court filings that he is a freelance professional photographer.  (Id. at 3)

   In a January 24, 2017 letter, Robert Costello – the Plan Administrator for both

Plans – notified Plaintiff that his "claims have been denied under the respective Plans."

(Costello Decl., Ex. I (Jan. 24, 2017 Ltr.) (Dkt. No. 49-9) at 2)  The letter explains that

> [u]nder the terms of the Plans, participation is limited to employees of the Times meeting certain eligibility criteria.  Non-employees, such as freelancers or independent contractors, are not eligible for participation in the Plans.  Specifically, both the Pension Plan and the APP provide that only "Participants" are eligible for benefits under the Plans.  For this purpose, "Participant" is defined in relevant part as any employee who is or has been in "Covered Employment" after achieving certain eligibility thresholds related to age and length of service.  Covered Employment is defined as "employment of a Member by the Employer in one of the bargaining units subject to the Collective Bargaining Agreement or in Foreign Service."  To be a "Member", one must be an Employee in one of the above-described bargaining units or an Employee of the Fund.  See Sections 1.13, 1.20, 1.32 and 1.35 of the Pension Plan and Sections 1.14, 1.22, 1.34 and 1.37 of the APP, copies of which are enclosed as Exhibit B.

(Id. at 2-3)

   The letter then summarizes the Trustees' "understanding of the facts and

circumstances related to Mr. Stolarik's arrangement with [t]he Times":

- Mr. Stolarik has been providing freelance photography services for The Times for 15 years.  Since 2004, he has been providing services under a contract (see Exhibit C) that specifically states that he is an independent contractor and not eligible for benefits.  Under this arrangement, The Times offers Mr. Stolarik, on a project-by-project basis, the opportunity to photograph events and has no control over the manner in which he does so.  He is free to decline any assignment and only receives remuneration if he completes the assignment.  Mr. Stolarik provides his own photography equipment except in exceptional situations when the equipment is damaged mid-assignment.

- Until now, Mr. Stolarik has not challenged his freelance status.  He has never filed a grievance with the Guild regarding any matter, including The Times' failure to treat him

10

as an employee in the Guild bargaining unit covered by the collective bargaining
agreement.

- Mr. Stolarik has repeatedly characterized himself as a freelance photographer on his
professional website, in court filings, and other marketing materials.

- Mr. Stolarik operates an independent business providing freelance photography services
to media companies other than The Times. For example, Mr. Stolarik's professional
website states that he has worked for Time Magazine, Le Monde, Newsweek, Le Figaro,
U.S. News & World Report, The Wall Street Journal, Paris Match and the Chronicle for
Higher Education. This website provides contact information where potential clients can
contact him. See Exhibit D.

- Mr. Stolarik is represented professionally by Polaris Images, an independent agency that
represents freelance photographers. The Polaris website showcases many images created
by Mr. Stolarik as a freelance photographer (for a wide range of clients, including The
Times and competitors of The Times). See
http://www.polarisimages.com/index.php?43195985213911200340.00009080773976624
966525112012153257.

- Mr. Stolarik operates Copyright Collective, an independent business that seeks to enforce
copyright laws against media companies on behalf of "independent artists." In fact, Mr.
Stolarik has asserted copyright claims against The Times. See Exhibit E.

(Id. at 3-4)

   With respect to the Times' classification of Plaintiff as an independent contractor,

the Trustees "interpret[ed] the Plans' language . . . to exclude an individual who is performing

services under a contract that specifically states that he or she is an independent contractor and

not eligible for benefits." (Id. at 5) The Trustees went on to state that "even if the Plans were

interpreted to exclude only those who are non-employees within the meaning of ERISA, the

relevant facts support the classification of Mr. Stolarik as an independent contractor and not an

employee." (Id.)

   The Trustees also concluded that Plaintiff's benefit claim was barred by the

applicable six-year statute of limitations:

   In the context of employee benefits, the statute of limitations begins to run or accrue
   when there is a repudiation of a worker's eligibility for any benefits. See Brennan, 912

F.2d at 410. A signed independent contractor agreement that specifically denies employee benefits to the worker is clear evidence of repudiation and the statute of limitations will run at the signing of the contract, not when an independent contractor later files a claim for benefits under the plan. Id. All that is needed for repudiation is actual knowledge or reasonable awareness of the classification as an independent contractor and ineligibility for employee benefits. See Downes v. J.P. Morgan Chase & Co., No. 03 Civ.8991 (GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004); Schulman v. Herbert E. Nass & Associates SEP IRA Plan, No. 10 Civ. 9613 (RA), 2013 WL 4860119 (S.D.N.Y. Sept. 11, 2013); Ferro v. Metro. Ctr.for Mental Health, No. 13 Civ.2347 (PKC), 2014 WL 1265919 (S.D.N.Y. Mar. 27, 2014).

Applying these principles to Mr. Stolarik, his claim under the Pension Plan is time-barred. The freelance agreement expressly states in paragraph 9 that Mr. Stolarik is an independent contractor and is not eligible for benefits from the Times. Therefore, Mr. Stolarik's claim accrued on, and the statute of limitations began running no later than April 2, 2004. Even without the signed freelance agreement, as explained below, it was clear from the relationship between the Times and Mr. Stolarik that he was considered an independent contractor at all times and would not receive any employee benefits. Moreover, Mr. Stolarik has never been considered a Pension Plan (or APP Plan) participant or treated as an employee on the Times' books and records. Because the freelance agreement is subject to New York law, Mr. Stolarik's claim under the Pension Plan is subject to a 6-year statute of limitations. His claim became timebarred no later than April 2, 2010.

(Id. at 4)

### D.   Plaintiff's Appeal

On March 16, 2017, Plaintiff submitted an appeal to the Trustees. (See Costello Decl., Ex. J (Mar. 16, 2017 Ltr.) (Dkt. No. 49-10))

With respect to his classification as an independent contractor, Plaintiff argued that there was "irrefutable proof" demonstrating that he was a Times employee, and contended that the Plan Administrator's findings of fact to the contrary were "clearly erroneous." (Id. at 3)

With respect to the statute of limitations issue, Plaintiff argued that the 2004 Freelance Agreement does not constitute a clear repudiation because (1) "only a fiduciary can rule on the claim for benefits"; and (2) after he signed the Freelance Agreement, "his role very

12

quickly changed and he began working on a full-time basis as an employee, not a freelancer."
(Id.)

In a May 5, 2017 letter, the Trustees invited Plaintiff to participate in a hearing regarding the denial of his claim for benefits. (Costello Decl., Ex. M (May 5, 2017 Ltr.) (Dkt. No. 49-13) at 2) The hearing took place on May 19, 2017. (See id.)

