# BANTLE & LEVY LLP

ATTORNEYS AT LAW

817 BROADWAY

NEW YORK, NEW YORK 10003

ROBERT L. LEVY
LEE F. BANTLE
SHERIE BUELL

TEL 212.228.9666
FAX 212.228.7654

September 27, 2018

**Via ECF**
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

        Re: *Stolarik v. The New York Times Company, et al.*
           Civil Case No. 17 Civ. 5083 (PGG)

Dear Judge Gardephe:

  We are writing this joint letter to submit to the Court disputes concerning: (1) withholding of documents by Defendants The New York Times and Michele McNally ("Defendants") based on a claim of attorney-client privilege; and (2) Plaintiff's request to take the depositions of three additional witnesses, including two in-house attorneys who substantially influenced a key decision in this case. The parties met and conferred on these issues on September 5, 2018 but were unable to resolve the dispute. Participants in the call, which concerned several discovery issues and lasted approximately 40 minutes, were Michelle Annese for the Defendants and Lee Bantle and Sherie Buell for the Plaintiff.

## I. Plaintiff's Position

  Defendants have withheld from production 25 documents and have redacted portions of 31 others claiming that the documents are protected by the attorney-client privilege. However, the privilege is unavailable because Defendants: 1) have waived the privilege; and 2) have sought to use the information which is allegedly privileged as both a sword and a shield. One key question in this case is why in 2016 the Plaintiff, Robert Stolarik, stopped receiving photography assignments at the Times after working nearly full-time for the newspaper for 10 years. On March 16, 2016, Plaintiff engaged in protected activity by opposing discriminatory practices at the Times via a letter from his attorneys. Following the Times receipt of that letter -- which was quickly disclosed to the photo assignment editor, Cornelius Schmid, and other Times' editors with responsibility for making photography assignments -- Stolarik never worked for the Times again.

  In Plaintiff's First Set of Interrogatories, Defendants were asked as follows: 3. Identify all persons with knowledge or information concerning the termination of and/or reduction in assignments to Plaintiff and the reasons therefore. Defendants' response on January 25, 2018 objected to the interrogatory on the grounds that it was vague and ambiguous as it is unclear what is meant by "termination." Defendants then provided an intentionally deceptive and incomplete answer as follows:

**BANTLE & LEVY LLP**

"Subject to and without waiving the foregoing objection, the Times Defendants identify the following individuals as having knowledge concerning the changes in the focus and the size of the Metro Section and the corresponding reduction in the number of freelance photography assignments: Michele McNally, Jessica Dimson, Maura Foley, Wendell Jamieson, Dolores Morrison and Cornelius Schmid.

The answer was deceptive and incomplete because it failed to disclose the principal rationale on which the Times now attempts to justify its refusal to give work to Stolarik. In June 2016, numerous editors were directed by Michele McNally not to give photography assignments to Stolarik. This was purportedly because Stolarik had pursued royalties from third parties through his company, Copyright Collective, on photos in which he and other freelancers shared a joint copyright with the Times. However, McNally testified that the decision not to give Stolarik any further work was made by Marcijane Kraft and Richard Samson, two in-house attorneys for the Times. Kraft and Samson were not identified in Defendants' answer to interrogatory 3. Nor did Defendants identify many of the editors who were explicitly told by McNally to stop using Stolarik allegedly because of copyright issues.

Defendants' efforts to conceal this explicit direction to stop using Stolarik after he had asserted discrimination claims against the Times fell apart on July 24, 2018, at the deposition of Niko Koppel, a former Times photo editor (the sixth deposition taken by Plaintiff). Koppel testified that he was told by McNally that he could no longer give photography assignments to Stolarik due to his pursuit of copyright royalties through Copyright Collective. Following this deposition, a review of Defendants' privilege log (which was produced very late and only upon repeated demand) revealed that there were 30 documents created in May and June 2016 which concerned Copyright Collective for which Defendants claimed privilege. In addition, Defendants' redaction log showed 31 documents which were redacted because they had information concerning Copyright Collective.

The day after Koppel's deposition, Plaintiff wrote to Defendants and demanded production of the 30 documents concerning Copyright Collective on the privilege log and production of unredacted versions of all documents produced concerning Copyright Collective. (Copies of the privilege log and the redaction log are attached to this letter.) In response, on August 1, 2018, Defendants amended their answer to Interrogatory Number 3 -- more than 6 months after their initial response and after 8 depositions, including Plaintiff's, had been completed. Defendants added this supplement: "The Times Defendants identify the following individuals as having knowledge concerning Copyright Collective and the decision to no longer utilize Plaintiff for freelance photography assignments: Michele McNally and Richard Samson." Even this supplement fails to identify many of those with knowledge.

