UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT STOLARIK,

    Plaintiff,

- against -

THE NEW YORK TIMES COMPANY and
MICHELE MCNALLY,

    Defendants.

**ORDER**

17 Civ. 5083 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Robert Stolarik – a photographer who formerly worked for the New York Times (the "Times") – brings this action against the Times and Michele McNally, the Times' Assistant Managing Editor for Photography, alleging that Defendants improperly classified him as a freelance photographer and independent contractor, and discriminated against him on the basis of his age and arrest record by ceasing to give him photography assignments. (See Am. Cmplt. (Dkt. No. 21))

    The Amended Complaint asserts causes of action for (1) violations of the Fair Labor Standards Act and the New York Labor Law, for failure to pay overtime wages; (2) violation of the New York Labor Law, for breach of a collective bargaining agreement; (3) age discrimination, aiding and abetting age discrimination, discrimination based on Plaintiff's arrest, and aiding and abetting discrimination based on Plaintiff's arrest, all in violation of the New York City Human Rights Law ("NYCHRL"); (4) retaliation, and aiding and abetting retaliation, in violation of the NYCHRL; (5) unjust enrichment; and (6) violations of the Employee Retirement Income Security Act. (Id. ¶¶ 144-191)

On September 24, 2018, the parties informed this Court of a discovery dispute. (See Sept. 27, 2018 Ltr. Mot. (Dkt. No. 74)) The dispute concerns, inter alia, 25 documents the Times has withheld as privileged; and 31 documents the Times has partially redacted. The Court referred the dispute to the designated magistrate judge, who ordered an in camera review of the documents. This Court later withdrew the reference, however, and conducted its own in camera review of the withheld and partially redacted documents. (See Am. Order of Reference (Dkt. No. 77); Order (Dkt. No. 93))

The documents that are the subject of this dispute all relate to "Copyright Collective," an organization that Plaintiff founded. This entity pursues royalties from third parties who make use of member photographers' photographs without permission. (See Sept. 27, 2018 Ltr. Mot. (Dkt. No. 74) at 1-2) According to Defendants, Stolarik and Copyright Collective improperly sought royalties from, and threatened litigation against, entities to whom the Times had licensed photographs, and Stolarik "acted in a combative and abusive manner with Times employees" in connection with his activities on behalf of Copyright Collective. (Id. at 4-5) Defendants contend that Stolarik's involvement with Copyright Collective is one of the reasons the Times stopped giving him photography assignments, and the Times has represented that the decision to stop giving Stolarik photography assignments was made on the advice of counsel. (Id. at 5 ("Plaintiff's conduct in connection with Copyright Collective is one of the reasons why [t]he Times no longer engages Plaintiff to provide freelance photography services. The decision was made by Samson[, an attorney for the Times].")) Accordingly, it appears that part of the Times' defense in this case will be that the work assignments to Stolarik ended – not because of discriminatory or retaliatory animus – but because his activities on behalf of Copyright

2

Collective had damaged, or had the potential to damage, the Times' relationship with its customers.

Defendants have "produced over 100 non-privileged documents concerning Copyright Collective." (Id. at 4) They have also "produced five documents on this subject which had been listed on [Defendants'] privilege log[,] and they permitted [Defendant] McNally to testify at deposition about why and at whose direction Stolarik stopped getting work." (Id. at 3) McNally's testimony includes references to the role that lawyers had played in that decision, and the advice they had given. (Id. at 3, 6 n.5)

Plaintiff complains that Defendants "are attempting to use the attorney-client privilege as a sword and a shield in that they are now claiming that Stolarik stopped getting work at the Times – not because of a retaliatory motive – but based on the advice of attorneys concerning Copyright Collective[,] . . . yet . . . are shielding many of the allegedly privileged communications on this subject." (Id. at 3) Plaintiff also argues that – having produced five documents that were previously designated as privileged, and having permitting McNally to testify about the lawyers' role in the decision to stop giving Stolarik work assignments – Defendants waived privilege as to this subject. (Id. at 3)

At a June 12, 2019 conference, this Court informed Defendants that it would need significantly more information – including the title and role of every person mentioned in the disputed documents, and a detailed explanation, as to each document, of the basis for asserting privilege – in order to complete its review. (See Conf. Tr. (Dkt. No. 106) at 4-5) The Court also explained that if Defendants' claims of privilege were sustained, the Court "might likewise limit [D]efendants' ability to assert th[e] defense [regarding Stolarik's Copyright Collective activities] as the case proceeds, because . . . [the Court] can't both sustain a privilege and then allow the

3

defendant to premise arguments based on those privileged documents that were withheld." (Id. at 5)

On June 19, 2019, Defendants informed the Court that it would "produce the majority of the documents at issue": namely, all 31 partially redacted documents, and 23 of the 25 entirely withheld documents, "which pertain to Plaintiff's conduct with respect to Copyright Collective and [t]he Times' decision to no longer utilize the freelance photography services offered by Plaintiff." (June 19, 2019 Defs. Ltr. (Dkt. No. 104) at 1) Defendants "will not, however, agree to produce" the remaining two documents, which "constitute privileged communications between [t]he Times and its outside legal counsel, Proskauer Rose LLP, in anticipation of litigation." (Id. at 2)

Defendants seek the production of these two documents, as well, noting that – based on the information provided in Defendants' privilege log – "[t]he documents at issue do not appear to be materially different in any way from those that already have been or will be produced. The only difference is that additional attorneys are involved. The subject of the emails as set forth in the privilege log is exactly the same." (June 21, 2019 Plft. Ltr. (Dkt. No. 105) at 1-2)

This Court agrees that the two documents that remain in dispute must be produced.

