# BANTLE & LEVY LLP

ATTORNEYS AT LAW

99 PARK AVENUE, SUITE 1510

NEW YORK, NEW YORK 10016

ROBERT L. LEVY
LEE F. BANTLE
SHERIE N. BUELL
DAVID KRAUSS

TEL 212.228.9666
FAX 212.228.7654

May 22, 2020

The parties' settlement agreement is approved by the Court.

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge
June 22, 2020

**Via ECF**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:   *Stolarik v. The _____*
      Civil Case No. 17 Civ. 5083 (PGG)

Dear Judge Gardephe:

This firm represents Plaintiff Robert Stolarik ("Plaintiff" or "Stolarik") in the above-captioned matter. Plaintiff writes with the consent of Defendants to request that the Court approve the parties' settlement of Plaintiff's Fair Labor Standards Act ("FLSA") claims, as reflected in the agreement attached as Exhibit A ("the FLSA Agreement"), as "fair and reasonable" under *Cheeks v. Freeport Pancake House Inc.*, 795 F.3d 199 (2d Cir. 2015).[1]

In the FLSA Agreement, Plaintiff has agreed to settle his wage claims against Defendants under the FLSA and the New York Labor Law ("NYLL"). The Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims with prejudice, in exchange for consideration as set forth in the FLSA Agreement. The FLSA Agreement is the result of an arms-length negotiation between the parties that comes on the heels of years of litigation, with an eye towards bringing this matter to a close and avoiding further complex and costly litigation. The proposed settlement would award Plaintiff a total of Thirty Thousand Dollars ($30,000.00) to settle his claims under both the FLSA and the NYLL.

---

[1] The parties have separately (and privately) resolved Plaintiff's remaining claims, the settlement of which do not require Court approval. Pending the Court's approval of the settlement of Plaintiff's FLSA claims, the parties have submitted herewith a stipulation of dismissal of this action under FRCP 41(a).

BANTLE & LEVY LLP

## I.  Statement of the Case

Plaintiff Robert Stolarik provided photography services for The New York Times (the "Times") for over a decade.  Stolarik alleged that he was misclassified as an independent contractor rather than an employee.  Stolarik alleged that he often worked in excess of forty hours per week, and his claims for overtime pay under the FLSA and NYLL are premised on this misclassification.  Specifically, Stolarik alleged that from 2004 to 2012, he worked full-time for The Times, generally being on assignment more than 250 days per year and often working more than eight hours a day and more than forty hours per week.  Stolarik alleged that in some instances, he worked for The Times for 28 days or more in a row without one day off.  Stolarik alleged that he was not paid an overtime rate for his hours worked over forty hours per week.

Stolarik further alleged that The Times exercised significant control over his work, including that The Times gave assignments to Stolarik and directed Stolarik on what to shoot, when to shoot, where to shoot, and how to shoot, in the same manner and direction as was given to staff photographers.  Stolarik also alleged that he was held out as a New York Times photographer in a variety of contexts, encouraged and supported by his editors to acquire and use credentials reflecting his work on behalf of The Times.

Defendants denied Stolarik's claims on the basis that Stolarik was, at all times, an independent contractor and properly classified as such, and was never an employee of The Times. .  The Times further argued that even if Plaintiff were found to be an employee of The Times for purposes of the NYLL, he would be exempt from the overtime requirements of that law as a creative professional. 12 N.Y.C.R.R. § 142-2.14.

## II.  Fairness and Reasonableness of the Settlement

As noted above, the proposed FLSA Agreement concerning Plaintiff's overtime claims is attached hereto as Exhibit A.  The settlement sum for the claims released therein is $30,000, with 33.33% of that sum to be awarded as attorneys' fees and costs.  Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Garcia v. 120 MP, LLC*, 2020 U.S. Dist. LEXIS 42700 at *1-2 (S.D.N.Y. Mar. 11, 2020) (*citing Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arms-length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." *Id*.  This is apparent based on the history of this litigation, involving

BANTLE & LEVY LLP

numerous discovery disputes, resulting in extensive litigation. This FLSA Agreement was achieved only after years of depositions and document exchange.