On July 25, 2017, the Trustees solicited additional information from the Times regarding Plaintiff's benefit claim. (Costello Decl., Ex. N (July 25, 2017 Email) (Dkt. No. 49-14) at 2) The Trustees asked whether

> (1) Plaintiff rejected assignments "in favor of unrelated publications, for other reasons or for no reason at all";
>
> (2) "a staff photographer could reject an assignment if it conflicted with a project unrelated to the Times";
>
> (3) the Times provided the same assignment forms to Plaintiff and staff photographers, and exercised the same level of control over Plaintiff's work;
>
> (4) the Times' fee arrangement with Plaintiff had changed since Plaintiff entered into the 2004 Freelance Agreement; and
>
> (5) whether there was any documentation concerning Plaintiff's argument that he had received assignments in eight-hour blocks.

(Id.)

On August 3, 2017, the Times provided a detailed written response to the Trustees. The Times stated that

> (1) in contrast to a staff photographer – who is required to accept an assignment "if he or she is scheduled to work on that particular day" – Plaintiff was free to reject assignments at any time, for any reason, and frequently did so;
>
> (2) the Times did not exercise a high degree of control over Plaintiff's work;
>
> (3) Plaintiff was paid in accordance with the 2004 Freelance Agreement's day rate of $200 at all times, and that Plaintiff "never received employee benefits or fringe benefits from the Times"; and

(4) "[c]ontrary to Mr. Stolarik's assertions, freelance opportunities are not distributed in timed blocks or shifts, and the Times did not specify the amount of time Mr. Stolarik had to devote to an assignment. . . . As such, there is no documentation to support Mr. Stolarik's claim that he received eight-hour assignments because that was simply not the case."

(Costello Decl., Ex. O (Aug. 3, 2017 Ltr.) (Dkt. No. 49-15) at 1-6)

In a September 15, 2017 letter, the Trustees "affirmed the denial of Mr. Stolarik's claims." (Costello Decl., Ex. P (Sept. 15, 2017 Ltr.) (Dkt. No. 49-16) at 1)  The Trustees stated that they "interpret the Plans to exclude from eligibility any individual who (i) has entered into an agreement providing that he or she is an independent contractor; (ii) is not treated as an employee in the performance of services; or (iii) does not meet the legal definition of an employee." (Id. at 3)  The Trustees concluded that Plaintiff falls within all three categories and "is therefore not eligible for participation in the Plans." (Id.)

## DISCUSSION

### I.    RULE 12(b)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions, are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679.  A pleading is conclusory "if it tenders 'naked

14

assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal. 556 U.S. at 679.

   "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). For a document to be incorporated by reference, "the complaint must make 'a clear, definite and substantial reference to the documents.'" DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Helprin v. Harcourt, Inc., 277 F.Supp.2d 327, 330-31 (S.D.N.Y.2003)). "[L]imited quotation" of a document, Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985), or a mere passing reference to a document outside of the complaint does not incorporate the document into the complaint. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

   "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to a complaint,

"the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[] in framing the complaint.'" DeLuca, 695 F. Supp. 2d at 60 (citations omitted); Chambers, 282 F.3d at 153 ("'[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.'" (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

Where a district court considering a motion to dismiss is "presented with matters outside the pleadings," there are "two options." Chambers, 282 F.3d at 154. The court either "exclude[s] the extrinsic documents" or it "convert[s] the motion to one for summary judgment," giving the parties adequate notice and an opportunity to "submit the additional supporting material contemplated by Rule 56." Id. (citations omitted); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). "Ordinarily, formal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009) (quoting Villante v. Dep't of Corrections of City of New York, 786 F.2d 516, 521 (2d Cir. 1986) (alterations in original)). "'Federal courts have complete discretion to determine whether . . . to convert [a] motion [to dismiss] to one for summary judgment.'" Abbey v. 3F Therapeutics, Inc., No. 06 Civ. 409 (KMW), 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009) (quoting Carione v. United States, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005)).

16

A.      **The CBA Will Be Considered in Ruling on the Times's Motion to Dismiss**

In connection with its motion to dismiss, the Times has submitted the CBA between the Times and the Newspaper Guild of New York. (See CBA (Dkt. No. 44-1))

While the Amended Complaint does not quote from the CBA, the CBA is incorporated by reference and integral to the Complaint, because the CBA provides the factual premise for Plaintiff's Third and Tenth Causes of Action. Indeed, the CBA is referenced repeatedly throughout the Complaint (see Am. Cmplt. (Dkt. No. 21) ¶¶ 49-51, 57-58, 61, 160, 185), and Plaintiff relies on the terms and effect of the CBA as a basis for claiming a right to the benefits and salary provided to staff photographers. (See, e.g., id. ¶ 61 ("Plaintiff was a Participant within the meaning of both plans, because he was both an employee and within a bargaining unit subject to the Collective Bargaining Agreement."); id. ¶ 160 ("Defendant failed to pay Plaintiff the agreed-to wages and benefits for a staff photographer of the Times, and unlawfully deducted from Plaintiff's wages by paying Plaintiff approximately $25 per hour instead of the salary forth in the collective bargaining agreement of approximately $100,000 per year and by not providing him with the benefits of a staff photographer.")). Because Plaintiff had actual notice of and relied upon the CBA in drafting the Amended Complaint, this Court will consider the CBA in resolving Times's motion to dismiss. See, e.g., Hoops v. KeySpan Energy, 794 F. Supp. 2d 371, 376-77 (E.D.N.Y. 2011) (CBA was incorporated by reference where "the complaint specifically identifies the CBA as the source of the Defendants' obligation 'to pay the Plaintiff miscellaneous shift differentials, including shift differentials for work performed at night'"); Levy v. Verizon Info. Servs., Inc., 498 F. Supp. 2d 586, 594-95 (E.D.N.Y. 2007) ("Review of the CBAs is also proper, despite plaintiffs' careful avoidance of mentioning them in the complaint. In fact, plaintiffs do reference the CBAs, albeit indirectly, by relying on the

Encompass Plan, which was incorporated into the CBAs by reference. . . . Because plaintiffs rely upon the Encompass Plan in the complaint, which in turn references the CBAs, review of the CBAs is appropriate.").