On August 3, 2018, Defendants then provided five of the thirty documents on the privilege log concerning Copyright Collective (items 3,4,5,7 and 15) but none of the redacted documents concerning Copyright Collective. One of the documents belatedly produced was a list of editors who had been (or were to be) instructed not to give work to Stolarik. Other documents were emails among lawyers and non-lawyers at the Times addressing Copyright Collective and Stolarik.

The belatedly produced documents show that two people who substantially influenced a decision to end Stolarik's work for the Times were the attorneys, Marcijane Kraft and Richard Samson, both of whom were well aware of Stolarik's protected activity. Indeed, Samson unaccountably called Stolarik on June 1, 2016 and in a *lengthy* call, without Stolarik's counsel present, said: "Since you are currently engaged in a legal dispute with the Times, I can't talk to you about anything." Kraft was, in fact, the

**BANTLE & LEVY LLP**

attorney at the Times tasked with responding to the letter from Stolarik's lawyers asserting that he was being discriminated against by the Times. The belatedly produced documents reveal that Samson relied on the content of the conversation he had with Stolarik to urge termination of Stolarik's relationship with the Times. The documents also reveal that Samson made several materially false representations about Stolarik and Copyright Collective to others at the Times following the call, strongly suggesting that using Copyright Collective as a justification to stop giving Stolarik work was pretextual.

Based on the foregoing, Plaintiff seeks a ruling that: 1) Defendants must produce all documents on the privilege log concerning Copyright Collective as well as the redacted portions of already produced documents concerning Copyright Collective; and 2) that Plaintiff be permitted to depose three additional witnesses (Kraft, Samson and Cornelius Schmid, the photo assignment editor in 2016) even though it exceeds the limit of 10 depositions.[1]

It is well-established that the "attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). As a result, the "subject matter waiver doctrine, also known as the fairness doctrine and the "at issue" doctrine, requires that when "a party places advice that it has received from an attorney 'at issue' in litigation, it has waived the [attorney-client] privilege with respect to all such advice on the same topic." *Am. SS. Owners Mut. Prot. & Indem. Assoc'n v. Alcoa SS Co.*, 232 FDR 191(S.D.N.Y. 2005). *See also, Skyline Steel, LLC v. Pilepro, LLC,* 2015 U.S. Dist. LEXIS 95929 (S.D.N.Y 2015).

Defendants here are attempting to use the attorney-client privilege as a sword and a shield in that they are now claiming that Stolarik stopped getting work at the Times -- not because of a retaliatory motive -- but based on the advice of attorneys concerning Copyright Collective. And yet defendants are shielding many of the allegedly privileged communications on this subject. While Plaintiff should be permitted to more fully explore the Times' newly asserted explanation for his loss of work, he also has the right to explore the protected activity theory which is supported by recent disclosures.

In any event, Defendants have waived the attorney-client privilege on the subject matter of Copyright Collective in that they produced five documents on this subject which had been listed on the privilege log and they permitted McNally to testify at deposition about why and at whose direction Stolarik stopped getting work. It is well-settled that "the attorney-client privilege is waived if the privilege-holder voluntarily discloses or consents to the disclosure of any significant part of the matter or the communication." *Kirschner v. Klemons*, 2001 U.S. Dist. LEXIS 17863 (S.D.N.Y. 2001) (defendant's deposition testimony on the substance of advice from counsel constituted a waiver of attorney-client privilege as to that issue). *See also, Weizmann Inst. of Sci. v. Neschis*, 2004 U.S. Dist. LEXIS 4254 (S.D.N.Y. 2004) ("[W]here there has been a prejudicial disclosure of some attorney-client communications, there may be a waiver of all communications on the same subject.").

Finally, Plaintiff should be allowed to take three depositions beyond the limit of ten[2] in order to partially cure the prejudice caused by Defendants' misleading initial interrogatory answer and the failure to turn over until late in the game documents concerning why Plaintiff stopped getting work in 2016.

---

[1] Magistrate Judge Fox previously ruled that Plaintiff could take only 10 depositions. However, Plaintiff did not know and thus did not brief Magistrate Judge Fox on the issues set forth in this letter.

[2] Plaintiff has taken nine depositions and has one more deponent who is not yet scheduled, A.G. Sulzberger.

**BANTLE & LEVY LLP**

This not only limited Plaintiff's ability to probe this issue at the first six depositions, but also misled Plaintiff about whom to depose. Kraft and Samson must be deposed as they substantially influenced a key decision in this case. Schmid must be deposed because he was the assignment editor in 2016, frequently sent or received emails about copyright which are listed on the privilege log and met with Kraft in March 2016 to discuss the letter sent by Stolarik's attorneys asserting claims of discrimination.

## II. The Times Defendants' Position

### A. The Times Defendants' Discovery Responses

Contrary to Plaintiff's contentions and as detailed herein, The Times Defendants' timely produced information and documents concerning Copyright Collective—well before any witnesses were deposed.