Attorney-client privilege is "generally waived by voluntary disclosure of the communication to another party." Schaeffler v. United States, 806 F.3d 34, 40 (2d Cir. 2015). Accordingly, Defendants' production of the documents originally withheld and redacted plainly constitutes a waiver of the attorney-client privilege as to those documents.

4

Fed. R. Evid. 502(a) provides that "[w]hen [a] disclosure is made in a federal proceeding . . . and waives the attorney-client privilege . . . , the waiver extends to an undisclosed communication or information" where "(1) the waiver is intentional"; "(2) the disclosed and undisclosed communications or information concern the same subject matter"; and "(3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). Accordingly, "[w]hen there has been a selective disclosure of attorney-client communications in the litigation, courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed." Pearlstein v. BlackBerry Ltd., No. 13CV07060CMKHP, 2019 WL 1259382, at *7 (S.D.N.Y. Mar. 19, 2019); see also In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 469 (S.D.N.Y. 1996) ("[D]isclosure in a 'judicial' setting does trigger a waiver by implication for related and otherwise privileged materials. The waiver may include both the entirety of communications that a party has disclosed only in part and all other privileged communications insofar as they touch upon subjects voluntarily disclosed by the privilege holder."); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 484-85 (S.D.N.Y. 1993) ("[D]isclosure in the context of litigation – whether by trial or deposition testimony or by production of documents – will result in an implied waiver broader than the original disclosure itself."); id. at 485 ("It appears sufficient, for a waiver as to subjects discussed in the disclosed conversations, that the privilege holder has voluntarily revealed only some of the communications on the subject and has withheld others."); Bower v. Weisman, 669 F. Supp. 602, 604 (S.D.N.Y. 1987) ("By producing these privileged communications about the will and the trust agreement,

Weisman has waived his privilege with respect to the entire subject matter, and the trust agreements and codicils will be produced.").[1]

Here, Defendants' disclosure of privileged documents is "in the context of litigation," and – having reviewed those documents, as well as the two remaining documents that remain in dispute – the Court finds that all of these documents address the same subject matter. Defendants have offered no argument as to why they have not effected a subject matter waiver, nor have they explained why the fact that the two remaining documents contain communications between the Times and its outside counsel – rather than communications involving only in-house counsel – is of any legal significance.

---

[1] Some courts in this District have stated that subject matter waiver is only appropriate where the partial disclosure unfairly prejudices an adversary. See, e.g., Tribune Co. v. Purcigliotti, No. 93 CIV. 7222 LAP THK, 1997 WL 10924, at *5 (S.D.N.Y. Jan. 10, 1997) ("[W]here there is partial disclosure in the context of the litigation for the benefit of the privilege holder, there may be a complete subject matter waiver as to all communications on the subject. In contrast, where the disclosure is extrajudicial or non-prejudicial to an adversary, there may be no waiver or only a narrow one."), modified, No. 93 CIV. 7222, 1998 WL 175933 (S.D.N.Y. Apr. 14, 1998); Alpex Computer Corp. v. Nintendo Co., No. 86 CIV. 1749 (KMW), 1994 WL 330381, at *2 (S.D.N.Y. July 11, 1994) ("Subject matter waiver is found only in the event that the initial disclosure is made during the course of litigation and results in prejudice to the opposing party.") (citing In re von Bulow, 828 F.2d 94, 102-03 (2d Cir. 1987)). Assuming arguendo that a risk of unfair prejudice is a necessary predicate for finding a subject matter waiver, that risk exists here. The Times intends to use – as part of its defense – that its lawyers recommended that Stolarik not receive new work assignments because his Copyright Collective activities were damaging the Times' relationship with its customers. The Times has agreed to waive privilege as to the communications of in-house lawyers who provided this advice. Proskauer was also involved in providing advice concerning this issue, and there is no principled basis – in the circumstances of this case – to distinguish between the advice the in-house lawyers provided to their clients, and the advice that Proskauer provided to the in-house lawyers for purposes of determining whether there has been a waiver of the attorney-client privilege. See In re Kidder Peabody Sec. Litig., 168 F.R.D. 459, 473 (S.D.N.Y. 1996) (noting that an adversary suffers prejudice from a partial waiver where "the privilege holder not only discloses a privileged communication, but affirmatively makes use of it in litigation"); cf. In re Symbol Techs., Inc. Sec. Litig., No. CV053923DRHAKT, 2017 WL 1233842, at *16 (E.D.N.Y. Mar. 31, 2017) (in the work-product context, "affirmatively utilizing and selectively disclosing five . . . memoranda, while attempting to cloak the remaining nine memoranda under the privilege[,] would result in a patently unfair situation").

The Court concludes that Defendants' production constitutes a subject matter waiver, which extends to the two remaining documents that remain in dispute. See Loguidice v. McTiernan, No. 114CV1323TJMCFH, 2018 WL 4011584, at *7 (N.D.N.Y. Aug. 22, 2018) ("The Court . . . finds that defendants' reliance on the advice of counsel is a significant portion of its . . . defense,, and, thus, waiver of the privilege with respect to this advice must result in subject matter waiver as to all of the legal advice defendants received regarding plaintiff's alleged conflict of interest and the legal advisement and considerations from counsel that went into the decision to terminate her employment.").

## CONCLUSION

For the reasons stated above, the Court concludes that Defendants have waived privilege with respect to the remaining two documents they seek to withhold (documents 22 and 23 on Defendants' privilege log). Defendants are directed to produce these documents forthwith. The Clerk of Court is directed to terminate the motion (Dkt. No. 74).

Dated: New York, New York
September 20, 2019

SO ORDERED.

*Paul Gardephe* (signature)

Paul G. Gardephe
United States District Judge