The Complaint alleges that Plaintiff was denied overtime pay as a result of his having been misclassified as an independent contractor. Under the FLSA and the NYLL, employees (but not independent contractors) are entitled to one-and-a-half times their regular rate of pay for hours worked in excess of 40 hours per week. To succeed on his FLSA and NYLL claims, then, Plaintiff would first have to succeed on his misclassification claim.

Plaintiff's lower range of recovery is $0. In the upper range of recovery, Plaintiff could expect to recover two years of overtime pay under the FLSA, or three years of pay if Defendants' conduct was determined to be willful. Three years of overtime pay for Plaintiff is estimated at approximately $10,000, including liquidated damages. Under the NYLL, Plaintiff can recover six years of overtime pay, estimated at approximately $70,000, including liquidated damages. In addition, Plaintiff has argued that he would be entitled to equitable tolling of his overtime claims, based on Defendants' failure to post the required notice of overtime pay rights tolling the FLSA statute of limitations. *See Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677 (D. Conn. 2008).

This is a fair and reasonable settlement under the circumstances. There was a significant likelihood that Plaintiff would have been found to not be misclassified under either the FLSA or NYLL or to be an exempt creative professional under the NYLL, therefore unable to recover any amount. By resolving these claims, Stolarik is guaranteed to receive some amount, and will do so without the burden and expense of discovery and protracted litigation. By resolving the claims at this time, Defendants also avoid a costly, time-consuming litigation.

### III.   Attorneys' Fees

The parties ask the Court to award a modest $10,000 in attorneys' fees and costs to settling plaintiffs, which is approximately 33.33% of the total settlement amount. This is in accordance with Plaintiff's retainer agreement.

The attorneys' fees and costs of $10,000 are reasonable in that they constitute one third of Plaintiff's recovery, and reflect only a fraction of the time billed for researching Plaintiff's FLSA and NYLL claims, preparing and filing the original and amended complaints, engaging in motion practice, conducting discovery, and negotiating a resolution of these claims. Plaintiff's counsel estimates that counsel spent approximately one-third of total time billed on Plaintiff's misclassification and overtime claims, although it is difficult to calculate the exact percentage of time spent on each claim with precision.

The amount provided to Plaintiff's counsel under the FLSA Agreement is also well within the range of fees typically awarded in cases in this Circuit, and well below Plaintiff's attorneys' lodestar on the released claims.

BANTLE & LEVY LLP

### IV. Conclusion

In light of the foregoing, the parties jointly request that the Court approve the terms of the agreed upon settlement as memorialized in the FLSA Agreement. We thank the Court for its attention to this matter.

> Respectfully submitted,
>
> */s/ Lee F. Bantle*
>
> Lee F. Bantle

cc: All counsel of record (via ECF)

116228179v2

# SETTLEMENT AGREEMENT & RELEASE

This Settlement Agreement and Release (the "Agreement") is between Robert Stolarik ("Stolarik"), on the one hand, and The New York Times Company ("The Times"), on the other hand. Stolarik and The Times are referred to herein as the "Parties," and each individually a "Party."

WHEREAS, the Parties desire to settle, fully, finally and completely any and all of their disputes with respect to the claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA") and the New York Labor Law ("NYLL") (collectively, the "Wage and Hour Claims") raised by Stolarik in the action now pending in the United States District Court for the Southern District of New York captioned, *The New York Times Company, Michele McNally, Trustees of the Newspaper Guild of New York – New York Times Pension Plan, Trustees of the Guild – Times Adjustable Pension Plan, and Guild – Times Adjustable Pension Plan*, 17-cv-5083 (PGG) (the "Action");

WHEREAS, Stolarik brings the Wage and Hour Claims only against The Times and does not assert any Wage and Hour Claims against any of the other Defendants in the Action;