**B.    The Plan Defendants' Motion to Dismiss Will Be
Converted into a Motion for Summary Judgment**

The Plan Defendants have moved to dismiss Plaintiff's ERISA Section 502(a)(1)(B) claim for benefits – the Eleventh Cause of Action – on the basis of the administrative record.  (See Plan Defs. Br. (Dkt. No. 48) at 5-15; Costello Decl. (Dkt. No. 49))

Claims for benefits under ERISA are adjudicated on the basis of the administrative record. Suarato v. Building Services 32BJ Pension Fund, 554 F. Supp. 2d 399, 414-15 (S.D.N.Y. 2008) ("It is appropriate to consider a challenge under ERISA to the denial of . . . benefits as a summary judgment motion reviewing the administrative record." (citing Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003))).  Although some courts have considered the administrative record on a motion to dismiss, see, e.g., Andrews v. Realogy Corp. Severance Pay Plan for Officers, No. 13 Civ. 8210 (RA), 2015 WL 736117, at *1 n. 1, *5 n. 5 (S.D.N.Y. Feb. 20, 2015) ("recogniz[ing] that 'nearly all of the cases that raise similar legal disputes under ERISA arise in the summary judgment context,'" but finding that "this does not preclude the Court from addressing the merits of the Plaintiff's claims at [the motion to dismiss] stage" where the administrative record has been incorporated in the complaint by reference and plaintiff relied upon it in bringing suit); Zeuner v. Suntrust Bank Inc., 181 F. Supp. 3d 214, 218-19 (S.D.N.Y. 2016) (same), "summary judgment provides a[ more] appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record." See Gannon v. Aetna Life Ins. Co., No. 05 Civ. 2160 (JGK), 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 28, 2007); Guglielmi v. Nw. Mut. Life Ins. Co., No. 06 Civ. 3431 (GEL), 2007 WL 1975480, at *3

(S.D.N.Y. July 6, 2007) (treating defendant's motion for judgment on the administrative record as one for summary judgment); Chitoiu v. UNUM Provident Corp., No. 05 Civ. 8119 (LAP), 2007 WL 1988406, at *3 (S.D.N.Y. July 6, 2007) ("The Court of Appeals has stated that a motion for judgment on the administrative record 'does not appear to be authorized by the Federal Rules of Civil Procedure.' Accordingly, the Court will construe Defendant's motion as one for summary judgment." (citations omitted)), aff'd, 345 F. App'x 625 (2d Cir. 2009).

In connection with their motion to dismiss, the Plan Defendants have submitted material outside the pleadings, including the administrative record upon which Plaintiff's claim for benefits is based, the Costello Declaration, and an October 25, 2017 letter indicating that a copy of the administrative record was sent to Plaintiff's counsel. (See Costello Decl. (Dkt. No. 49), Exs. A-P (Dkt. Nos. 49-1 - 49-16)) Plaintiff received formal notice that the Plan Defendants intended to move for judgment based on the administrative record, however, because the Plan Defendants disclosed their intention to do so in their November 13, 2017 pre-motion letter. (See Plan Defs. Ltr. (Dkt. No. 27))) Moreover, Plaintiff has also submitted material from outside the pleadings – including an affirmation and exhibits – that he asks this Court to consider in ruling on the Plan Defendants' motion. (See Bantle Aff. (Dkt. No. 55), Exs. A-C (Dkt. Nos. 55-1 - 55-3)) Given these circumstances, this Court will convert the Plan Defendants' Rule 12(b)(6) motion into a motion for summary judgment.

## II.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that that party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's

favor." Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)).  "'[T]hat opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment,' in that contradictory testimony only establishes a 'genuine' issue for trial if it 'lead[s] to a different legal outcome.'" Yi Fu Chen v. Spring Tailor, LLC, No. 14 Civ. 218 (PAE), 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (quoting Krynski v. Chase, 707 F. Supp. 2d 318, 322 (E.D.N.Y. 2009)).

In deciding a summary judgment motion, the Court "'resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (internal quotation marks and citation omitted)).  However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

## III.    ERISA STANDARD OF REVIEW

"[A] denial of benefits challenged under [ERISA] must be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where the plan grants such discretionary

authority, courts "will not disturb the administrator's ultimate conclusion unless it is 'arbitrary

and capricious.'"  Hobson v. Metropolitan Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009).  "The

plan administrator bears the burden of proving that the deferential standard of review applies."

Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002) (citing Kinstler v. First Reliance

Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999)).

Here, both Plans grant Plan Trustees discretionary authority to interpret the terms

of and administer the Plans:

> The Trustees shall have sole and absolute discretion and authority to interpret and
> construe the terms and provisions of the Plan, to resolve ambiguities, inconsistencies and
> omissions therein, to make factual findings and other determinations and to issue rulings
> regarding the rights and benefits of Members and of all other persons having or claiming
> an interest in the Plan.  In the event of a scrivener's error that renders a Plan term
> inconsistent with the Trustees' intent, the Trustees' intent controls, and any inconsistent
> Plan term is made expressly subject to this requirement.  The Trustees have the authority
> to review objective evidence to conform the Plan term to be consistent with the Trustees'
> intent.  Each finding, determination and ruling by the Trustees shall be conclusive, final
> and binding on the Guild and its members, on the Member or Members involved, on the
> Group and on all parties claiming any interest under the Plan and may not be further
> contested.  Any determination made by the Trustees shall be given deference in the event
> it is subject to judicial review and shall be overturned only if it is arbitrary and
> capricious.

(Costello Decl., Ex. C (The APP Plan) (Dkt. No. 49-3) at 8 § 8.6; Costello Decl., Ex. B (The

Guild Plan) (Dkt. No. 49-2) at 11 § 10.6)  Accordingly, the arbitrary and capricious standard

governs this Court's review of the Trustees' interpretation of the Plans.

"Under the arbitrary and capricious standard of review, [a court] may overturn an

administrator's decision to deny ERISA benefits 'only if it was without reason, unsupported by

substantial evidence or erroneous as a matter of law.'"  Hobson, 574 F.3d at 83 (quoting Pagan v.

NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)).  "Substantial evidence 'is such

evidence that a reasonable mind might accept as adequate to support the conclusion reached by

the [decision maker and] . . . requires more than a scintilla of evidence but less than a preponderance.'" Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) (alterations in original) (quoting Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992)). "This scope of review is narrow," Hobson, 574 F.3d at 83, and "'[a]bsent a showing of bad faith or arbitrariness, the court will not disturb [the administrator's] interpretations of [the] plan as long as they are consistent with the plan's terms and purpose.'" Sansevera v. DuPont de Nemours & Co., 859 F. Supp. 106, 112 (S.D.N.Y. 1994) (quoting Seff v. NOITU Ins. Trust Fund, 781 F. Supp. 1037, 1040 (S.D.N.Y. 1992)). Indeed, where both parties "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control." Pulvers v. First Unum Life Ins., Co., 210 F.3d 89, 92-93 (2d Cir. 2000).

Moreover, "a district court's review under the arbitrary and capricious standard is limited to the administrative record." Miller, 72 F.3d at 1071; Bergquist v. Aetna U.S. Healthcare, 289 F. Supp. 2d 400, 411 (S.D.N.Y. 2003) ("The Court must limit its examination of evidence to the administrative record [and information available to the plan administrator at the time it made its decision] when reviewing administrative decisions under the arbitrary and capricious standard."). The court is "'not free to substitute [its] own judgment for that of [the plan administrator] as if [it] were considering the issue of eligibility anew.'" Hobson, 574 F.3d at 83-84 (2d Cir. 2009) (quoting Pagan, 52 F.3d at 442).