First, in their January 25, 2018 response to Plaintiff's Interrogatory No. 9 – which asked that The Times Defendants "[i]dentify all persons with knowledge or information concerning the Copyright Collective or Plaintiff's independent photography business" – The Times Defendants identified Michele McNally and Richard Samson, an in-house attorney for The Times. Plaintiff was therefore clearly aware—on January 25, 2018—of Samson's knowledge of issues pertaining to Copyright Collective. The motion Plaintiff filed on April 12, 2018, seeking leave of Court to take more than ten deposition, belies any suggestion to the contrary. In that motion, Plaintiff sought leave to depose Samson and provided the Court with the following rationale: "Mr. Samson is an attorney for The Times and deals with copyright issues. He had several non-privileged oral and written communications with [Plaintiff] and has been identified by Defendants as someone with knowledge about disputes between [Plaintiff] and The Times concerning copyright issues . . . ." (*See* Dkt. 56.)

Second, on May 18, 2018, The Times Defendants served Plaintiff with their electronic document production. As part of that production, The Times Defendants produced over 100 non-privileged documents concerning Copyright Collective, including emails to and from Samson.[3]

Third, on June 15, 2018, prior to any depositions in this case, the Times Defendants produced to Plaintiff the "Memorandum re: Robert Stolarik" (bates-stamped NYT-0014404), which made clear that one of the reasons why Plaintiff no longer received freelance assignments from The Times was because of his actions as founder and owner of Copyright Collective. In fact, the memo, dated June 20, 2016, stated, in pertinent part:

> Recently, on behalf of Copyright Collective, Mr. Stolarik has sent cease and desist letters as well as invoices to some of our licensees, including in cases where the photograph(s) at issue were properly licensed by The Times to the licensee and no additional payments were owed.
>
> In connection with these activities, Mr. Stolarik has acted in a combative and abusive manner with Times employees; unfairly accused The Times of interfering with the business of Copyright Collective; demanded (of

---

[3] On July 3, 2018, The Times Defendants produced a privilege log and redaction log to Plaintiff. Thus, contrary to Plaintiff's intimation above, the logs were not produced after Koppel's deposition. That Plaintiff waited until after that deposition to review the logs is not the fault of The Times Defendants.

**BANTLE & LEVY LLP**

> The Times) to see copies of contracts between The Times and its licensees; accused a Times attorney of being a liar; and threatened to bombard The Times with more than 20 emails a day on behalf of clients of Copyright Collective. *Mr. Stolarik's actions are not only unprofessional and disruptive to the our business and the operation of companies which we regularly do business with, they create a conflict of interest between Mr. Stolarik's work as a freelance photographer for The Times and his work and actions (including as described above) on behalf of Copyright Collective.*
>
> [Emphasis added.]

Accordingly, *prior to any of the depositions in this matter*, Plaintiff was in possession of the foregoing memo that specifically identified one of the reasons why he was no longer receiving freelance assignments from The Times. As such, Plaintiff's contention that The Times attempted to conceal one of the reasons why Stolarik has not received freelance assignments "fell apart on July 24, 2018, at the deposition of Niko Koppel" is simply false. Further, the claim that Plaintiff first learned that about a "direction to stop using Stolarik" at Koppel's deposition is belied by Plaintiff's *own* deposition testimony. At his deposition, Plaintiff testified that he had a conversation with Koppel in June 2016 and that, during that conversation, Koppel allegedly said to Plaintiff: "I can't give you assignments any longer. Michele has blacklisted you, and I just wanted to let you know . . . And I just thought it was only fair to tell you that not to expect to get any more work from us."

Equally frivolous is Plaintiff's claim that he was unable to probe at the first six depositions "why Plaintiff stopped getting work in 2016." Plaintiff had the opportunity to explore this issue at each of the first six depositions and, in fact, did so. (*See* Chart attached hereto as Exhibit A).

### B. The Times Defendants Have Properly Withheld Documents Based on the Attorney-Client Privilege & the Work Product Doctrine

As detailed above, Plaintiff's conduct in connection with Copyright Collective is one of the reasons why The Times no longer engages Plaintiff to provide freelance photography services. The decision was made by Samson and The Times has produced emails and documents concerning that decision.

The remaining documents that Plaintiff seeks are privileged in that they concern: (i) legal advice received by Samson from Kraft (The Times' in-house employment attorney) and outside counsel in connection with that decision; or (ii) legal discussions concerning The Times' response to third-parties and licensees who raised issues to The Times concerning Copyright Collective. As a result, those documents have been properly withheld on the ground of privilege.