WHEREAS, the Parties represent that they have discussed the Wage and Hour Claims and this Agreement with their respective attorneys, have been fully advised by them as to their rights, enter into this Agreement voluntarily, and understand that they are waiving legal rights if this Agreement is approved by the United States District Court for the Southern District of New York ("the Court"); and

NOW, THEREFORE, in exchange for and in consideration of the mutual covenants and promises set forth in this Agreement, the Parties agree as follows:

1. <u>Court Approval of Settlement.</u> No later than fourteen (14) business days after the execution of this Agreement by all Parties, Stolarik shall request Court approval of this Agreement and dismissal of his Wage and Hour Claims with prejudice. Stolarik's counsel shall provide drafts of the motion papers to The Times' counsel for review and approval no later than five (5) business days after execution of this Agreement by all Parties. Stolarik's counsel and The Times' counsel shall agree on a mutually acceptable date and time for submission of the approval papers to the Court. If the Court does not approve this Agreement and dismiss Stolarik's Wage and Hour Claims with prejudice, the Parties shall make good faith efforts to modify this Agreement so as to obtain the Court's approval, and provided further that, if, for any reason, the Court does not approve this Agreement and dismiss Stolarik's Wage and Hour Claims after all reasonable good faith efforts by the Parties have been exhausted to secure such approval and dismissal, this Agreement shall immediately become null and void and of no further force or effect, and neither The Times nor any of the other Defendants named in the Action shall have any obligation to provide Stolarik with any payments set forth in this Agreement.

2. <u>No Admission.</u> This Agreement is not intended, and shall not be construed, as an admission that any Party or Released Party has violated any federal, state or local law (statutory or decisional), ordinance or regulation, breached any contract or committed any wrong

whatsoever against any other Party, or an admission by any Party as to the merits or likelihood of success of any claim for liability or damages that might have been asserted between the Parties. Nothing herein constitutes an admission by The Times that Stolarik was an "employee" of The Times or any Released Party, as defined by statute or at common law.

      3.      <u>Consideration.</u> No later than twenty (20) days after the date of entry by the Court of a final Order dismissing Stolarik's Wage and Hour Claims in the Action with prejudice (the "Order Date"), The Times shall make the following payments, which will be delivered to Stolarik's counsel, Lee F. Bantle, Esq., Bantle & Levy LLP, 99 Park Avenue, Suite 1510, New York, New York 10016:

      a.      One check made payable to "Robert Stolarik" in the amount of Twenty Thousand Dollars and No Cents ($20,000.00). The Times will report this payment on an IRS Form 1099-MISC issued to Stolarik.

      b.      One check made payable to "Bantle & Levy LLP" in the amount of Ten Thousand Dollars and No Cents ($10,000.00), which shall represent Stolarik's attorneys' fees and costs incurred in connection with the claims settled by this Agreement. The Times will report this payment on IRS Forms 1099-MISC issued to Bantle & Levy LLP and Stolarik.

Stolarik acknowledges and agrees that he has received all pay and benefits to which he is entitled and that he will not be eligible to receive any additional financial compensation from The Times for his Wage and Hour Claims, except as specified in this Agreement. Stolarik acknowledges and agrees that these payments are in full and final settlement of all disputes, claims, causes of action, or complaints he has or may have under the FLSA, the NYLL, and any other applicable statutes, ordinances, regulations, laws, or common law under which Stolarik could asserts wage and hour claims, between him and The Times and any of the Released Parties as defined below. Stolarik agrees that he is solely and exclusively responsible for payment of his share of any and all income taxes due and owing on the payments provided pursuant to this Agreement.