## IV.    THE TIMES'S MOTION TO DISMISS

The Times has moved to dismiss the Amended Complaint's Third and Tenth Causes of Action for unpaid wages pursuant to Article 6 of the NYLL § 190 and unjust enrichment. (Times Mot. (Dkt. No. 42)) The Times contends that Plaintiff's claims are "'founded directly on rights created by' the CBA between the Times and the Union," and are

therefore preempted by Section 301 of the LMRA. (Times Br. (Dkt. No. 43) at 5)  According to

the Times, because Plaintiff's Third and Tenth Causes of Actions are preempted by Section 301,

these claims must be dismissed for failure to exhaust remedies provided in the CBA. (Id. at 15)

### A.     Applicable Law

LMRA Section 301 provides that:

> [s]uits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this chapter, or
> between any such labor organizations, may be brought in any district court of the United
> States having jurisdiction of the parties, without respect to the amount in controversy or
> without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  "The Supreme Court has interpreted [S]ection '301 as a congressional

mandate to the federal courts to fashion a body of federal common law to be used to address

disputes arising out of labor contracts.'" Vera v. Saks & Co., 335 F.3d 109, 114 (2d Cir. 2003)

(quoting Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985)).  The interests in uniformity

and predictability "require that 'the relationships created by [a collective-bargaining] agreement'

be defined by application of 'an evolving federal common law grounded in national labor

policy.'" Allis-Chalmers, 471 U.S. at 211 (quoting Bowen v. United States Postal Service, 459

U.S. 212, 224-225 (1983)).  "Thus, when a state claim alleges a violation of a labor contract, the

Supreme Court has held that such claim is preempted by section 301 and must instead be

resolved by reference to federal law." Vera, 335 F.3d at 114 (quoting Allis-Chalmers, 471 U.S.

at 210).

The preemptive effect of Section 301 also extends "beyond suits alleging contract

violations." Id.  "'[Q]uestions relating to what the parties to a labor agreement agreed, and what

legal consequences were intended to flow from breaches of that agreement, must be resolved by

reference to uniform federal law, whether such questions arise in the context of a suit for breach

23

of contract or in a suit alleging liability in tort." <u>Id.</u> (alteration in original) (quoting <u>Allis-Chalmers Corp.</u>, 471 U.S. at 209). "The focus is on whether the [state cause of action] . . . confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state cause of action] is inextricably intertwined with consideration of the terms of the labor contract. If the state [cause of action] law purports to define the meaning of the contract relationship, that law is pre-empted." <u>Allis-Chalmers</u>, 471 U.S. at 213, 217 (holding that state tort claim was preempted because "[t]he duties imposed and rights established through the state tort . . . derive from the rights and obligations established by the contract"). Accordingly, "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 394 (1987) (citations omitted).

"Not every suit concerning employment or tangentially involving a CBA . . . is preempted by section 301[, however]." <u>Vera</u>, 335 F.3d at 114. The preemption rule is applied "only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement,' nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements." <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 122-23 (1994) (citations omitted). "[I]f a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301." <u>Vera</u>, 335 F.3d at 115. "Nor would a state claim be preempted if its application required mere referral to the CBA for 'information

24

such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.'" Id. (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 n. 12 (1988)).   Ultimately, "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement" -- and not whether a grievance arising from the same set of facts could be pursued under state law -- "that decides whether a state cause of action may go forward." Livadas, 512 U.S. at 123 (citations omitted); Williams v. Comcast Cablevision of New Haven, Inc., 322 F. Supp. 2d 177, 182 (D. Conn. 2004) ("In making the preemption determination, it is the substance of plaintiff's claim, and not its characterization in the complaint, that controls.").

**B.     Analysis**

**1.     Plaintiff's Unlawful Wage Deduction Claim Under The NYLL**

In the Third Cause of Action, Plaintiff asserts an unlawful wage deduction claim pursuant to Article 6 of the NYLL, § 190 et seq.  (See Am. Cmplt. (Dkt. No. 21) ¶¶ 157-62)  To establish such a claim, Plaintiff is "required to show that [the Times] deducted monies from [his] earned wages and that such deductions are not permissible under the respective state statute." Levy, 498 F. Supp. 2d at 596-97.

Plaintiff's unlawful wage deduction claim is, however, expressly founded upon and derived from rights afforded by the CBA.  Indeed, the crux of Plaintiff's claim is that the Times "failed to pay [him] the agreed-to wages and benefits for a staff photographer of the Times, and . . . pa[id] [him]  approximately $25 per hour instead of the salary set forth in the governing collective bargaining agreement of $100,000 per year and . . . the benefits of a staff photographer." (Am. Cmplt. (Dkt. No. 21) ¶ 160)  Accordingly, it is clear that Plaintiff is seeking to enforce the CBA itself, and not seeking to enforce state rights independent of the

CBA. Allowing Plaintiff to "evade the requirements of § 301 by relabeling [his] contract claim[]
as [a NYLL] claim[]" would "elevate form over substance" and contravene the policies
animating Section 301. See Allis-Chalmers, 471 U.S. at 211, 217 ("The duties imposed and
rights established through the state tort thus derive from the rights and obligations established by
the contract. . . . That being so, this tort claim is firmly rooted in the expectations of the parties
that must be evaluated by federal contract law.").

   Accordingly, Plaintiff's claim under Article 6 of the NYLL – as pled in the
Amended Complaint – is preempted by federal labor law. See, e.g., O'Rourke v. Carmen M.
Pariso, Inc., 501 F. Supp. 2d 445, 450 (W.D.N.Y. 2007) ("[R]egardless of the specific legal
theory of recovery for Plaintiffs' claims, including Plaintiffs' assertion[] of . . . a violation of
Labor Law § 190, Plaintiffs' entitlement to any part of the back-pay sought under the Complaint
is 'inextricably intertwined' with relevant provisions of the CBAs, specifically, whether
Defendant's failure to pay the asserted back-pay . . . violated the CBAs and whether the CBAs'
grievance procedures apply to Plaintiffs' claims."); Ellis v. Harpercollins Publishers, Inc., No. 99
Civ. 12123 (DLC), 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) ("Because the reported
violation is based on a failure to pay union employees in accordance with the terms of a CBA . . .
this violation is preempted by Section 301. . . . [NYLL] Section 191 cannot be used to enforce
the CBA."); Gorodkin v. Q-Co. Indus., No. 89 Civ. 8033 (LMM), 1992 WL 122769, at *12
(S.D.N.Y. May 27, 1992) ("Examination of the Complaint reveals that plaintiff's fraud claim is
founded directly on rights created by the Agreement, as opposed to rights which he possesses
independently, and clearly implicates the terms of that Agreement. . . . As a result, the state fraud
claim in Count VI must either be treated as a § 301 claim or dismissed as preempted by federal
labor-contract law.").