### C. Plaintiff Is Not Entitled to the Additional Depositions Which He Seeks

FRCP 30(a)(2) requires a party to obtain leave of court to take more than ten depositions. To date, Plaintiff has taken nine depositions and adjourned *sine die* the deposition of A.G. Sulzberger, the

**BANTLE & LEVY LLP**

Publisher of The New York Times.[4] Additionally, in response to Plaintiff's request, the Times Defendants are producing Samson for a deposition, notwithstanding that Samson's deposition would be the eleventh deposition taken by Plaintiff in this litigation. Thus, while Plaintiff has raised this issue to the Court, The Times Defendants, in the spirit of cooperation, agreed to produce Samson.

Plaintiff's claim that he was "misled about whom to depose" and, therefore, should be permitted to depose Cornelius Schmid, a former photo editor, and Kraft also is baseless.

With regard to Schmid, The Times Defendants specifically identified Schmid in January 2018 in response to several of Plaintiff's interrogatories, including as someone with knowledge concerning Plaintiff's provision of freelance services to The Times. Plaintiff's own deposition testimony and discovery responses undermine his claim that he was "misled" into not deposing Schmid. Plaintiff has always been aware that Schmid was the Assignment Editor in late 2015 and early 2016 and, in fact, Plaintiff testified as such at his own deposition. In his FRCP 26(a) disclosures, Plaintiff identified Schmid as having "information concerning the nature of Plaintiff's work for Defendants, and Plaintiff's assignments and hours worked." As such, if Plaintiff believed that Schmid had pertinent information concerning his allegations, he certainly could have used one of the ten depositions permitted by the federal rules to depose Schmid.

Plaintiff's claim that Schmid must be deposed because he "frequently sent or received emails about copyright" is misleading. Schmid is not copied on any emails concerning Copyright Collective. Rather, the emails, dated 2014 and 2015, which are listed on the privilege and redaction log, concern copyright issues that have nothing to do with Copyright Collective.

Equally unavailing is Plaintiff's claim that he is entitled to depose Kraft. Kraft, as in-house employment counsel for The Times, was responsible for investigating the claims asserted by Plaintiff in the March 2016 demand letter his attorney sent to The Times' General Counsel. That investigation is clearly privileged and Plaintiff is not entitled to depose Kraft as to that issue.[5]

With regard to the decision to no longer utilize Plaintiff's freelance photography services, Kraft was included on emails due to her position as in-house counsel and was not a decision-maker with respect to the decision to no longer engage Plaintiff as a result of his conduct in connection with Copyright Collective.

---

[4] The Times Defendants objected to Sulzberger's deposition on the grounds that Sulzberger is a senior executive with no unique knowledge concerning Plaintiff's allegations. The discovery dispute was ultimately submitted to Magistrate Judge Fox, who ruled that Plaintiff could depose Sulzberger. Sulzberger's deposition was scheduled for August 16 and was adjourned by Plaintiff. During the parties most recent meet and confer session, Plaintiff's counsel stated that he was willing to forego Sulzberger's deposition if The Times Defendants produced a list of assignments received by all freelancers and produced Schmid and Kraft for depositions. Plaintiff's willingness to forego the Sulzberger deposition significantly undermines his previous claims that the Sulzberger deposition was a necessary deposition and illustrates the fact that Plaintiff simply miscalculated when selecting his original 10 deponents and that is why he now seeks additional depositions.

[5] At deposition, McNally inadvertently testified regarding a conversation with Schmid, during which Kraft was present; that conversation was in connection with The Times' investigation into the March 2016 demand letter. Because McNally began to testify about the conversation, counsel for The Times permitted her to continue testifying as to that conversation only, but maintained that The Times was not waiving the privilege as to the rest of its investigation, including discussions with any other employees during which Kraft was present.

**BANTLE & LEVY LLP**

As such, no basis exists for Plaintiff's request to depose Schmid and Kraft. Plaintiff's requests for two additional depositions should be denied.

Respectfully submitted,

| | |
|---|---|
| PROSKAUER ROSE LLP | BANTLE & LEVY LLP |
| By: */s/ Allan S. Bloom* | By: */s/ Lee F. Bantle* |
| Gregory I. Rasin | Lee F. Bantle |
| Allan S. Bloom | Sherie N. Buell |
| Michelle A. Annese | 817 Broadway |
| Eleven Times Square | New York, New York 10003 |
| New York, New York 10036 | Tel. 212.228.9666 |
| Tel. 212. 969.3000 | Fax 212.228.7654 |
| Fax 212.969.2900 | bantle@civilrightsfirm.com |
| grasin@proskauer.com | buell@civilrightsfirm.com |
| abloom@proskauer.com | |
| mannese@proskauer.com | |
| | |
| *Attorneys for Defendants, The New York Times Company and Michele McNally* | *Attorneys for Plaintiff, Robert Stolarik* |