      4.      <u>Release.</u> In exchange for the promises made by The Times in this Agreement, and except as set forth in Section 5, below, Stolarik on behalf of himself, his current, former and future heirs, spouses, executors, representatives, employees, contractors, administrators, trustees, agents, assigns, successors, attorneys and companies (herein referred to collectively as "Stolarik Releasors"), fully and unconditionally releases The Times and any and all of The Times' past and present parents, subsidiaries, affiliates, successors and assigns, officers, directors, trustees, fiduciaries, insurers, reinsurers, advisors, accountants, auditors, administrators, employee benefit plans, employees, clients, customers, agents, attorneys, legal and other representatives, heirs, and executives, in their individual and official capacities (collectively, the "Released Parties"), from any and all wage-and-hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the FLSA and the NYLL, and including without limitation statutory, contractual, and common law claims for wages (including for back pay, straight-time or overtime wages, and wage statement or recordkeeping violations) and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or

2

deriving from a wage-and-hour claim (including claims for overtime wages) arising from or otherwise relating to Stolarik's services to The Times from the beginning of time up to the date Stolarik executes this Agreement.

   5.  <u>No Pending Actions.</u> Stolarik covenants and warrants that, other than the Action, he has not in the past filed and will not in the future file any charge, complaint, suit, claim, or appeal of any nature with any local, state, federal, or foreign agency or court, including but not limited to the Court, the U.S. Court of Appeals for the Second Circuit, the U.S. Department of Labor, or the New York State Department of Labor against The Times or any of the Released Parties asserting or otherwise relating to the claims released in this Agreement. Stolarik further covenants and warrants that, by the dismissal of the Wage and Hour Claims with prejudice from the Action, he is not entitled to receive any further payment (other than the payments provided for in Section 3, above) in connection with the Wage and Hour Claims in the Action or otherwise.

   6.  <u>Severability.</u> After the Court has dismissed Stolarik's Wage and Hour Claims, should any of the provisions of this Agreement be rendered invalid by a court or government agency of competent jurisdiction, it is agreed that this shall not in any way or manner affect the enforceability of the other provisions of this Agreement, which shall remain in full force and effect.

   7.  <u>Binding Effect.</u> This Agreement is binding upon, and shall inure to the benefit of, the Parties and their respective heirs, executors, administrators, successors and assigns. It is understood and agreed that this Agreement is intended to and shall inure to the benefit of Stolarik and the Released Parties.

   8.  <u>No Waiver.</u> A failure of The Times or any of the Released Parties to insist on strict compliance with any provision of this Agreement shall not be deemed a waiver of such provision or of any other provision hereof.

   9.  <u>Entire Agreement.</u> This Agreement constitutes the complete understanding between the Parties with respect to the settlement of Stolarik's Wage and Hour Claims and supersedes any and all prior agreements, promises, or inducements, no matter its or their form, concerning Stolarik's Wage and Hour Claims.

   10.  <u>Joint Participation in Preparation of Agreement.</u> The Parties hereto participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to obtain the advice of legal counsel and to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of the other.

   11.  <u>Governing Law.</u> This Agreement will in all respects be interpreted, enforced, and governed by New York law without regard to choice of law principles.

   12.  <u>Modifications.</u> No modifications, amendments, or changes to this Agreement shall

be binding or enforceable unless reduced to writing and signed by all Parties and approved by the Court.

13. <u>Ownership of Claims.</u> Stolarik represents and warrants to The Times that he has not assigned any Wage and Hour claims he may have against The Times or any of the other Released Parties.

14. <u>Period for Review.</u> Stolarik agrees by his signature below that he has had, and that The Times gave him, a reasonable time in which to consider this Agreement before executing it, and that such period was sufficient for him to fully and completely consider all of its terms. Stolarik hereby waives any right he might have to additional time within which to consider this Agreement. Stolarik acknowledges that he was represented by counsel in his review of this Agreement. Stolarik has read this Agreement and is entering into it voluntarily.

**AGREED TO AND ACCEPTED BY ROBERT STOLARIK**

By: _[signature]_   Dated: May 20, 2020.

Robert Stolarik

**AGREED TO AND ACCEPTED BY THE NEW YORK TIMES COMPANY**

By: _[signature]_   Dated: May 21, 2020

David McCraw
Senior Vice President & Deputy
General Counsel

4

115387718v3