## 2. Plaintiff's Unjust Enrichment Claim

The Tenth Cause of Action makes a claim for unjust enrichment. (See Am. Cmplt. (Dkt. No. 21) ¶¶ 181-87) "Under New York law, a party claiming unjust enrichment must establish three elements: '(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff.'" Shearon v. Comfort Tech Mech. Co., 936 F. Supp. 2d 143, 153 (E.D.N.Y. 2013) (quoting Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001)).

"[I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. . . . [A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." Caterpillar, 482 U.S. at 396 (emphasis in original); see also Germosen v. ABM Indus. Corp., 2014 U.S. Dist. LEXIS 119092, *7-8 n. 4, *14 n. 10 (S.D.N.Y. Aug. 26, 2014) (noting that plaintiff's implied contract claim would be preempted if based on application of CBA). Where, however, a plaintiff's quasi-contract claim "hinge[s] on rights created by the CBA," that claim is preempted by the LMRA. See Shearon, 936 F. Supp. 2d at 154; O'Rourke, 501 F. Supp. 2d at 450 (quantum meruit claim was preempted, because it was "inextricably intertwined" with provisions of the CBAs; court would be required to determine whether defendant's failure to pay back-pay violated the CBAs and whether the CBAs' grievance procedures applied to plaintiffs' claims); Williams, 322 F. Supp. 2d at 185 ("No other covenants, promises, or agreements, express or implied, are identified in the Complaint. It was also clear . . . that all three counts – breach of express contract, breach of implied contract, and breach of the good faith covenant – were all

27

directly founded on the rights created by the [CBA] and are inextricably intertwined with consideration of the terms of that agreement."); Cefarrati v. JBG Properties, Inc., 75 F. Supp. 3d 58, 66 (D.D.C. 2014) ("Unjust-enrichment claims are often completely preempted. Indeed, they 'rest at bottom on the notion that plaintiffs have not been paid the wages they are owed.' This may 'depend[] importantly upon what the CBA provides.'" (alterations in original) (quoting Cavallaro v. UMass Mem'l Healthcare, Inc., 678 F.3d 1, 5 (1st Cir. 2012))).

Plaintiff contends that his unjust enrichment claim is not preempted, because he "makes no reference to . . . and does not rely on the CBA in any way." (Pltf. Br. (Dkt. No. 53) at 14) The factual allegations in the Amended Complaint make clear, however, that Plaintiff's unjust enrichment claim turns on his assertion that he was a Times employee who was entitled to the benefits and wages paid to staff photographers under the CBA. (See Am. Cmplt. (Dkt. No. 21) ¶¶ 40-41, 61-62, 181-87 (alleging, inter alia, that the Times was unjustly enriched because "Plaintiff performed full-time serves as a staff photographer for the Times . . . and the Times accepted those services," yet the Times denied him "a salary equivalent to that of staff photographers . . . [and] the benefits provided to staff photographers.")) As discussed above, Plaintiff's right to the wages and benefits afforded to staff photographers under the CBA hinges on, and would require this Court to apply, the terms of the CBA.

Because Plaintiff's unjust enrichment claim is premised on rights derived from the CBA and the Times's alleged violation of the CBA's terms, it is preempted by the LMRA. See Shearon, 936 F. Supp. 2d at 154 ("The Court finds that Plaintiff's quasi-contract claims are preempted by the LMRA. It is clear that the unjust enrichment and quantum meruit claims hinge on rights created by the CBA. Both claims boil down to the assertion that Defendant did not adequately compensate Plaintiff for his work. Yet Plaintiff presents no basis for his claim that

Defendant short-changed him other than the assertion that he was eligible, pursuant to the CBA, to receive prevailing union wages and benefits. . . . In short, Plaintiff's quasi-contract claims are 'inextricably intertwined' with consideration of the eligibility terms of the CBA."); cf. Cespuglio v. Ward, No. 03 Civ. 8603 (SAS), 2004 WL 1088235, at *4 (S.D.N.Y. May 13, 2004) ("An adjudication of the [tortious interference with contract] claim . . . requires the court to inquire about that breach – what duties did the contract create?  Did the parties to the contract fulfill those duties? . . . Accordingly, [Plaintiff's] claim – though framed as a state law claim for tortious interference with contract – is really a claim under section 301[.]").

### 3. Exhaustion of Remedies Under the CBA

"Where, as here, 'the alleged violations hinge on the collective bargaining agreements' definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions.'" Hoops, 794 F. Supp. 2d at 379 (citations omitted).  "Ordinarily . . . , an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement" before bringing suit.  Vera, 335 F.3d at 118; Campbell v. Kane, Kessler, P.C., 144 F. App'x 127, 130 (2d Cir. 2005) ("In order to maintain an action under § 301, an employee must 'at least attempt to exhaust exclusive grievance and arbitration procedures established by the [collective] bargaining agreement.'" (citations omitted)).

Article XII of the CBA sets forth a detailed grievance and arbitration procedure outlining the process by which disputes arising under the CBA must be resolved.  (See CBA (Dkt. No. 44-1) at 75)  The CBA provides that:

> The Guild shall designate a committee to take up with the Times or its authorized agent any matter arising from the application of this Agreement or affecting the relations of the employees and the Times.
> . . . .

29

> The subject of any and all employee grievances shall be submitted in writing to the authorized agent of the Times and such authorized agent shall submit in writing any and all Times grievances to the Guild grievance chairperson, for the purpose of discussion so that they may be amicably adjusted.
>
> . . . .
>
> <u>Any matter arising from the application or interpretation of this Agreement that the Guild and the Times have not been able after reasonable effort to settle, shall be submitted to arbitration,</u> upon notice of either party to the other, under the labor arbitration rules of the American Arbitration Association. A demand for arbitration must be submitted in writing within forty-five (45) days from the date of the written denial of the grievance by the authorized representative of the Times or the Guild.

(Id. (emphasis added)) Because Plaintiff's alleged right to the wages and benefits afforded to staff photographers under the CBA is "inextricably intertwined" with the terms of the CBA, Plaintiff is required to exhaust the grievance and arbitration procedures outlined in the CBA. See Shearon, 936 F. Supp. 2d at 156 ("[R]equiring [p]laintiff to exhaust the contractual remedies of the CBA would protect the integrity of the CBA, the very document upon which [p]laintiff bases most of his claims. . . . [T]he Court dismisses [p]laintiff's quasi-contract claims without prejudice, subject to [p]laintiff pursuing the available contractual remedies of the CBA.").

Here, Plaintiff's failure to exhaust the grievance procedures outlined in the CBA is undisputed. (See Pltf. Br. (Dkt. No. 53) at 16-17) Accordingly, Plaintiff's Third and Tenth Causes of Actions will be dismissed without prejudice, subject to his exhaustion of contractual remedies. See, e.g., Vera, 335 F.3d at 118-19 ("The parties do not seem to dispute that the CBA contains clear grievance and arbitration procedures, and that plaintiff failed to file a grievance or to seek arbitration of his claim concerning the illegality of the unidentified returns policy or defendant's behavior in conformity therewith. . . . Because plaintiff failed to exhaust his remedies under the CBA to grieve and arbitrate his section 193 claim, the District Court properly granted defendant summary judgment."); Levy, 498 F. Supp. 2d at 598 ("Applying § 301 of the LMRA, plaintiffs' claims are barred because plaintiffs have failed to exhaust their arbitral

remedies under the CBAs. . . . It is . . . undisputed that none of the plaintiffs has ever filed a grievance concerning the matters encompassed in the complaint, and the Union has never sought arbitration with respect to these claims.  This is fatal to any attempt by plaintiffs to now assert their claims under § 301 for breach of the CBAs.").

## V.    PLAINTIFF'S ERISA § 502(a)(1)(B) CLAIM FOR BENEFITS

The Plan Defendants have moved to dismiss the Amended Complaint's Eleventh Cause of Action, which pleads an ERISA § 502(a)(1)(B) claim for benefits.  (Plan Defs. Br. (Dkt. No. 48) at 5)  The Plan Defendants contend that Plaintiff's claim is time-barred and that, in any event, the Trustees' decision denying benefits was not arbitrary and capricious.  (See id. at 15-23)  As discussed above, the Court has converted the Plan Defendants' motion to dismiss into a motion for summary judgment.

### A.    Whether Plaintiff's Claim for Benefits is Time-Barred

A six-year limitations period applies to ERISA claims.  Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007).  "[A] plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, 'when there has been 'a repudiation by the fiduciary which is clear and made known to the beneficiaries.'"  Id. (quoting Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan, 698 F.2d 593, 598 (2d Cir. 1983)).  "A federal court generally employs the 'discovery rule,' under which 'a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation.'"  Id.  Accordingly, "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of whether the plaintiff has filed a formal application for benefits."  Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 49 (2d Cir. 1999).  "To hold

otherwise, as the Second Circuit has recognized, "'would require all pre-benefits claims against

an employee's pension fund to be delayed until a formal application for benefits is filed,' which

could have enormous 'negative effects.'" Brennan v. Metro. Life Ins. Co., 275 F. Supp. 2d 406,

09 (S.D.N.Y. 2003) (quoting Carey, 201 F.3d at 49).

   "For individuals who claim that they were misclassified, this repudiation occurs

'when the beneficiary first learns that she is considered an independent contractor and is

therefore not entitled to benefits, regardless of whether she later files a formal claim for

benefits.'" See, e.g., Schulman v. Herbert E. Nass & Assocs. SEP IRA Plan, No. 10 Civ. 9613

(RA), 2013 WL 4860119, at *4 (S.D.N.Y. Sept. 11, 2013) (quoting Brennan, 275 F.Supp.2d 406,

409-10 (collecting cases)) ("Schulman testified that sometime before he filed his tax returns in

April 2004 . . . he received a Form 1099 from Defendants which identified him as an

independent contractor. . . . Accordingly, by April 2004, Schulman was aware that he was

classified as an independent contractor and 'on clear notice that [he was] not entitled to

benefits.'" (citations omitted)); Reches v. Morgan Stanley & Co., No. 16 Civ. 1663 (BMC)

(SMG), 2016 WL 4530460, at *3 (E.D.N.Y. Aug. 29, 2016) ("[T]he statute of limitations for

plaintiff's pension and ESOP benefits claims began to run when he first became aware that he

was classified as an 'independent contractor' or 'leased employee' by defendant."), aff'd sub

nom. Reches v. Morgan Stanley & Co. Inc., 687 F. App'x 49, 50 (2d Cir. 2017) ("[T]he district

court correctly determined that the Plaintiff's claims accrued when he learned that he was being

classified as a leased employee or independent contractor, because that information constituted

notice that the Defendant had repudiated the Plaintiff's eligibility for employee benefits,

including pension and stock option benefits."); Downes v. JP Morgan Chase & Co., No. 03 Civ.

8991 (GEL), 2004 WL 1277991, at *3 (S.D.N.Y. June 8, 2004) ("[T]he alleged breach occurred

when J.P. Morgan classified Downes as an independent contractor rather than as an employee, thereby rendering her ineligible for benefits.").[4]

Here, Plaintiff signed the Freelance Agreement with the Times on April 2, 2004. (See Costello Decl., Ex. D (Freelance Agreement) (Dkt. No. 49-4) at 3)  The Freelance Agreement explicitly provides that Plaintiff will be treated as an independent contractor and will not be entitled to employee benefits:

> You are an independent contractor, and as such you do not receive any benefits as an employee of The Times.  The Times will provide you with IRS form 1099 at the end of the year reflecting all amounts paid to you for that year.

(Id.)  Accordingly, by April 2, 2004, Plaintiff was aware that he was classified as an independent contractor and was on clear notice that he would not receive employee benefits.  Because

---

[4] Although in Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 135 n. 4 (2d Cir. 2001), the Second Circuit declined to decide whether the repudiation must come directly from a fiduciary (see id. ("The American Association for Retired Persons submitted an amicus brief arguing that the statute of limitations did not begin to run on Davenport's claim for benefits when she was hired because only a fiduciary can repudiate an individual's claim for benefits.  We do not reach the merits of this issue.")), the Second Circuit has subsequently stated – albeit in a summary order – that in misclassification cases a Plaintiff's claims accrue "when he learned that he was being classified as a leased employee or independent contractor, because that information constituted notice that the Defendant had repudiated the Plaintiff's eligibility for employee benefits, including pension and stock option benefits." Reches, 687 F. App'x at 50 (affirming district court's dismissal of plaintiff's ERISA claims on statute of limitations grounds).  All of the courts in this District that have considered this question under comparable circumstances have reached the same conclusion. See, e.g., Brennan, 275 F. Supp. 2d at 410 ("The fact that the repudiation did not come directly from a Plan fiduciary is immaterial.  It is sufficient that plaintiffs knew at the time they signed the Agreements that the Plans would repudiate any and all claims they would make for benefits.  To require that the repudiation come directly from a plan fiduciary would be to require that beneficiaries file a formal claim for benefits, which was explicitly rejected by the Second Circuit." (emphasis in original) (citations omitted)); Ambris v. Bank of New York, No. 96 Civ. 0061 (LAP), 1998 WL 702289, at *6 (S.D.N.Y. Oct. 7, 1998) ("Once a plaintiff is on clear notice that she is not entitled to benefits, the cause of action accrues. . . . [I]n this case, plaintiff never applied for benefits and therefore never received a clear repudiation in response to an application.  Nonetheless, the clear repudiation contemplated by Miles was present in the sense that the knowledge that Ambris, and others like her, were not eligible for benefits was clear and pervasive.").

Plaintiff did not file his claim for benefits until July 28, 2016 – more than twelve years later – his

benefits claim under the Guild Plan is barred by the applicable six-year statute of limitations.[5]

(See Am. Cmplt. (Dkt. No. 21) ¶ 64; Costello Decl., Ex. E (July 28, 2016 Ltr.) (Dkt. No. 49-5))

It is undisputed, however, that the APP Plan did not come into existence until

January 2013 (See Costello Decl., Ex. C (APP Plan) (Dkt. No. 49-3) at 3), and Plaintiff argues

that the statute of limitations "could not have been clearly repudiated prior to the date on which

that Plan" came into existence. (Pltf. Br. (Dkt. No. 54) at 9)  It would be anomalous to find that

Plaintiff was obligated to challenge the repudiation of benefits under the APP Plan in 2004, when

the APP Plan was not created until 2013.  Moreover, Defendants have cited no authority for the

proposition that the date of repudiation starts the limitations clock even for benefit plans that do

not exist as of the date of repudiation.  Under these circumstances, the Court concludes that the

Plan Defendants have not met their burden to demonstrate as a matter of law that Plaintiff's

benefits claim under the APP Plan is time-barred.

**B.    Whether the Trustees' Decision to Deny Benefits
       Under the APP Plan Was Arbitrary and Capricious**

The terms of the APP Plan limit participation in the Plan to individuals that meet

certain eligibility requirements.  The APP Plan defines a "Participant" as "any Member who has:

---

[5]  Plaintiff's argument that he could not have known of the repudiation of benefits until after he
obtained the Plan documents (see Pltf. Br. (Dkt. No. 54) at 15) is unavailing.  See, e.g.,
Schulman, 2013 WL 4860119, at *6 (rejecting plaintiff's argument that his benefit claim did not
accrue until he was made aware of the plan's existence, "because [d]efendants were explicit that
[plaintiff] was considered an independent contractor"); Kryzer v. BMC Profit Sharing Plan, No.
01 Civ. 299, 2001 WL 1587177, at *1-2, 4 (D. Minn. Nov. 1, 2001) (holding that plaintiff's
claim accrued when he signed an independent contractor agreement, even though he did not
receive the plan documents until twenty years later).  Because there is no requirement that the
repudiation of Plaintiff's right to benefits come directly from a Plan fiduciary, the date on which
Plaintiff obtained Plan documents is immaterial.

(a) attained age twenty-one (21) and (b) been credited with 500 Hours of Service in one (1) or more Plan Years as a Member." (Costello Decl., Ex. C (The APP Plan) (Dkt. No. 49-3) at 7 § 1.37) "Member," in turn, is defined as "an Employee in one of the bargaining units subject to the Collective Bargaining Agreement or in Foreign Service on whose behalf the Employer makes payments to the Fund pursuant to Article X." (Id. at 6 § 1.34) "Employee" is defined as "any person who is in the employment of the Group," "Group" means the "Employer," and "Employer" is defined as "The New York Times Company for itself and on behalf of The New York Times . . . and any other subsidiary covered by the Collective Bargaining Agreement." (Id. at 5, §§ 1.22, 1.23, 1.30) As noted above, the APP Plan grants the Trustees discretionary authority to interpret the terms of, and administer, the Plan. (See id. at 8 § 8.6)

Here, the Trustees interpreted the language requiring that a "Participant" be an "Employee" of the Times "to exclude from eligibility any individual who (i) has entered into an agreement providing that he or she is an independent contractor; (ii) is not treated as an employee in the performance of services; or (iii) does not meet the legal definition of an employee." (Costello Decl., Ex. P (Sept. 15, 2017 Ltr.) (Dkt. No. 49-16) at 3) After reviewing multiple submissions from the parties (see Costello Decl., Ex. J (Mar. 16, 2017 Ltr.) (Dkt. No. 49-10); Costello Decl., Ex. N (July 25, 2017 email) (Dkt. No. 49-14) at 2; Costello Decl., Ex. O (Aug. 3, 2017 Ltr.) (Dkt. No. 49-15)), and holding a hearing regarding Plaintiff's claim for benefits (see Costello Decl., Ex. M (May 5, 2017 Ltr.) (Dkt. No. 49-13) at 2)), the Trustees concluded that Plaintiff fell within each of the three categories and was therefore "not eligible for participation in the Plans." (Costello Decl., Ex. P (Sept. 15, 2017 Ltr.) (Dkt. No. 49-16) at 3)

Plaintiff argues that this determination was arbitrary and capricious because (1) where "the term 'employee' is undefined . . . the common law definition of 'employee' [under

Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992)] governs," and therefore the Trustees'

analysis under the first two categories is erroneous; and (2) the Trustees' conclusion that Plaintiff

does not meet the common law definition of "employee" is "unsupported by substantial

evidence." (Pltf. Br. (Dkt. No. 54) at 18-19)

        As an initial matter, there is no requirement that plan administrators adopt

ERISA's common law definition of "employee" in construing the meaning of plan terms, such as

"employee" or "employed by the employer."  Indeed, courts have uniformly rejected any such

requirement.  See, e.g., Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 14 (1st Cir. 2003)

("Kolling claims that because he qualified as a common law employee he was entitled to benefits

under the [Plan].  We disagree. . . . [N]othing in ERISA requires a plan to extend benefits to

every common law employee. . . . Where, as here, the Plan adopts a circular definition of

employee – "Employee of the Employer" – the Plan administrator has the discretion reasonably

to determine the meaning of that phrase."); Capital Cities/ABC, Inc. v. Ratcliff, 141 F.3d 1405,

1409-10 (10th Cir. 1998) ("[I]t is well established that employers may exclude categories of

employees from their ERISA plans. . . . Employers need not include every employee who meets

the common law definition of employee. . . . Under the Agency Agreements, the Carriers and the

Star mutually agreed that the Carriers would not be treated as employees, would not receive "any

benefits or other compensation currently paid by The Star to its employees or hereafter declared

by The Star for the benefit of its employees," and would receive as compensation only the fees

set forth in the Agreements.  Thus, it is clear under the Agreements . . . that the Carriers were not

entitled to benefits under the Star's ERISA plans."); Trombetta v. Cragin Fed. Bank for Sav.

Employee Stock Ownership Plan, 102 F.3d 1435, 1439-40 (7th Cir. 1996) ("The phrase

'employed by an Employer' . . . may be given different meanings than those we have ascribed to

similar language in the statute. . . . As the district court correctly noted, <u>Darden</u> construed the term 'employee' for the purposes of determining who has standing to sue under ERISA. 'Nothing in ERISA, however, compels a plan to use the term 'employee' in the same way it is used in the statute.'); <u>Wolf v. Coca-Cola Co.</u>, 200 F.3d 1337, 1340 (11th Cir. 2000) (same). Accordingly, a plan administrator's reasonable interpretation of the term "employee" is entitled to deferential review.  <u>See</u> <u>Admin. Com. of Time Warner, Inc. v. Biscardi</u>, No. 99 Civ. 12270 (DLC), 2000 WL 1721168, at *9 (S.D.N.Y. Nov. 17, 2000) ("An ERISA plan may . . . legitimately exclude certain classes of ERISA 'employees,' as long as that exclusion is not based on age or length of employment. . . . The Committee's determination that the defendants, even if 'employees' for purposes of the statute, were not eligible for benefits, is a matter of interpretation of the Plans that is entitled to deferential review." (citations omitted)).

Here, the Trustees' determination that Plaintiff was excluded from benefits under the APP Plan because he entered into a freelance agreement – stating that he was an independent contractor and was not entitled to "receive any benefits as an employee of The Times" (<u>see</u> Costello Decl., Ex. D (Freelance Agreement) (Dkt. No. 49-4) at 3) – was a reasonable interpretation of the APP Plan.  <u>See</u>, <u>e.g.</u>, <u>Trombetta</u>, 102 F.3d at 1439 ("[T]he Committee determined that plaintiffs were not 'employed' by an Employer because each had signed an agreement designating themselves as independent contractors for all purposes. . . . The Committee reasonably concluded that persons who were identified both by themselves and by Cragin as independent contractors were not in the same category as persons identified by Cragin as Employees for the purposes of benefits determinations."); <u>Capital Cities/ABC</u>, 141 F.3d at 1409-10 (same).  Accordingly, the Trustees' denial of benefits on this basis was not arbitrary and capricious.

Moreover, even if the Trustees had been required to adopt the common law definition of "employee," it was reasonable for the Trustees to conclude -- after applying the Darden factors -- that Plaintiff was an independent contractor.  (See Costello Decl., Ex. P (Sept. 15, 2017 Ltr.) (Dkt. No. 49-16) at 3-11)  The Trustees found that (1) the Times had minimal control over Plaintiff's performance; (2) Plaintiff had "specialized knowledge and skill reflect[ing] his treatment as an independent contractor" rather than as an employee; (3) except in rare circumstances, Plaintiff supplied his own equipment; (4) within the parameters of an assignment, Plaintiff controlled how and where photographs were taken; (5) Plaintiff had no workspace at the Times; (6) Plaintiff was always offered assignments on a "project-by-project basis"; (7) in contrast to a staff photographer, Plaintiff was free at any time to reject an assignment from the Times, Plaintiff "acknowledged that he had declined assignments in the past for personal reasons," and "correspondence provided by the Times demonstrate[d] that [Plaintiff] ha[d] rejected at least one assignment in order to work for another publication[]"; (8) Plaintiff was free to dictate his schedule within the parameters of an assignment and was never paid to be "on-call"; (9) Plaintiff was paid on a project-by-project basis; (10) Plaintiff "acknowledged" that he had the right to hire and pay assistants; (11) Plaintiff operated an independent business and was free to work for competing publications; and (12) Plaintiff signed a freelance agreement acknowledging his status as an independent contractor and disclaiming any right to employee benefits.  (See id.)  In light of these findings, the Trustees reasonably concluded that Plaintiff was not an employee within the meaning of the APP Plan.[6]

_____

[6]  Plaintiff complains that the Trustees' determination that he was not a common law employee is contrary to "substantial evidence" in the administrative record because (1) Plaintiff submitted representative samples of thousands of assignment sheets which demonstrated that the Times exercised control over Plaintiff; and (2) the Trustees failed to compare the level of control

exercised over Plaintiff to the level of control exercised over staff photographers. (See Pltf. Br. (Dkt. No. 54) at 20)  These arguments fail for several reasons.

First, the Trustees considered the assignment sheets in detail, and explained why they found them to be unpersuasive:

> The Times had Minimal Control over Mr. Stolarik's Performance.  The Trustees initially denied Mr. Stolarik's claims, in part, on the basis that The Times had little to no control over Mr. Stolarik's work, which showed that The Times treated Mr. Stolarik as an independent contractor. On appeal, Mr. Stolarik argued that The Times had complete control over how and when he performed services for The Times.  In support of his position, Mr. Stolarik submitted assignment forms used by The Times to assign projects to photographers.  These assignment forms explained the subject of the photography and often explained specific shots desired, such as trying to get police in a frame, trying to get a victim crying, or making a shot tight because it is going in a single column on the page.
>
> After reviewing the assignment forms provided by Mr. Stolarik and considering Mr. Stolarik's oral statements, the Trustees have determined that Mr. Stolarik has control over the manner in which his work was performed, and The Times' influence was only minimal and consistent with an independent contractor relationship.  The assignment forms provided to Mr. Stolarik, as well as other photographers, simply contained the information necessary to complete the assignment (i.e., the address, time of event, basic information regarding the underlying news story, the types of shots desired, the necessary specifications in order for those shots to be published, etc.).  The assignments forms were merely the means by which assignments were communicated and should not be considered the exercise of control over the manner in which the photographs were taken. For example, the assignment forms did not specify the means or techniques that Mr. Stolarik, as a professional photographer, was to use.  These include type of equipment, exposure, aperture, shutter speed, composition, ISO value, focus mechanism, white balance setting, or angle.  The Times merely provided information as to what it needed in the end-product, the photographs, not the precise manner of job performance.
>
> The fact that Mr. Stolarik had control over how he produced the requested photographs shows that The Times treated Mr. Stolarik as an independent contractor.

(See Costello Decl., Ex. P (Sept. 15, 2017 Ltr.) (Dkt. No. 49-16) at 4)  The Court concludes that the Trustees' determination that the Times exercised "minimal control" over Plaintiff was reasonable.

Moreover, and contrary to Plaintiff's assertion, the Trustees solicited evidence and made specific findings regarding the relative level of control exercised over Plaintiff as compared with staff photographers.  (See id. at 7-8, 11 (finding that – in contrast to staff photographers – Plaintiff was not assigned a workspace, and was free to reject assignments, operate his own business, and work for competing publications))

Accordingly, the Plan Defendants will be granted summary judgment on the Amended Complaint's Eleventh Cause of Action.

## CONCLUSION

For the reasons stated above, the Times's motion to dismiss the Third and Tenth Causes of Action (Dkt. No. 42) is granted. The Plan Defendants' motion to dismiss the Amended Complaint's Eleventh Cause of Action (Dkt. No. 47) is converted into a motion for summary judgment, and the Plan Defendants are granted summary judgment on that claim. Defendants' requests for oral argument on their motions (Dkt. Nos. 46, 52) are denied as moot. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 42, 46, 47, 52).

Dated: New York, New York
        August 31, 2018

SO ORDERED.

Paul G. Gardephe
United States District Judge

---

Based on the administrative record, the Trustees' determination that Plaintiff was not a common law employee was supported by substantial evidence. See Miller, 72 F.3d at 1071 ("Substantial evidence 'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker and] . . . requires more than a scintilla of evidence but less than a preponderance.'" (citations omitted)).